FRED B. BURNSIDE (State Bar No. 211089)
     fredburnside@dwt.com
DAVIS WRIGHT TREMAINE LLP
50 California Street, 23rd Floor
San Francisco, California 94111
Telephone: (415) 276-6500
Fax: (415) 276-6599

SANCHO ACCORSI (State Bar No. 329413)
     sanchoaccorsi@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

*Attorneys for Defendant Grocery Outlet Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| YURI FONS and JENNIFER TURNER, individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GROCERY OUTLET INC.,<br><br>Defendant. | Case No. 5:26-cv-00964-BLF<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:       August 27, 2026<br>Time:       9:00 a.m.<br>Courtroom:  1 – 5th Floor<br><br>Complaint Filed:   January 30, 2026 |

MOTION TO DISMISS COMPLAINT
Case No. 5:26-cv-00964-BLF

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ............................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................... 2

I.     INTRODUCTION..................................................................................................................... 2

II.    STATEMENT OF ISSUES TO BE DECIDED.................................................................... 3

III.   BACKGROUND....................................................................................................................... 3

      A.     Grocery Outlet Sells Groceries Where Other Stores Cannot. ................................ 3

      B.     Grocery Outlet's Website, Like Most Others, Uses Cookies.................................. 3

      C.     Grocery Outlet Openly Discloses Cookies, Including With its Cookie Banner. .... 3

      D.     Plaintiffs Sue Grocery Outlet Alleging the "Reject All" Button Was Imperfect.... 4

IV.   THE COURT SHOULD DISMISS FOR LACK OF STANDING ..................................... 6

      A.     Plaintiffs Allege No Concrete Injury. .................................................................... 6

            1.     No Privacy Injury. ...................................................................................... 6

            2.     No Economic Injury. ................................................................................. 12

      B.     Plaintiffs Fail To Allege Any Injury Traceable to Grocery Outlet. ...................... 12

V.    THE COURT SHOULD DISMISS FOR FAILURE TO STATE A CLAIM .................. 14

      A.     Plaintiffs' CIPA Theories Conflict With the CCPA. ........................................... 14

      B.     Plaintiffs' CIPA § 631 Claim Fails on the Merits.................................................. 15

            1.     Plaintiffs Do Not Allege Any Communication or its Contents................. 16

            2.     Plaintiffs Do Not Allege Third Parties Read any Communications in Transit.......................................................................................................... 18

      C.     Plaintiffs' CIPA § 638.51 Claim Fails on the Merits............................................ 19

            1.     CIPA § 638.51 Only Applies to Telephonic Communications. ............... 19

            2.     Cookies Are Not Pen Registers............................................................... 21

            3.     Plaintiffs Have No Statutory Standing for a § 638.51 Claim.................... 22

      D.     Plaintiffs Do Not Allege Either Privacy Claim..................................................... 23

      E.     Plaintiffs Do Not Allege Fraud. ........................................................................... 23

            1.     No Scienter. ............................................................................................... 23

            2.     No Harm. .................................................................................................. 24

i

MOTION TO DISMISS COMPLAINT
Case No. 5:26-cv-00964-BLF

DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

F.      Plaintiffs Do Not Allege Unjust Enrichment. ...................................................... 24

G.      Punitive Damages Are Unavailable. .................................................................. 25

VI.      CONCLUSION ...................................................................................................... 25

MOTION TO DISMISS COMPLAINT
Case No. 5:26-cv-00964-BLF

**DAVIS WRIGHT TREMAINE** LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

# TABLE OF AUTHORITIES

**Cases**

*Apex Compounding Pharmacy, LLC v. eFax Corp.*,
 2017 WL 9500946 (C.D. Cal. 2017) .......................................................................... 24

*In re Application of U. S. of Am. for an Ord. Authorizing an In-Progress Trace of Wire
 Commc'ns over Tel. Facilities*,
 616 F.2d 1122 (9th Cir. 1980) ................................................................................. 20

*Astiana v. Hain Celestial Grp., Inc.*,
 783 F.3d 753 (9th Cir. 2015) .................................................................................... 24

*B.K. v. Eisenhower Med. Ctr.*,
 721 F. Supp. 3d 1056 (C.D. Cal. 2024) .............................................................. 16, 18

*Bass v. Facebook, Inc.*,
 394 F. Supp. 3d 1024 (N.D. Cal. 2019) ................................................................... 12

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ................................................................................................ 24

*Big 5 Sporting Goods Corp. v. Zurich Am. Ins. Co.*,
 635 F. App'x 351 (9th Cir. 2015) ............................................................................... 8

*Bittner v. United States*,
 598 U.S. 85 (2023) .................................................................................................. 15

*Byars v. Sterling Jewelers, Inc.*,
 2023 WL 2996686 (C.D. Cal. 2023) .......................................................................... 8

*Calhoun v. Google LLC*,
 526 F. Supp. 3d 605 (N.D. Cal. 2021) ...................................................................... 13

*Carolus v. Nexstar Media Inc.*,
 2025 WL 1338193 (N.D. Cal. 2025) ............................................................... 7, 8, 12

*In re Carrier IQ, Inc.*,
 78 F. Supp. 3d 1051 (N.D. Cal. 2015) ...................................................................... 17

*Casillas v. Six Flags Ent. Corp.*,
 812 F. Supp. 3d 1016 (C.D. Cal. 2025) .................................................................... 24

*Cook v. GameStop, Inc.*,
 689 F. Supp. 3d 58 (W.D. Pa. 2023) ........................................................................ 17

*Cousin v. Sharp Healthcare*,
 681 F. Supp. 3d 1117 (S.D. Cal. 2023) ...................................................................... 9

MOTION TO DISMISS COMPLAINT
Case No. 5:26-cv-00964-BLF

DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

*Dawidzik v. Tesla, Inc.*,
  2025 WL 3786963 (C.D. Cal. 2025) ....................................................................... 23

*Day v. City of Fontana*,
  25 Cal. 4th 268 (2001) ........................................................................................ 19

*Doe I v. Google LLC*,
  741 F. Supp. 3d 828 (N.D. Cal. 2024) ................................................................... 17

*Doe v. Eating Recovery Ctr. LLC*,
  806 F. Supp. 3d 1109 (N.D. Cal. 2025) .........................................................*passim*

*Doe v. Microsoft Corp.*,
  2023 WL 8780879 (W.D. Wash. 2023) .................................................................. 25

*Engalla v. Permanente Med. Grp., Inc.*,
  15 Cal. 4th 951 (1997).......................................................................................... 24

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020)................................................................................. 10

*Farst v. AutoZone, Inc.*,
  700 F. Supp. 3d 222 (M.D. Penn. 2023) ................................................................ 10

*Folgelstrom v. Lamps Plus, Inc.*,
  195 Cal. App. 4th 986 (2011)........................................................................... 8, 11

*Gabrielli v. Insider, Inc.*,
  2025 WL 522515 (S.D.N.Y. 2025) ........................................................................ 23

*Garcia v. Blackhawk Network, Inc.*,
  2026 WL 925028 (C.D. Cal. 2026)..................................................................*passim*

*In re Google Assistant*,
  457 F. Supp. 3d at 830.............................................................................. 7, 10, 12

*In re Google, Inc. Privacy Pol'y Litig.*,
  58 F. Supp. 3d 968 (N.D. Cal. 2014) ...................................................................... 9

*Gutierrez v. Converse, Inc.*,
  2025 WL 1895315 (9th Cir. 2025).......................................................................... 21

*Hammerling v. Google LLC*,
  615 F. Supp. 3d 1069 (N.D. Cal. 2022) ................................................................. 23

*Heeger v. Facebook, Inc.*,
  509 F. Supp. 3d 1182 (N.D. Cal. 2020) ................................................................. 23

*Hernandez v. Hillsides, Inc.*,
  47 Cal. 4th 272 (2009)..................................................................................... 7, 11

iv

MOTION TO DISMISS COMPLAINT
Case No. 5:26-cv-00964-BLF

**DAVIS WRIGHT TREMAINE** LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........................................................................ 7, 11, 12

*James v. Allstate Ins. Co.*,
2023 WL 8879246 (N.D. Cal. 2023) ................................................................................... 16, 19

*Jones v. Peloton Interactive, Inc.*,
720 F. Supp. 3d 940 (S.D. Cal. 2024) ........................................................................................ 17

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ...................................................................................... 17

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) ............................................................................ 8, 9, 23

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. 2025) ..................................................................................... 8, 22

*Lau v. Gen Digit. Inc.*,
2023 WL 10553772 (N.D. Cal. 2023) ......................................................................................... 12

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) ..................................................................................... 19

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ................................................................................. 9, 23

*In re Marriage of McIntyre Shayan & Shayan*,
106 Cal. App. 5th 76 (2024) ...................................................................................................... 20

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) ............................................................................................... 6, 13

*Mitchener v. Talkspace Network LLC*,
2025 WL 1822801 (C.D. Cal. 2025) ............................................................................................. 8

*Moore v. Centrelake Med. Grp., Inc.*,
83 Cal. App. 5th 515 (2022) ...................................................................................................... 12

*Murthy v. Missouri*,
603 U.S. 43 (2024) ..................................................................................................................... 13

*Oestreicher v. Alienware Corp.*,
544 F. Supp. 2d 964 (N.D. Cal. 2008) ...................................................................................... 23

*People v. Larkin*,
194 Cal. App. 3d 650 (1987) ..................................................................................................... 20

*People v. Stipo*,
195 Cal. App. 4th 664 (2011) .................................................................................................... 22

v

MOTION TO DISMISS COMPLAINT
Case No. 5:26-cv-00964-BLF

**DAVIS WRIGHT TREMAINE** LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

*Peterson v. Cellco P'ship*,
164 Cal. App. 4th 1583 (2008) ............................................................................................ 24

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ......................................................................................*passim*

*Popa v. PSP Grp., LLC*,
2023 WL 7001456 (W.D. Wash. 2023) ................................................................................ 9

*R.C. v. Walgreen Co.*,
733 Supp. 3d 876 (C.D. Cal. 2024) ...................................................................................... 9

*Rhynes v. Stryker Corp.*,
2011 WL 2149095 (N.D. Cal. 2011) ................................................................................... 25

*Rodriguez v. Brushfire Recs.*,
2025 WL 3692144 (C.D. Cal. 2025) ..................................................................................... 9

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. 2022) ..................................................................................... 19

*Saeedy v. Microsoft Corp.*,
2023 WL 8828852 (W.D. Wash. 2023) ........................................................................... 9, 10

*Scott v. Phoenix Schs., Inc.*,
175 Cal. App. 4th 702 (2009) ............................................................................................. 25

*Shah v. MyFitnessPal, Inc.*,
2026 WL 216334 (N.D. Cal. 2026) ..................................................................................... 11

*Shulman v. Grp. W Prods., Inc.*,
18 Cal. 4th 200 (1998) ........................................................................................................ 11

*Smith v. LoanMe Inc.*,
11 Cal. 5th 183 (2021) ........................................................................................................ 21

*Smith v. Maryland*,
442 U.S. 735 (1979) ...................................................................................................... 20, 22

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .............................................................................................................. 6

*Stephenson v. Argonaut Ins. Co.*,
125 Cal. App. 4th 962 (2004) ............................................................................................. 24

*Strugala v. Flagstar Bank, FSB*,
839 F. App'x 69 (9th Cir. 2020) ......................................................................................... 23

*Svenson v. Google Inc.*,
65 F. Supp. 3d 717 (N.D. Cal. 2014) ............................................................................. 12, 17

vi

MOTION TO DISMISS COMPLAINT
Case No. 5:26-cv-00964-BLF

**DAVIS WRIGHT TREMAINE** LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

*Taiwan Semiconductor Mfg. Co., Ltd. v. Tela Innovations, Inc.*,
  2014 WL 3705350 (N.D. Cal. 2014)........................................................................... 25

*Tavernetti v. Super. Ct.*,
  22 Cal. 3d 187 (1978).................................................................................................. 16

*Thomas v. Papa John's Int'l, Inc.*,
  2025 WL 1704437 (9th Cir. 2025).................................................................................7

*Torres v. Prudential Fin., Inc.*,
  2025 WL 1135088 (N.D. Cal. 2025)............................................................................ 18

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ......................................................................................... 6, 11, 12

*Turrieta v. Lyft, Inc.*,
  16 Cal. 5th 664 (2024)................................................................................................. 21

*Twitter, Inc. v. Garland*
  61 F.4th 686 (9th Cir. 2023)........................................................................................ 20

*In re U.S. for an Ord. Authorizing Roving Interception of Oral Commc'ns*,
  349 F.3d 1132 (9th Cir. 2003)..................................................................................... 20

*United States v. Forrester*,
  512 F.3d 500 (9th Cir. 2008)....................................................................................... 22

*United States v. Rosenow*,
  50 F.4th 715 (9th Cir. 2022)........................................................................................ 23

*Warden v. Kahn*,
  99 Cal. App. 3d 805 (1979)................................................................................... 15, 18

*Wendover Prods. LLC v. PayPal, Inc.*,
  2025 WL 3251667 (N.D. Cal. 2025)............................................................................ 13

*Wiley v. Universal Music Grp., Inc.*,
  2025 WL 3654085 (N.D. Cal. 2025)............................................................................ 11

*Williams v. DDR Media, LLC*,
  757 F. Supp. 3d 989 (N.D. Cal. 2024) ........................................................................ 18

*Wishnick v. Frye*,
  111 Cal. App. 2d 926 (1952)........................................................................................ 23

*Wooten v. BioLife Plasma Servs. L.P.*,
  807 F. Supp. 3d 1139 (E.D. Cal. 2025).......................................................................7, 8

*Yoon v. Lululemon USA, Inc.*,
  549 F. Supp. 3d 1073 (C.D. Cal. 2021)................................................................... 16, 18

MOTION TO DISMISS COMPLAINT
Case No. 5:26-cv-00964-BLF

DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

*In re Zerbe*,
   60 Cal. 2d 666 (1964) .............................................................................................................. 15

*In re Zynga Priv. Litig.*,
   750 F.3d 1098 (9th Cir. 2014) .......................................................................................... 16, 22

**Statutes**

18 U.S.C.
   § 3121 ....................................................................................................................................... 20
   § 3127(3) .................................................................................................................................. 20

Cal. Civ. Code
   § 1798.100 ................................................................................................................................ 14
   § 1798.120(a) ........................................................................................................................... 14
   § 1798.135 .................................................................................................................................. 4
   § 1798.135(a) ........................................................................................................................... 14
   § 1798.140(v)(1)(A) ................................................................................................................ 14
   § 1798.140(v)(1)(D) ................................................................................................................ 14
   § 1798.140(v)(1)(F) ................................................................................................................. 14
   § 1798.150(c) ........................................................................................................................... 15
   § 1798.185(d) ........................................................................................................................... 14
   § 3294(a) .................................................................................................................................. 25
   § 3294(b) .................................................................................................................................. 25

Cal. Code Regs. Tit. 11, § 7013(c) ............................................................................................. 4, 15

Cal. Pen. Code
   § 631(a) ............................................................................................................................... 16, 18
   § 637.2(a) ................................................................................................................................. 22
   § 638.50(a) ............................................................................................................................... 20
   § 638.50(b) ............................................................................................................................... 22
   § 638.51(a) ............................................................................................................................... 21
   § 638.53(a)(2) .......................................................................................................................... 21

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................................................... 1, 3

Fed. R. Civ. P. 12(b)(6) ........................................................................................................... 1, 3, 14

MOTION TO DISMISS COMPLAINT
Case No. 5:26-cv-00964-BLF

**DAVIS WRIGHT TREMAINE** LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 27, 2026, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 1 – 5th Floor of the above-captioned court located at 280 South First Street, San Jose, California 95113, before the Honorable Beth Labson Freeman, United States District Judge, defendant Grocery Outlet Inc. ("Grocery Outlet") will move the Court to dismiss Plaintiffs' Complaint with prejudice under Rule 12(b)(1) or Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiffs lack standing under Article III to bring their claims in this Court because the alleged accidental disclosure of the non-sensitive information they say they communicated on Grocery Outlet's website is not highly offensive; nor would any hypothetical injury be traceable to Grocery Outlet because, as Plaintiffs allege, online data tracking is so commonplace that it is implausible that the third parties alleged here did not already have the information at issue. Plaintiffs also fail to state a claim because the third-party web tools they challenge are not criminal wiretaps or "pen registers," among other reasons.

The Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, and all pleadings and papers filed in this matter, and upon such other matters as may be presented to the Court at the hearing.

DATED: April 24, 2026

DAVIS WRIGHT TREMAINE LLP

By: /s/Fred B. Burnside
Fred B. Burnside

*Attorneys for Grocery Outlet Inc.*

MOTION TO DISMISS COMPLAINT
Case No. 5:26-cv-00964-BLF

DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs allege they clicked "Reject All" on Grocery Outlet's cookie banner but that, while it disabled most cookies, it failed to disable cookies from two third-party developers (Google and Flipp).  Plaintiff Fons alleges these cookies disclosed that he was a "website user," clicked on a "Weekly Ad," and entered a zip code in a "Store Locator."  Compl. ¶¶ 42, 80.  He says this is an egregious breach of social norms.  It's not.  Plaintiff Turner for her part identifies *no* transmitted data at all.  The Court should dismiss the Complaint for the following reasons:

*First*, Plaintiffs suffered no concrete injury traceable to Grocery Outlet sufficient for Article III standing.  Mistakenly disclosing that a website user has a zip code is not "egregious."  Because Plaintiffs' supposed privacy injury is not "actionable" at common law, it is not concrete.  *Garcia v. Blackhawk Network, Inc.*, 2026 WL 925028, *5 (C.D. Cal. 2026) (no injury despite defective cookie-rejection).  And because they concede the ubiquity of cross-site web tracking, Plaintiffs do not and cannot plausibly allege that Google or Flipp had not already associated the zip code with any anonymized user profile they had for Fons.  Without alleging they rejected all cookies on all sites at all times, and that Google or Flipp can somehow identify them personally (rather than pseudonymously), Plaintiffs cannot trace any purported injury to Grocery Outlet.

*Second*, even if they had standing, Plaintiffs fail to state a claim.  Both their CIPA claims exploit the fact that "[t]he language of CIPA is a total mess[,]" which "gets bigger and bigger … as courts are called upon to apply CIPA[] … to new technologies."  *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1112 (N.D. Cal. 2025).  The Court should not let them leverage a 1967 criminal statute to impose an *opt-in* consent scheme irreconcilable with the *opt-out* scheme enacted by the California Consumer Privacy Act (CCPA)—in 2018.  Regardless, both CIPA claims fail because cookies are not criminal wiretaps or "pen registers."  *See id.* at 1119 ("courts should not be so quick to assume" the Legislature "intend[ed] to subject companies … to criminal liability for using third-party software to track website activity").  Plaintiffs' other claims—for invasion of privacy, fraud, and unjust enrichment—all fail for other, claim-specific reasons, as does their unsupported demand for punitive damages.

2

MOTION TO DISMISS COMPLAINT
Case No. 5:26-cv-00964-BLF

## II.    STATEMENT OF ISSUES TO BE DECIDED

1.    Whether Plaintiffs have Article III standing.  *See* Fed. R. Civ. P. 12(b)(1).

2.    Whether Plaintiffs state a claim for relief.  *See* Fed. R. Civ. P. 12(b)(6).

## III.    BACKGROUND

### A.    Grocery Outlet Sells Groceries Where Other Stores Cannot.

Grocery Outlet is a grocer that finds produce and brand-name products available at discounted rates.  Compl. ¶ 32 (citing https://investors.groceryoutlet.com/); *see* https://www.groceryoutlet.com/our-story.  It sells these products through a network of independently owned and operated stores at prices generally 40% to 70% lower than conventional retailers.  Compl. ¶ 32 (citing https://www.groceryoutlet.com/impact-report).  This business model increases food access and supports economic growth in communities that otherwise could not sustain grocery stores.  *See* https://www.groceryoutlet.com/impact-report.

### B.    Grocery Outlet's Website, Like Most Others, Uses Cookies.

Grocery Outlet operates www.groceryoutlet.com, where visitors can learn about Grocery Outlet's business, locate stores, and view sales promoted by individual stores.  Compl. ¶ 80. Grocery Outlet uses cookies to operate the website, improve marketing, and for website analytics.  *Id.* ¶¶ 27, 31.  This practice is common.  *Id.* ¶ 2.  For example, as Plaintiffs allege, Google's cookies—at issue in the Complaint—alone track 20% of all web traffic.  *Id.* ¶ 54.

### C.    Grocery Outlet Openly Discloses Cookies, Including With its Cookie Banner.

Grocery Outlet openly discloses its use of cookies.  As Plaintiffs concede, Grocery Outlet's Privacy Policy explains that certain information about website users' interactions with groceryoutlet.com is *automatically* collected "through cookies, web beacons, and other tracking technologies, as well as through [the users'] web browser or device."  Compl. ¶ 34 (quoting Grocery Outlet Privacy Policy, available at https://www.groceryoutlet.com/legal/privacy).  The website relies on third-party tools, including tools provided by Google, to facilitate "site operations," "analytics," "personalized advertising," and "social media."  *Id.*  The website itself also discloses the use of third-party tools.  For example, users who click a "Weekly Ad" link—as Fons alleges—can enter a zip code to find a local store's advertisements.  Immediately below the

3

zip-code field, the website discloses the zip-code tool is "Powered by Flipp"—the other third party alleged in the Complaint—and links to Flipp's privacy policy and terms of use. *See* https://www.groceryoutlet.com/circulars.

Grocery Outlet also took the extra step of providing a cookie banner, alerting users to its data practices. The CCPA generally requires that websites notify and let consumers opt-out of any data sharing, Cal. Civ. Code § 1798.135, but websites can satisfy this obligation merely by displaying a "conspicuous link" to those options. Cal. Code Regs. tit. 11, § 7013(c). The CCPA does not require a cookie banner. But Grocery Outlet provides one anyway, every time a new user lands on groceryoutlet.com. Compl. ¶ 36. The banner here read: "By clicking 'Accept All Cookies', you agree to the storing of cookies on your device to enhance site navigation, analyze site usage, and assist in our marketing efforts." *Id.* It offered users the choice to "Accept All Cookies," "Reject All," or click a "Cookie Settings" link to a Privacy Preference Center explaining the types of cookies on the website: "Strictly Necessary Cookies," which Grocery Outlet notified users were "Always Active"; and "Performance," "Functional," and "Targeting" cookies, which users can toggle on or off. *Id.* ¶¶ 35, 36.

**D.    Plaintiffs Sue Grocery Outlet Alleging the "Reject All" Button Was Imperfect.**

Plaintiffs allege that, after selecting "Reject All" on the cookie banner, the website nonetheless did not successfully disable some cookies developed by third parties (Google LLC and Flipp Corp.). *Id.* ¶¶ 3, 42. But, even if true, it remains vanishingly improbable that groceryoutlet.com actually placed these cookies on Plaintiffs' browsers—because the cookies were already there. Plaintiffs allege Google's DoubleClick advertising cookies alone "span[] millions of websites and apps" and track "[n]early 20% of web traffic" across the internet. *Id.* ¶ 54. They explain that "[w]hen [a] user's browser loads a[ny of these] webpage[s] … containing embedded third-party resources"—including the Google and Flipp code alleged here—"the third-parties' programming scripts … determine whether the third-party cookies are *already stored on the user's device*." *Id.* ¶ 29. Websites "store those cookies on the device *[only] if they do not yet exist*" on the user's browser. *Id.* Because these cookies stay on users' browsers for "months" and "track users' behavior across the Internet and across time," *id.* ¶¶ 46,

4

**DAVIS WRIGHT TREMAINE** LLP
50 CALIFORNIA STREET, 23ᴿᴰ FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

65, Plaintiffs' allegations render it is implausible that other websites had not already placed Google and Flipp cookies on their browsers before they arrived at groceryoutlet.com. Even their' "typical practice" of rejecting cookies, *id.* ¶¶ 83, 92, does not plausibly allege they rejected cookies every time they landed on any of the millions of websites using these cookies—let alone that those websites offered a "reject all" button, or that those buttons always work. (Plaintiffs' counsel's booming business suing over defective cookie banners suggests they do not.)

In any event, even assuming groceryoutlet.com was the first to place Google and Flipp cookies on Plaintiffs' browsers, Plaintiffs do not allege those cookies recorded anything private on groceryoutlet.com. This is not a case involving healthcare information, financial data, or embarrassing search histories. Plaintiffs speak at length about what these and other cookies *can, in general* do, *see id.* ¶¶ 23–79, while glossing over mention of any data they believe Google or Flipp collected *about them*. Fons alleges he clicked a link on the groceryoutlet.com homepage to view the "Weekly Ad" and, when prompted, entered a zip code into the "Store Locator" field to find ads related to stores near that zip code. *Id.* ¶ 80. Because Plaintiffs allege Google and Flipp cookies can capture users' IP addresses, and that IP addresses reveal users' approximate location, *id.* ¶¶ 30, 152, it strains credulity to assume that Google and Flipp had not already associated Fons's zip code with whatever anonymized user profile they maintain on him. And Turner alleges only that she "visited the Website to seek and obtain information about Grocery Outlet's products," without describing any information she believes Grocery Outlet disclosed to any third party. *Id.* ¶ 89. Neither Plaintiff alleges buying anything or entering private information. And neither alleges receiving "personalized ads" from Grocery Outlet, despite alleging that targeting advertising "is exactly what [they] sought to avoid when they clicked or selected the 'Reject All' button." *Id.* ¶¶ 6, 70.

Plaintiffs allege that, at most, any third-party provider associated data with an unknown "website user," *id.* ¶ 41, not Plaintiffs personally. Though Grocery Outlet might learn who a user is if he or she creates an account, *see* https://www.groceryoutlet.com, Plaintiffs do not allege that either Grocery Outlet or any third party knows the name of any website user simply by virtue of visiting groceryoutlet.com. Plaintiffs detail a wide range of data that third-party providers can,

MOTION TO DISMISS COMPLAINT
Case No. 5:26-cv-00964-BLF

DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

in theory, gather, but glaringly absent from that list is the name of either Plaintiff.  Compl. ¶ 30. Plaintiffs do not and cannot allege that either Google or Flipp has any ability to identify them personally based on their interactions with Grocery Outlet's website.

Nevertheless, Plaintiffs allege that the commonplace cookies on Grocery Outlet's website are criminal wiretaps or pen registers—regardless whether the "Reject All" button worked or not. They bring claims under CIPA, for intrusion upon seclusion, unjust enrichment, and fraud.  They believe collection of innocuous (or unspecified) commercial web browsing data untethered to their names warrants *$5,000 in statutory damages for each allegedly intercepted communication*. The Court should dismiss Plaintiffs' claims because Plaintiffs (1) do not allege a concrete injury sufficient to bring claims in federal court, and (2) state no claim on the merits.

## IV.　THE COURT SHOULD DISMISS FOR LACK OF STANDING

Plaintiffs must establish standing to invoke this Court's jurisdiction.  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  Standing requires that plaintiffs suffer "an injury in fact" "traceable to the challenged conduct" and "likely to be redressed" by their suit.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  Plaintiffs allege they suffered (1) a "violation of their right to privacy" and (2) a "loss of value in," and "property right[s]" over, their communications. Compl. ¶ 145.  These injuries are neither concrete nor traceable to Grocery Outlet, so the Court lacks subject-matter jurisdiction.  *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

### A.　Plaintiffs Allege No Concrete Injury.

Injury in fact must be *concrete*—it "must actually exist."  *Popa v. Microsoft Corp.*, 153 F.4th 784, 788 (9th Cir. 2025). Plaintiffs' alleged privacy and economic injuries are not concrete.

#### 1.　No Privacy Injury.

Though the Complaint speaks in terms of privacy, it does not allege a concrete privacy injury.  An intangible injury like a privacy injury is concrete only if it is "benchmarked" to the "key elements" of "a specific tort" "actionable at common law."  *Popa*, 153 F.4th at 791–92. "[A]n injury in law is not an injury in fact."  *TransUnion*, 594 U.S. at 426–27.  An "actionable" common law privacy injury requires "an intentional interference with his interest in solitude or seclusion … *of a kind that would be highly offensive to a reasonable man*."  *Popa*, 153 F.4th at

6

MOTION TO DISMISS COMPLAINT
Case No. 5:26-cv-00964-BLF

791.  Not every disturbance constitutes a "highly offensive" intrusion; a privacy tort only lies against an "egregious breach of the social norms."  *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009) (citation omitted); *see* Restatement (Second) of Torts § 652B.

The Ninth Circuit in *Popa* held the online wiretapping alleged there did not inflict a concrete privacy injury because the plaintiff identified no "embarrassing, invasive, or otherwise private information" obtained while she browsed a pet supply website.  153 F.4th at 787, 791 (affirming lack of standing).  Tracking routine, commercial web browsing—like Plaintiffs allege here—is not "remotely similar" to being "highly offensive."  *Id.* at 791; *Thomas v. Papa John's Int'l, Inc.*, 2025 WL 1704437, *1 (9th Cir. 2025) (same).

Courts apply *Popa* to dismiss online CIPA claims for lack of concrete injury, including claims premised on faulty "reject all" buttons.  In *Garcia*, for example, the plaintiff alleged that cookies operated even after users opted to reject all non-essential cookies.  2026 WL 925028, at *1–2.  But the cookie banner's alleged "misrepresentation [went] only to the first element: whether there was an intrusion into a private place."  *Id.* at *5.  The plaintiff did not suffer a concrete privacy injury because the data allegedly disclosed was not sufficiently sensitive or extensive for the disclosure to be "highly offensive."  *Id.  Garcia* is no outlier.  *Carolus v. Nexstar Media Inc.*, 2025 WL 1338193, *1 (N.D. Cal. 2025) (no standing for online CIPA claims); *Wooten v. BioLife Plasma Servs. L.P.*, 807 F. Supp. 3d 1139, 1144 (E.D. Cal. 2025) (same).

In *In re Google Assistant Priv. Litig.*, this Court concluded it was a "close call" whether Google's surreptitious recording of oral, in-person conversations through at-home listening devices and mobile phones was highly offensive.  457 F. Supp. 3d 797, 830 (N.D. Cal. 2020) (Freeman, J.).  By contrast, the allegations here are far from highly offensive.

### a.    The Information Is Not Sensitive.

The most important factor in determining whether an intrusion into privacy is "highly offensive" is whether "the content of the recordings" were sensitive.  *In re Google Assistant*, 457 F. Supp. 3d at 830; *Garcia*, 2026 WL 925028, at *5 (considering data sensitivity).  Regardless whether the "Reject All" button functioned properly, Plaintiffs do not allege the third-party

MOTION TO DISMISS COMPLAINT
Case No. 5:26-cv-00964-BLF

DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

cookies collected any sensitive information about them.  Plaintiffs do not, and cannot, allege Grocery Outlet shared medical test results, credit scores, embarrassing internet searches, or any "embarrassing, invasive, or otherwise private" data that might support a claim.  *Popa*, 153 F.4th at 791.  That distinguishes this case from CIPA cases that pass the pleadings stage; "a concrete injury arises only where the alleged harm involves personal information—and specifically, information whose disclosure would be considered 'highly offensive to a reasonable person.'" *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1180 (N.D. Cal. 2025) (dismissing CIPA claim).  Plaintiffs lack standing on this basis alone.

**Turner.**  Turner makes no effort to allege any data at all, which is enough to dismiss her for lack of standing.  *See Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, *2 (N.D. Cal. 2025) (no standing where "[p]laintiff d[id] not allege that the Website collected *his* biographical information" despite alleging it "*could* intrude on [p]laintiff's right to privacy"); *Mitchener v. Talkspace Network LLC*, 2025 WL 1822801, *8 (C.D. Cal. 2025) (same); *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, *1 (C.D. Cal. 2023) (same).

**Fons.**  Fons alleges that Grocery Outlet disclosed that a "website user" clicked a "Weekly Ad" link and entered a zip code into a "Store Locator" field.  Compl. ¶¶ 41, 80.  He does not (and cannot) allege that anything he did on Grocery Outlet's website revealed his identity to Google or Flipp (or even Grocery Outlet).  Even if Grocery Outlet could identify him, and regardless whether he clicked "Reject All," clicking a link and entering a zip code is not sensitive enough to create an actionable privacy injury.  "California does not recognize any common law or constitutional privacy right causes of action for requesting, sending, transmitting, communicating, distributing, or commercially using ZIP Codes." *Big 5 Sporting Goods Corp. v. Zurich Am. Ins. Co.*, 635 F. App'x 351, 354 (9th Cir. 2015).  Fons, like Turner, does not allege a concrete injury because he does not allege Grocery Outlet disclosed any remotely sensitive information about him.  *See Carolus*, 2025 WL 1338193, at *1 (dismissing online CIPA claims for lack of standing because acquisition of "zip code" "does not cause the kind of harm that can be vindicated in federal court"); *Wooten*, 807 F. Supp. 3d at 1144 (same regarding email address); *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011)

8

MOTION TO DISMISS COMPLAINT
Case No. 5:26-cv-00964-BLF

(collection of "plaintiff's address without [consent]" was "not an egregious breach of social norms, but routine commercial behavior").

***Hypotheticals.*** The Complaint's hypothetical allegations do not change the analysis. For starters, the Court should ignore allegations unrelated to Plaintiffs. *See Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123 (S.D. Cal. 2023) (dismissing online privacy claims where "[p]laintiffs fail[ed] to factually explain their personal participation in any of [it]"); *Khamooshi*, 786 F. Supp. 3d at 1179 (same).

But even the types of information the cookies allegedly *can, in general* collect do not give rise to a privacy injury. Plaintiffs allege third-party tools can collect users' "(i) browsing history, (ii) visit history, (iii) website interactions, (iv) demographic information, (v) interests and preferences, (vi) shopping behaviors, (vii) device information, (viii) referring URLs, (ix) session information, (x) user identifiers, and/or (xi) geolocation data." Compl. ¶ 73; *see id.* ¶¶ 4, 32, 39, 45, 123 (all same); *id.* ¶ 30 (similar). As a general rule, there is no privacy injury based on "public browsing activities that do not reveal [sensitive] information." *R.C. v. Walgreen Co.*, 733 Supp. 3d 876, 893 (C.D. Cal. 2024). Even if the Plaintiffs' names were somehow shared, disclosing users' non-sensitive data, like "personal identifying information, browsing habits, search queries, responsiveness to ads, [and] demographic information," is not highly offensive. *In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968, 973, 988 (N.D. Cal. 2014); *see In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (same); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (same). The same goes for "products that interested [Plaintiffs]," *Popa v. PSP Grp., LLC*, 2023 WL 7001456, *4 (W.D. Wash. 2023), *aff'd*, 153 F.4th 784 (9th Cir. 2025), and "IP address and other device identifiers," the collection of which "does not cause the kind of harm that can be vindicated in federal court." *Rodriguez v. Brushfire Recs.*, 2025 WL 3692144, *6 (C.D. Cal. 2025); *see Khamooshi*, 786 F. Supp. 3d at 1179 (same).

"In sum, the collected browser information of which Plaintiffs complain is not a legally protected privacy interest in which they had a reasonable expectation of privacy." *Saeedy v. Microsoft Corp.*, 2023 WL 8828852, *6 (W.D. Wash. 2023). "Therefore, they have not alleged a

9

MOTION TO DISMISS COMPLAINT
Case No. 5:26-cv-00964-BLF

sufficiently concrete privacy injury to provide a basis for Article III standing." *Id.* Their inability to allege any information tied to them by name (let alone sensitive information) from their browsing a grocery website forecloses finding any intrusion was "highly offensive."

### b.    The Scope Is Limited.

Offensiveness also turns on "the degree and setting of the intrusion." *In re Google Assistant*, 457 F. Supp. 3d at 830; *see Garcia*, 2026 WL 925028, at *5 (considering scope of collection); *compare Popa*, 153 F.4th at 791 (not highly offensive to track browsing activity on pet supply site), *with In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020) (highly offensive to create "cradle-to-grave profile[s]" of users' activity across internet).

Here, the narrow scope of the alleged intrusion also weighs against finding it was highly offensive. Plaintiffs allege Grocery Outlet caused two third-parties' cookies to "track users' website browsing activities … *on the Website*." Compl. ¶ 3 (emphasis added). Tracking on a single website is too narrow to be highly offensive. *Garcia*, 2026 WL 925028, at *5. Groceryoutlet.com is a publicly available, commercial website related to groceries. Tracking users on gorceryoutlet.com—even if the "Reject All" button malfunctioned—is no more invasive than "a store clerk's observing shoppers." *Popa*, 153 F.4th at 791; *see Farst v. AutoZone, Inc.*, 700 F. Supp. 3d 222, 230 (M.D. Penn. 2023) ("Shopping on a public website, like shopping in a public store, is not an activity one can reasonably expect to keep private from the retailer.").

### c.    Additional Factors Weigh Against Offensiveness.

Courts also consider other factors like "the likelihood of serious harm" from the intrusion, "the intruder's motives," and "countervailing interests or social norms." *In re Google Assistant*, 457 F. Supp. 3d at 830. These factors also weigh against finding offensiveness.

*First*, disclosure of the limited data at issue here—which, again, came from browsing a single commercial grocery website—does not threaten serious harm.

*Second*, Plaintiffs do not allege Grocery Outlet acted with bad motives. They repeatedly conclude Grocery Outlet "knew or should have known" that the "Reject All" button allegedly worked imperfectly, and that it "gained financially from" the malfunction, Compl. ¶ 162, but this is both conclusory (and unsupported) and not the socially repugnant motive ("harassment,

10

MOTION TO DISMISS COMPLAINT
Case No. 5:26-cv-00964-BLF

blackmail[,] or prurient curiosity") that characterizes a highly offensive intrusion. *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 237 (1998); *Hernandez*, 47 Cal. 4th at 297 (same). "Even negligent conduct that leads to theft of highly personal information … does not 'approach [the] standard' of [an] actionable … violation of [p]laintiffs' right to privacy." *In re iPhone Application*, 844 F. Supp. 2d at 1063.

*Third*, norms surrounding commercial web browsing also suggest the alleged intrusion is not "an egregious breach." *Folgelstrom*, 195 Cal. App. 4th at 992. Plaintiffs admit third-party cookies proliferate on the internet, Compl. ¶¶ 2, 27, 31, and that users *must* share some data with website operators to access those websites. *Id.* ¶¶ 23–24. This means that, even if a malfunctioning "Reject All" button were a breach of norms, it is not an egregious one.

One judge in this District has, on two occasions, found users suffered a concrete privacy injury when websites implemented certain cookies after users rejected them. *See Wiley v. Universal Music Grp., Inc.*, 2025 WL 3654085 (N.D. Cal. 2025) (Pitts, J.); *Shah v. MyFitnessPal, Inc.*, 2026 WL 216334 (N.D. Cal. 2026) (Pitts, J.). Judge Pitts's reasoning does not apply here for two reasons. First, he reasoned that the alleged "decept[ion]" (i.e., misrepresentation about cookies) meant the intrusion may have been highly offensive. *Wiley*, 2025 WL 3654085, at *5. Second, he distinguished cases based on disclosures of "IP addresses and geolocation data," which are "***not*** sufficiently 'egregious' to support an invasion of privacy claim." *Id.* (emphasis added); *see Shah*, 2026 WL 216334, at *3, *5 ("interactions with MFP related to personal topics like nutrition and fitness tracking—could plausibly … be 'embarrassing, invasive, or otherwise private'"). Here, though, Plaintiffs do not plausibly allege deception at all, nor do they allege any data beyond a zip code, let alone the factors this Court considers in determining if an intrusion is highly offensive. *See supra* § IV.A.1.a–c. *Compare TransUnion*, 594 U.S. at 433–34 (misrepresentation, without more, is insufficient for standing)

In short, even crediting Plaintiffs' allegation that some cookies slipped through Grocery Outlet's "Reject All" settings, they still do not allege a highly offensive intrusion. *Garcia*, 2026 WL 925028, at *5 (no standing where plaintiff "has not made any allegations that the information collected, or its reach, would have been highly offensive").

11

MOTION TO DISMISS COMPLAINT
Case No. 5:26-cv-00964-BLF

DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

**2.      No Economic Injury.**

Financial loss can be concrete, *TransUnion*, 594 U.S. at 425, but Plaintiffs allege none.

*First*, Plaintiffs make no effort to allege how Fons's clicking a "Weekly Ad" (designed to show local deals) or entering a zip code profited Grocery Outlet.  And they allege nothing about Turner's data.  This Court dismissed similar allegations in *In re Google Assistant* because the plaintiffs failed to adequately describe the "personal information" at issue or how it profited Google.  457 F. Supp. 3d at 832; *see id.* at 835 ("assertion that Defendants garnered 'substantial profits' from the information [was] purely conclusory").  The Court should do the same here.

*Second*, nor do Plaintiffs adequately allege that any profit came *at Plaintiffs' expense*.  "[C]laiming that a defendant 'may have gained money through its sharing or use of the plaintiffs' information' is 'different from saying the plaintiffs lost money.'"  *Id.* at 840 (citation omitted); *see Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1040 (N.D. Cal. 2019) (same principle).  Plaintiffs do not allege they "attempted or intended to participate" in a market for the innocuous information that they allege the third-party cookies collected.  *Lau v. Gen Digit. Inc.*, 2023 WL 10553772, \*7 (N.D. Cal. 2023) *aff'd*, 2025 WL 3002610 (9th Cir. 2025); *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 538, 564 (2022) (no economic injury without alleging plaintiffs "attempted or intended to participate" in market for information).  Nor do they allege that they were deprived of the ability to sell their data.  *Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 730 (N.D. Cal. 2014) (Freeman, J.) (same where plaintiff did not allege disclosure of information "changed her economic position at all").  They do not allege economic harm.  *See Carolus*, 2025 WL 1338193, at \*1.

*Finally*, Plaintiffs' throwaway allegation that they suffered "damage to … [their] property right[s]," Compl. ¶ 145, ignores that "'personal information' does not constitute property." *In re iPhone Application*, 844 F. Supp. 2d at 1075 (collecting cases). This allegation also ignores that they never identify any data linked to them personally that has been revealed or diminished.

**B.      Plaintiffs Fail To Allege Any Injury Traceable to Grocery Outlet.**

Even if Plaintiffs alleged concrete injury (and they do not), concrete injury establishes standing only if it is traceable to the defendant.  "In cases where a chain of causation 'involves

12

MOTION TO DISMISS COMPLAINT
Case No. 5:26-cv-00964-BLF

DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23ᴿᴰ FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

numerous third parties' whose 'independent decisions' collectively have a 'significant effect' on plaintiffs' injuries, the Supreme Court and [Ninth Circuit] have found the causal chain too weak to support standing at the pleading stage." *Maya*, 658 F.3d at 1070.  Plaintiffs must show "a particular defendant" committed acts causing a particular injury.  *Murthy v. Missouri*, 603 U.S. 43, 45 (2024).  They cannot rely on a "highly attenuated chain of possibilities" to establish standing.  *Wendover Prods. LLC v. PayPal, Inc.*, 2025 WL 3251667, *3 (N.D. Cal. 2025) (Freeman, J.) (citation omitted).

Plaintiffs allege no concrete injury traceable to Grocery Outlet.  That is because their allegations show it is utterly implausible that the Google and Flipp cookies were not already on their browsers by the time they landed on groceryoutlet.com, or that they had not already associated Fons's zip code with whatever anonymized profile they associate with Fons.

Plaintiffs affirmatively allege the cookies at issue here are used on at least 20% of all web traffic, track users across multiple websites, record (among other things) users' IP addresses—often more precise than a zip code—and build profiles for users across those websites.  Compl. ¶¶ 54–73.  Prior cases involving Google suggest that "Google's code 'is found on websites accounting for more than half of all internet tracking,'" and a majority of United States desktop computers uses the Google web browser, Chrome.  *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 613 (N.D. Cal. 2021).  In light of these facts, the only way Plaintiffs can allege Grocery Outlet caused cookies to share data with Google or Flipp (assuming that is injury) is by alleging facts plausibly showing that, despite the ubiquity of these cookies across the internet, it was ***only*** Grocery Outlet's website that placed a Google or Flipp cookie on their browser.  They do not and cannot allege those facts tracing the sharing of this (nonprivate) data, and thus lack standing.  This "highly attenuated chain of possibilities" is insufficient for traceability because "Plaintiffs' theory at bottom amounts to no more than asking the Court to look at" how cookies function generally, and "guess as to how likely it is that" Google and Flipp obtained private data only from Grocery Outlet.  *Wendover Prods.*, 2025 WL 3251667, at *3–4 (Freeman, J.).

In sum, because Plaintiffs do not allege a concrete injury-in-fact, let alone one traceable to Grocery Outlet, they cannot establish Article III standing.  *See Maya*, 658 F.3d at 1067.

13

MOTION TO DISMISS COMPLAINT
Case No. 5:26-cv-00964-BLF

## V.    THE COURT SHOULD DISMISS FOR FAILURE TO STATE A CLAIM

Even if Plaintiffs had standing, the Court should dismiss under Rule 12(b)(6).

### A.    Plaintiffs' CIPA Theories Conflict With the CCPA.

The CCPA "provide[s] … comprehensive internet privacy … protection."  Assem. Com. on Appropriations, Analysis of Sen. Bill No. 1121 (2017-2018 Reg. Sess.) Aug. 29, 2018, p. 1. The centerpiece of the CCPA is that website operators must give users the option to "opt out" of selling, sharing, using, or disclosing users' personal information.  *See* Cal. Civ. Code §§ 1798.120(a), 1798.135(a).  Though it was enacted in 2018, the CCPA did not go into effect until July 2020.  *See* Stats. 2018, c. 55 (A.B. 375).  Even still, California voters adopted Proposition 24, further delaying enforcement of the CCPA until July 2023.  Cal. Civ. Code § 1798.185(d) (enforcement "shall not commence until July 1, 2023"); *see* Initiative Measure (Prop. 24, § 21, approved Nov. 3, 2020, eff. Dec. 16, 2020).  Thus, California's Legislature and voters gave businesses five years to conform to the CCPA.

Under the CCPA's opt-out scheme, website operators can collect and disclose  "products or services purchased, obtained, or considered, … browsing history, search history, and information regarding a consumer's interaction with an internet website application[,]" Cal. Civ. Code § 1798.140(v)(1)(A), (D), (F), so long as they also provide users the chance to request that operators not collet or share their data.  *See* Cal. Civ. Code §§ 1798.100 (permitting collection and sharing of personal information), 1798.130 (detailing disclosure requirements).  Grocery Outlet complies with the CCPA's opt-out requirement not only by including a "conspicuous link" to its privacy policy, Cal. Code Regs. tit. 11, § 7013(c), but also through, among other things, its cookie banner—the most conspicuous and transparent notice it could have offered. *See* Compl. ¶¶ 36–37.

Plaintiffs allege Grocery Outlet caused third-party cookies to be transmitted to their devices "[e]ven before the popup cookie consent banner appeared on the screen."  Compl. ¶¶ 85, 94.  In this way, the Complaint replaces the CCPA's opt-out regime with an opt-in regime that requires users' express consent *before* data can be lawfully shared.  But it makes no sense that California's Legislature and voters would pass the CCPA's comprehensive opt-out scheme,

14

MOTION TO DISMISS COMPLAINT
Case No. 5:26-cv-00964-BLF

DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

establish an agency to enforce it, and give websites five years to comply with it, all while knowing CIPA—passed years earlier—prohibited the opt-out scheme all along.

As the *Eating Recovery* court explained, considering (1) that the CCPA's provisions "more clearly speak to the practice of data sharing," (2) CIPA's "ambiguity[,] and [(3)] its imposition of criminal liability, perhaps courts should not be so quick to assume that" "the Legislature really intend[ed] to subject companies like [Grocery Outlet] to criminal liability for using third-party software to track website activity." 806 F. Supp. 3d at 1119. The California Court of Appeal has also warned that "section 631 … is quite ambiguous" and that, "[s]ince we are dealing with a Pen[al] statute, language so ambiguous should be interpreted in favor of the alleged violator." *Warden v. Kahn*, 99 Cal. App. 3d 805, 812 & n.3 (1979). This tracks the principle that "penal statutes are to be construed strictly, and an individual is not to be subject to a penalty unless the words of the statute plainly impose it." *Bittner v. United States*, 598 U.S. 85, 102 (2023) (Gorsuch, J., joined by Jackson, J.); *see In re Zerbe*, 60 Cal. 2d 666, 668 (1964) ("with the construction of a criminal statute," the alleged offender "must be given the benefit of every reasonable doubt as to whether the statute [is] applicable to him").

Perhaps acknowledging the conspicuous mismatch between the will of California voters articulated in the CCPA and their CIPA theory, Plaintiffs emphasize that Grocery Outlet's cookie banner allegedly failed to deactivate certain cookies (despite successfully deactivating most others). Even if the "Reject All" button malfunctioned, the cookies on groceryoutlet.com do not transform into criminal wiretaps. The Court should not permit Plaintiffs to repackage an alleged violation of the CCPA as a CIPA claim. Nor should the Court let Plaintiffs trample California's privacy scheme by finding countless companies using routine, CCPA-compliant web tools are unwitting criminals under CIPA.

## B.     Plaintiffs' CIPA § 631 Claim Fails on the Merits.

Even humoring Plaintiffs' proposed privacy scheme, they fail to allege the elements of a CIPA § 631 claim. Section 631(a) contains three direct-liability clauses prohibiting: (1) "wiretapping," (2) "attempting to learn the contents or meaning of a communication in transit over a wire," and (3) using or sharing information obtained through "either of the previous two

15

activities." *Tavernetti v. Super. Ct.*, 22 Cal. 3d 187, 192 (1978).  Section 631(a) also contains a fourth, derivative liability clause for aiding another in violating any one of the first three.  *James v. Allstate Ins. Co.*, 2023 WL 8879246, *2 (N.D. Cal. 2023).

Plaintiffs sue Grocery Outlet for derivative liability (fourth clause) for the third-party cookie developers' alleged violations of the second clause, *i.e.*, "read[ing] … the contents or meaning of electronic communications."[1]  Compl. ¶¶ 139–40.  But Plaintiffs fail to allege that the third parties violated the second clause for two reasons.

### 1. Plaintiffs Do Not Allege Any Communication or its Contents.

Section 631(a)'s second clause prohibits "read[ing], or attempt[ing] to read, or to learn the contents or meaning" of a communication.  Cal. Pen. Code § 631(a).  "With the caveat that it's virtually impossible to understand what Section 631(a) actually means," *Eating Recovery*, 806 F. Supp. 3d at 1118, this clause, applied to online advertising and analytics tools, "protects only the internal, user-generated material of a message," *i.e.*, "contents of an online communication."  *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (citations omitted).  It does not apply to "record information" like "keystrokes, mouse clicks, pages viewed, and shipping and billing information … [p]laintiff's IP address, her location at the time of the visit, her browser type, and the operating system on her device."  *Id.*  Thus, even where the "information … transmitted to third parties include[s] the user's [unique] ID and the address of the webpage from which the user's HTTP request to view another webpage was sent," it "does not meet the definition of 'contents,' because these pieces of information are not the 'substance, purport, or meaning' of a communication."  *In re Zynga Priv. Litig.*, 750 F.3d 1098,

---

[1] Plaintiffs cannot bring a direct liability claim against Grocery Outlet (first three clauses) because it cannot "wiretap" or "eavesdrop" on *its own* communications.  *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024) (no § 631 claim where "[d]efendant was the party that was meant to … receive [p]laintiffs' communications").  And the alleged third-party cookies cannot violate "[t]he first clause … because nobody tapped a 'telegraph or telephone wire.'"  *Eating Recovery*, 806 F. Supp. 3d at 1115.  Finally, any claim under the third clause fails without an underlying violation of clause one or two.  *Id.*

16

MOTION TO DISMISS COMPLAINT
Case No. 5:26-cv-00964-BLF

DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

1107, 1108 (9th Cir. 2014). This Court dismissed a claim under the Stored Communications Act for failing to allege "contents" of a communication, reasoning "the user's name, email address, Google account name, home city and state, zip code, and in some instances telephone number" were "record information." *Svenson*, 65 F. Supp. 3d at 729.

The same reasoning applies here. Fons alleges third parties learned the fact he clicked on a "Weekly Ad" and that he entered a zip code in a "Store Locator." Compl. ¶ 80. But clicks are not the contents of communications, *see Svenson*, 65 F. Supp. 3d at 729, and the mere fact that a user enters a zip code into a field is not "contents," either. *See id.*; *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1084 (N.D. Cal. 2015) (same where plaintiffs entered "user name or password"). Turner does not identify any interactions or information allegedly transmitted to third parties. *See* Compl. ¶ 89; *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 839 (N.D. Cal. 2024) (dismissing CIPA claims where, "instead of offering factual allegations about how the plaintiffs' various providers are *actually* using Google's products, the plaintiffs allege hypothetical examples— based on the generic product descriptions—of how various product features could be used").

And even the categories of information Plaintiffs allege third party cookies are, *in general*, *capable* of collecting is merely "record information." Plaintiffs allege the third-party tools are capable of collecting users' "(i) browsing history, (ii) visit history, (iii) website interactions, (iv) demographic information, (v) interests and preferences, (vi) shopping behaviors, (vii) device information, (viii) referring URLs, (ix) session information, (x) user identifiers, and/or (xi) geolocation data." Compl. ¶ 73. But "interests and preferences" and "shopping behaviors" are not even facially "communications"—they are inferences that an observer might make from a customers' actions. The remaining "communications" are record information.[2] *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 944 n.9 (N.D. Cal. 2023)

---

[2] While Plaintiffs allege third-party cookies *can* record "search queries," Compl. ¶ 30, neither alleges they made any searches on the website. *See Jones v. Peloton Interactive, Inc.*, 720 F. Supp. 3d 940, 947 (S.D. Cal. 2024) (dismissing § 631 claim where plaintiff "d[id] not identify enough facts about the content of the allegedly intercepted conversations"); *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 71 (W.D. Pa. 2023) (dismissing online wiretapping claim where

MOTION TO DISMISS COMPLAINT
Case No. 5:26-cv-00964-BLF

DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

("page visits, purchase intent signals, and add-to-cart actions" are not contents); *Yoon*, 549 F. Supp. 3d at 1077, 1082–83 (same). Because Plaintiffs do not allege the third parties collected the "contents" of any communications, they fail to state a § 631 claim.

### 2. Plaintiffs Do Not Allege Third Parties Read any Communications in Transit.

Plaintiffs' § 631 wiretapping claim also fails because, even if they had alleged that third-party cookies captured anything more than "record information," they do not allege that the third parties "read" their communications "while … in transit." Cal. Pen. Code § 631(a).

Again acknowledging that "section 631 … is quite ambiguous" and "badly in need of simplification," *Warden*, 99 Cal. App. 3d at 811, 812 & n.3 (quotation omitted), the reading-in-transit element requires that the third parties "attempted to understand or decipher the contents of [p]laintiffs' communications … while the communications were in transit." *Torres v. Prudential Fin., Inc.*, 2025 WL 1135088, *7 (N.D. Cal. 2025). To the extent any of the data collected by the third-party cookies are "communications," Plaintiffs do not allege third parties attempted to *read* any communication. They allege their communications were "track[ed] and collect[ed]" by, and "sent" to, third parties, Compl. ¶¶ 4, 58, 86, 95, but making a communication available to third parties does not mean any third party attempted "understand[] the substantive meaning of the message." *Williams v. DDR Media, LLC*, 757 F. Supp. 3d 989, 995 (N.D. Cal. 2024) (defining "read" under CIPA; dismissing on summary judgment); *see Torres*, 2025 WL 1135088, at *7 ("'categorizing and analyzing' information" not "reading" under CIPA"); *Eating Recovery*, 806 F. Supp. 3d at 1117 ("filtering process that simply sorts out certain data" not "reading"); *B.K.*, 721 F. Supp. 3d at 1064 (allegation that service "intercepted, viewed, analyzed, and used" health information too "vague" to establish anyone actually viewed data).

Further, Plaintiffs must allege not only that third parties tried to read the communications, but that they did so *while the communications were in transit* from Plaintiffs to Grocery Outlet. *Eating Recovery*, 806 F. Supp. 3d at 1117. This is because CIPA distinguishes between "what the third party does *during* the conversation and … what [it] does with the recorded transcripts

plaintiff "ple[d] that she typed 'search words into the search bar,' but d[idn't] say what those searches were"), *aff'd as modified*, 148 F.4th 153 (3d Cir. 2025).

18

MOTION TO DISMISS COMPLAINT
Case No. 5:26-cv-00964-BLF

DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23ᴿᴰ FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

*after* the conversation." *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1108 (C.D. Cal. 2023) (dismissing § 631 claim); *see Rodriguez v. Google LLC*, 2022 WL 214552, *1 (N.D. Cal. 2022) (CIPA § 632, not § 631, "covers improper recordings"); *Eating Recovery*, 806 F. Supp. 3d at 1118 (same). Here, Plaintiffs allege only that Grocery Outlet "automatically disclosed [communications] to … the Third Parties while the communications are in transit between the user's browser and the Website." Compl. ¶ 50. But even crediting this conclusory allegation, it still fails because it does not show that third parties "attempted to read or learn the contents of the communication while in transit." *James*, 2023 WL 8879246, at *3 (dismissing § 631 claim; allegation that "data is stored or can be accessed by" software vendor was "insufficient to support a plausible interference [vendor] attempted to read or learn the contents of the communication while in transit"). In fact, Plaintiffs allege the opposite: third parties "analyze and aggregate this user data across websites *and time*." Compl. ¶ 58 (emphasis added). This reflects analyzing data *after* collecting and aggregating it.

Because the Complaint does not allege the "contents" of any communications, let alone that the third parties "read" them "while … in transit," Plaintiffs fail to state a § 631 claim.

## C. Plaintiffs' CIPA § 638.51 Claim Fails on the Merits.

Plaintiffs allege the third-party cookies—found on hundreds of thousands or even millions of website—are not only criminal wiretaps, but also criminal "pen registers." Compl. ¶¶ 152, 153. Plaintiffs say the cookies are pen registers because they allegedly capture IP addresses and other "routing" information. *Id.* ¶ 152. Like the § 631 theory, this pen-register theory is crosswise with the CCPA. It fails because (1) § 638.51 does not apply to internet communications, (2) the third-party cookies are not pen registers, and (3) Plaintiffs suffered no injury from any limited aspect of the cookies that could qualify as a pen register.

### 1. CIPA § 638.51 Only Applies to Telephonic Communications.

Its plain language and legislative history confirm that § 638.51 applies only to communications through a telegraph or telephone. *See Day v. City of Fontana*, 25 Cal. 4th 268, 272 (2001) (plain language and legislative history reveal legislative intent). Pen registers, when installed on a telephone line, record the numbers that a telephone line dials. Law enforcement

19

MOTION TO DISMISS COMPLAINT
Case No. 5:26-cv-00964-BLF

historically installed pen registers on suspects' phones to identify their associates.  But pen registers do not implicate significant privacy concerns.  The Supreme Court held decades ago that using a pen register does not constitute a "search" under the Fourth Amendment because a caller does not have a "legitimate" expectation of privacy in the telephone numbers one dials.  *Smith v. Maryland*, 442 U.S. 735, 745 (1979).  Congress enacted the federal pen register prohibition, 18 U.S.C. § 3121, to make it a misdemeanor to use a pen register without authorization.  In 2015, in response to concerns from California law enforcement that officers might be committing federal misdemeanors when using pen registers, the Legislature passed the pen register law "to authorize state and local law enforcement to seek emergency orders for [pen registers]" without violating the federal equivalent.  Assem. Com. on Privacy & Consumer Protection, Analysis of Assem. Bill No. 929 (2015-106 Reg. Sess.) Apr. 21, 2015, p. 4.

California's Legislature modeled the pen register law on the federal law and narrowly defined a pen register as "a device or process that records or decodes dialing, routing, addressing, or signaling information … , but not the contents of a communication."  Cal. Pen. Code § 638.50(a); *see* 18 U.S.C. § 3127(3) (materially identical definition).  The Legislature chose to use a term that (like its close cousin, the trap and trace device) has for decades been well-known to apply specifically to telephonic communications.  *See Twitter, Inc. v. Garland* 61 F.4th 686, 691 n.2 (9th Cir. 2023); *In re U.S. for an Ord. Authorizing Roving Interception of Oral Commc'ns* 349 F.3d 1132, 1136 (9th Cir. 2003); *Application of U. S. of Am. for an Ord. Authorizing an In-Progress Trace of Wire Commc'ns over Tel. Facilities*, 616 F.2d 1122, 1127 (9th Cir. 1980); *People v. Larkin*, 194 Cal. App. 3d 650, 653 n.2 (1987).  "[W]here the Legislature uses terms that have a well-settled judicial construction, we may presume it intends that the terms retain [that] meaning."  *In re Marriage of McIntyre Shayan & Shayan*, 106 Cal. App. 5th 76, 83 (2024).  Accordingly, CIPA's plain text does not encompass the non-telephonic communications at issue in the Complaint.

Later legislative history underscores this point.  The Legislature has a history of amending CIPA to address technological developments, including "in 1985, 1990, and 1992 to take account of privacy issues raised by the increased use of cellular and cordless telephones."

20

MOTION TO DISMISS COMPLAINT
Case No. 5:26-cv-00964-BLF

*Smith v. LoanMe Inc.*, 11 Cal. 5th 183, 191 (2021).  But when it added § 638.51 in 2015, it did not.  To the contrary, just two years after enacting § 638.51, the Legislature amended CIPA again to address, for the first time, communications through "Internet Web sites and social media"— but it did not change § 638.51.  *Gutierrez v. Converse, Inc.*, 2025 WL 1895315, *3 (9th Cir. 2025) (Bybee, J., concurring) (quoting Cal. Pen. Code § 632.01).  A year later, the Legislature enacted the CCPA, which expressly permits the tools at issue in this case—and which Plaintiffs characterize as criminal pen registers.  Applying CIPA to commonplace web tools would adopt a policy the Legislature had multiple opportunities to—but did not—embrace.

Section 638.51's context supports this reading.  *See Turrieta v. Lyft, Inc.*, 16 Cal. 5th 664, 687 (2024) (statutory language must be read in context, and in harmony).  For example, CIPA specifies that a pen register may not be installed "without first obtaining a court order pursuant to Section 638.52 or 638.53."  Cal. Pen. Code § 638.51(a).  Section 638.53 applies only in certain "emergency situation[s]," Cal. Pen. Code § 638.53(a)(2), while § 638.52 requires an order "specify[ing] … [t]he identity … of the person to whom is leased or in whose name is listed *the telephone line* to which the pen register … is to be attached … [and] [t]he number and … physical location of *the telephone line* to which the pen register … is to be attached." Cal. Pen. Code § 638.52(d)(1), (3) (emphasis added).  If a court order can *only* authorize the use of a pen register on a telephone line, then a "pen register" necessarily does not apply to web tools.  Nothing in § 638.51's language, history, or context suggests the Legislature meant for it to apply to routine web tools like those at issue here.

**2.    Cookies Are Not Pen Registers.**

Even if § 638.51 did apply to web tools, the third-party cookies alleged in Plaintiffs' Complaint would not be pen registers for another reason.  Namely, if the Court disagrees with Grocery Outlet's prior argument that the cookies do not capture the "contents" of communications, *see supra* § V.B.1, that is an additional, independent reason to find the cookies are not pen registers.  CIPA defines pen registers as devices that collect "dialing, routing, addressing, or signaling information …, but not the contents of a communication." Cal. Pen. Code § 638.50(b).  Because of the different privacy concerns implicated, the Supreme Court has

21

MOTION TO DISMISS COMPLAINT
Case No. 5:26-cv-00964-BLF

DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

"distinguished pen registers from more intrusive surveillance techniques on the ground that 'pen registers do not acquire the contents of communications' but rather obtain only the addressing information associated with phone calls." *United States v. Forrester*, 512 F.3d 500, 509 (9th Cir. 2008) (citing *Smith*, 442 U.S. at 741); *see id.* at 510 n.6 ("Surveillance techniques that enable the government to determine not only the IP addresses that a person accesses … might be more constitutionally problematic."). That is why pen registers do not violate the Fourth Amendment. *See Smith*, 442 U.S. at 745; *In re Zynga*, 750 F.3d at 1108 ("[W]e have allowed the warrantless collection of email and IP addresses … because [they] do not necessarily reveal any more about the underlying contents of communication than do phone numbers.'"). If cookies capture "contents," they are by definition not pen registers. Plaintiffs cannot have it both ways. *See Kishnani*, 2025 WL 1745726, at \*4.

### 3. Plaintiffs Have No Statutory Standing for a § 638.51 Claim.

Even if the limited aspect of the third-party cookies that captured IP addresses qualified as a pen register, Plaintiffs cannot bring a civil claim for damages because they did not suffer any injury caused by that narrow aspect of the code. Plaintiffs invoke the private right of action in § 637.2, Compl. ¶ 158, but § 637.2 only confers a right of action on someone "injured by a violation" of CIPA. Cal. Pen. Code § 637.2(a). Plaintiffs must therefore allege facts establishing they suffered an injury caused by Grocery Outlets' use of third-party cookies in violation of § 638.51, that is, as pen registers. They cannot.

As discussed above, the Complaint fails to allege a concrete privacy injury or economic injury. *See supra* § III. But the theory of harm is flimsiest for Plaintiffs' § 638.51 claim because pen registers capture only routing information, which is an especially non-sensitive type of data. The most obvious routing information is IP addresses, which serve the same role in internet communications as telephone numbers do for phone calls. *See People v. Stipo*, 195 Cal. App. 4th 664, 669 (2011) ("Like telephone numbers, which provide instructions to the 'switching equipment that processed those numbers,' … IP addresses are not merely passively conveyed through third party equipment, but rather are voluntarily turned over in order to direct the third party's servers."); *In re Zynga*, 750 F.3d at 1108 (equating IP addresses with phone numbers).

22

MOTION TO DISMISS COMPLAINT
Case No. 5:26-cv-00964-BLF

Plaintiffs admit that users have to disclose their IP addresses every time they visit a website, Compl. ¶ 23, and that IP addresses merely "constitute addressing information and do not necessarily reveal any more about the underlying contents of communication." *Id.* ¶ 154.

For these reasons, Plaintiffs have no privacy interest in routing information like their IP addresses. *United States v. Rosenow*, 50 F.4th 715, 738 (9th Cir. 2022) ("[A] defendant has no expectation of privacy in IP … addresses"); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1089 (N.D. Cal. 2022) (same). Courts dismiss § 638.51 claims on this basis. *Khamooshi*, 786 F. Supp. 3d at 1179; *Dawidzik v. Tesla, Inc.*, 2025 WL 3786963, *6 (C.D. Cal. 2025); *Gabrielli v. Insider, Inc.*, 2025 WL 522515, *6 (S.D.N.Y. 2025) (same). Thus, to the extent the cookies could be considered pen registers by collecting routing information like IP addresses, Plaintiffs suffered no harm from the disclosure of this non-sensitive information.

**D.     Plaintiffs Do Not Allege Either Privacy Claim.**

For the same reasons Plaintiffs do not plead a concrete privacy injury, *see supra* § IV.A.1, they fail to state a claim for common law intrusion upon seclusion or invasion of privacy under the California constitution. *See Low*, 900 F. Supp. 2d at 1025 ("The California Constitution and the common law set a high bar for an invasion of privacy claim.").

**E.     Plaintiffs Do Not Allege Fraud.**

To state a claim for common law fraud, deceit, and/or misrepresentation, a plaintiff must plead, among other things, knowledge of falsity (scienter) and resulting damage (and meet the heightened Rule 9(b) pleading standard). *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1194 (N.D. Cal. 2020). Plaintiffs' fraud, deceit, and misrepresentation claim fails on both counts.

**1.     No Scienter.**

Falsity alone, without scienter, is insufficient for fraud. *Strugala v. Flagstar Bank, FSB*, 839 F. App'x 69, 72 (9th Cir. 2020); *Wishnick v. Frye*, 111 Cal. App. 2d 926, 931–32 (1952).

Plaintiffs allege no facts from which to reasonably infer that Grocery Outlet had knowledge of any falsity in its "Reject All" button, nor that Grocery Outlet intended to defraud or mislead Plaintiffs when presenting that option. *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 974 (N.D. Cal. 2008), *aff'd*, 322 F. App'x 489 (9th Cir. 2009). That the "Reject All"

23

DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

button did not function may be consistent with liability, but that allegation alone, without more, does not "nudge [Plaintiffs'] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plaintiffs' conclusory allegations that Grocery Outlet "knew, or should have known" and "actively concealed" that the "Reject All" button was defective, Compl. ¶ 162, do not state a claim.  *Apex Compounding Pharmacy, LLC v. eFax Corp.*, 2017 WL 9500946, *4 (C.D. Cal. 2017) (dismissing fraud claim; allegations of knowledge and intent were conclusory).  Plus, allegations about what Grocery Outlet "should have known" do not supply the scienter for intentional fraud.  *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974, (1997) (fraud requires actual knowledge or reckless indifference).

### 2.    No Harm.

*Second*, as discussed above, Plaintiffs do not allege any cognizable injuries.  *See supra* § IV.A.2.  Plaintiffs' fraud claim cannot stand and the Court should dismiss with prejudice. *Stephenson v. Argonaut Ins. Co.*, 125 Cal. App. 4th 962, 974 (2004) (dismissing fraud claim because "[d]eception without resulting loss is not actionable").

### F.    Plaintiffs Do Not Allege Unjust Enrichment.

Plaintiffs allege that operating cookies and the defective "Reject All" button unjustly enriched Grocery Outlet.  *See* Compl. ¶ 173.  But under California law, "there is not a standalone cause of action for 'unjust enrichment.'"  *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).  Though courts may "construe the cause of action as a quasi-contract claim seeking restitution," *id.*, Plaintiffs can only succeed on a quasi-contract theory if they allege Grocery Outlet "received and unjustly retained a benefit" "at the plaintiff's expense." *Casillas v. Six Flags Ent. Corp.*, 812 F. Supp. 3d 1016, 1033 (C.D. Cal. 2025).  Plaintiffs' Complaint satisfies neither element.  *See supra* § IV.A.2.  So even if the Court finds Plaintiffs alleged a privacy injury sufficient for standing, it should dismiss the unjust enrichment claim because they do not allege losing anything of value or that Grocery Outlet profited.  *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008) (no unjust enrichment if defendant did not retain a benefit).

MOTION TO DISMISS COMPLAINT
Case No. 5:26-cv-00964-BLF

DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

## G.      Punitive Damages Are Unavailable.

To recover punitive damages, *see* Compl. ¶¶ 93, 103, 146, Plaintiffs must allege Grocery Outlet acted with "oppression, fraud, or malice" or "evil motive."  Cal. Civ. Code § 3294(a); *Scott v. Phoenix Schs., Inc.*, 175 Cal. App. 4th 702, 716 (2009).  They do not.  The Complaint alleges Grocery Outlet's use of cookies was "malicious, oppressive, [and] willful," Compl. ¶ 117, but the Court can ignore these conclusions and should dismiss the punitive damages demand.  *See Rhynes v. Stryker Corp.*, 2011 WL 2149095, *5–6 (N.D. Cal. 2011) (dismissing punitive damages on this basis); *Doe v. Microsoft Corp.*, 2023 WL 8780879, *14 (W.D. Wash. 2023) (same).  Plus, to recover punitive damages against a corporation, plaintiffs must allege "an officer, director or managing agent" of the defendant "authorized or ratified the … conduct."  Cal. Civ. Code § 3294(b); *Taiwan Semiconductor Mfg. Co., Ltd. v. Tela Innovations, Inc.*, 2014 WL 3705350, *6 (N.D. Cal. 2014) ("[A] company simply cannot commit willful and malicious conduct—only an individual can.").  Plaintiffs make no such allegations.

## VI.      CONCLUSION

"The state of affairs with CIPA is untenable," *Eating Recovery*, 806 F. Supp. 3d at 1112, as are Plaintiffs' allegations here.  The Court should dismiss the Complaint with prejudice.

DATED: April 24, 2026

DAVIS WRIGHT TREMAINE LLP

By:    */s/ Fred B. Burnside*
        Fred B. Burnside

*Attorneys for Grocery Outlet Inc.*

25

MOTION TO DISMISS COMPLAINT
Case No. 5:26-cv-00964-BLF

DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599