UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Beth Labson Freeman, District Judge

FONS, et al., )
)
Plaintiffs, )
)
vs. ) Case No. C 26-00964-BLF
)
GROCERY OUTLET, INC., )
)
Defendant. )
_______________________________)

San Jose, California
Thursday, April 2, 2026

TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND RECORDING 11:25 - 11:50 = 25 MINUTES

APPEARANCES:

For Plaintiffs:

Gutride Safier LLP
100 Pine Street
Suite 1250
San Francisco, California 94111
BY: SETH ADAM SAFIER, ESQ.

For Defendant:

Davis Wright Tremaine LLP
350 South Grand Avenue
27th Floor
Los Angeles, California 90071
BY: SANCHO ACCORSI, ESQ.

Transcribed by: Echo Reporting, Inc.
Contracted Court Reporter/
Transcriber
echoreporting@yahoo.com

Thursday, April 2, 2026 11:25 a.m.

P-R-O-C-E-E-D-I-N-G-S

--oOo--

(Call to order of the Court.)

THE COURT: Good morning. Thanks for joining on Zoom. Let's call the case and get your appearances.

THE CLERK: 26-00964, Fons, et al., versus Grocery Outlet.

MR. SAFIER: Good morning, your Honor. Seth Safier on behalf of the Plaintiffs and putative class.

THE COURT: Good morning.

MR. ACCORSI: Good morning, your Honor. Sancho Accorsi on behalf of Defendant.

THE COURT: Hello, Mr. Accorsi.

All right. Thank you for the case management conference statement. It was very complete. I appreciate that, and this looks like a proposed class action on a data breach. Is that correct?

MR. SAFIER: It is data-related, your Honor, but this is really about a cookie banner that pops up on the --

THE COURT: I'm sorry. Yes.

MR. SAFIER: It's still data-related. It's not a data breach, but it's a breach of the -- we would say the Plaintiff and other folks that rejected cookies --

THE COURT: Yes.

MR. SAFIER: -- their data privacy rights.

THE COURT: So I thought it was interesting. I've never seen a case like this. We certainly all, as consumers, see banners on "Reject all." So what -- I gather it's not across the board that the "Reject all" is dishonored, you might say. It said, for certain third parties, it is not applicable or not respected?

MR. SAFIER: When you're saying that, in this case, you mean, your Honor?

THE COURT: Yes.

MR. SAFIER: We believe it's across the board. We believe that -- and discovery obviously hasn't begun, but we believe that there's no difference here in accepting all or rejecting all.

THE COURT: Wow.

MR. SAFIER: We believe it's a misrepresentation.

THE COURT: Okay.

MR. SAFIER: And the cases are different than your garden-variety -- or there's been a pixel on the website, because, unlike those cases, where -- some consumers care, some consumers don't care. Some consumers know that it's really impossible to surf the web without these types of technologies, largely.

THE COURT: Right.

MR. SAFIER: It's disclosed in a privacy policy.

Here there's a distinction, with a large, large difference, and that is, people coming in are made a promise that says, "You can reject these tracking technologies, and you can feel safe browsing here, whatever it may be."

Here the subject matter isn't all that sensitive, but, still, consumers have the right to reject these cookies. They're given that opportunity, and it's a misrepresentation, according to our investigation of the allegations.

THE COURT: Okay. Mr. Accorsi, any comments? We're not litigating the case. I'm just trying to learn about it.

MR. ACCORSI: Absolutely. Thank you for the opportunity. The allegations in the complaint are that when users click on the "Reject all" button, cookies associated with two third parties continue to run. That is not all the cookies that are operating on the website. It's a small subsection, and we believe the facts are going to bear out that this is a limited set of omissions in the cookie banner, and we don't believe there are going to be any facts to show any sort of intent to deceive or anything along those lines.

THE COURT: Okay. Sounds like the discovery can be pretty extensive, and, Mr. Safier, you've litigated cases like this before, I imagine. I haven't seen a case like

this, so it just seems like there's a lot here.

MR. SAFIER: It will be expert-heavy, yes, for sure --

THE COURT: Yes.

MR. SAFIER: -- but it's actually quite simple, depending on what types of data is maintained and preserved. So, for example, in certain instances, there can be an indelible record that says, "X person rejected Y banner at Z time," and then it will -- there will be a record of all the information about that person's browse session that goes to the third party after that, and that will be third-party discovery, most likely. Some Defendants collect that.

Many of these websites operate utilizing what's called a "cookie manager," a third-party product. I'm sure you've seen it, when you go to certain websites, and sometimes those cookie managers will collect all the data. It will be data-specific. We will need to find largely out when the cookie banner went up, when it was corrected, and then what type of information was passed.

It's not incredibly factually intensive, because it's like a product case where there's a misrepresentation, where there's a perfect record, typically, of all the purchasers and all of their interactions with the product, and here, unlike certain product cases where we wonder, "Well, was 'all natural' important to this consumer?"

Here we know at the outset that the consumer cared about privacy, because they took the time to reject cookies, as opposed to accept them or toggle on some cookies and not on some other cookies. So it is somewhat intensive discovery at the outset, but it will be more intensive, from an expert perspective, explaining what's going on to the Court and to the jury (indiscernible).

THE COURT: Yes. Well, I will tell you it has intrinsic interest to every consumer, because we're all involved in this sort of choice every day, aren't we?

MR. SAFIER: It certainly does, and I don't know how much your Honor knows about this, but this whole regime of this -- it's really an American regime, where you have opt out of this type of tracking, started in Europe under GDPR, where we can opt in, and there are analyses, including by the Attorney Generals of New York and California. We've been involved in this case for some number of years, trying to get cookie banners to work properly. It's about 50 percent of them are not operating correctly.

THE COURT: Wow.

MR. SAFIER: And it is an issue, right? It is that same issue, because privacy, more and more, is very important to people.

THE COURT: Yes. So it sounds like this is going to be relatively expensive to -- through discovery and

hiring of experts, which always brings me back to the ADR question. It looks like you both agree to private mediation. Is that correct?

MR. SAFIER: Yes, your Honor.

MR. ACCORSI: Yes.

THE COURT: Okay. So I don't know how much discovery you need before you can go forward. I don't wait until class certification.

MR. SAFIER: Okay.

THE COURT: So what -- help me out, because, again, my normal time frame would be within 150 days of today, but private mediators are expensive, and I don't want to cut it short unnecessarily.

MR. ACCORSI: If I may, there are a few threshold issues before we believe mediation would be useful. The first is, there are significant legal issues to be addressed on the pleadings, and we're hearing a lot about "opt in" and "opt out." The fact of the matter is that, in California, under the CCPA, the legislature enacted an opt-out regime, and they gave companies something like seven years, all told, five to seven years, to adapt to that new requirement.

All of the tools alleged in this complaint are ubiquitous. They comply with the CCPA. These are not inherently illegal tools. And the fact of the opt-out is relevant to their compliance with the CCPA, but not to the

question of wiretapping, and our position is that the legislature would not have spent this long enacting an opt-out regime to allow for the use of these tools only while the entire time knowing they were criminal under a 1967 wiretapping statute.

So there are legal questions that we believe need to be addressed, because those are the claims that carry the most weight. Those are the ones with the statutory damages. Those are the ones that are motivating these cases. So we believe there are legal questions that will need to be addressed on the pleadings before we have really any sense of the scope of this case.

THE COURT: Okay.

MR. ACCORSI: And, further, there is -- it is complicated discovery. It will be very difficult to -- for the two parties to see eye to eye. We've exchanged some back-of-a-napkin figures, assessments of liability, but the parties do not see eye to eye on that, and it will require discovery, and each party interpreting the discovery, to really have a sense of what sort of liability there is or isn't.

And, finally, with respect to the question of class certainly, we dispute that there is a certifiable class in this case, and I maintain that it will be difficult for the parties to see eye to eye on the scope of this case until we

have some judicial guidance on -- driven by the facts -- on whether this is even suitable as a class action.

THE COURT: Okay. Well, you know, those issues are yet to be developed. I -- well, as I said, I don't wait until class certification. That just gets you too far down the road.

I was looking at your request, Mr. Safier, to file your class certification motion by April 23 of 2027, and that's perfectly reasonable, and then, from there, I have developed the rest of the case schedule consistent with my calendar, which will be a little bit longer a runway.

I'm going to circle back to the mediation deadline after we talk through some dates. Did you want to make any other comments, though, before I move on, Mr. Safier?

MR. SAFIER: No. I understood my colleague's statement to be a request for the Court to issue an order regarding that forthcoming motion to dismiss in advance of any mediation deadline, and that's perfectly understandable.

THE COURT: Yes.

MR. SAFIER: I can tell your Honor that this same issue and the same banner issues have been before other judges in this district, including Judges Tigar and Orrick and Ben Pitts (phonetic).

THE COURT: Right.

MR. SAFIER: None of the cases was dismissed

outright, so all of them are going forward in some capacity, but I perfectly understand that request, and it's reasonable, and we're fine to wait whenever.

THE COURT: Okay.

MR. SAFIER: Let's go through the calendar.

THE COURT: Okay. That's fine.

So a couple of things I noted in your case management statement that I want to sort of redirect to be consistent with the way I handle cases. I will adopt your request to have the class certification motion filed no later than April 23rd of 2027.

There were some discussion (sic) in your papers about filing Daubert motions along with class certification, and I want to make this perfectly clear. You get 25 pages to have your motion. You get 25 pages for your opp, and 15 pages for your reply. Within those pages limits, you must include all evidentiary objections, and Daubert is an evidentiary objection. It is not a separate motion.

If you file a separate Daubert motion around the time of class cert, I will not decide it until trial, and it will not be considered in regard to the class certification. So please keep that in mind. It is one motion. This is our local rules. This is not my particular -- so I'm --

MR. SAFIER: I love it. Thank you, your Honor.

THE COURT: -- sure that was probably not your

issue. It was more --

MR. SAFIER: I love it. It's a big issue in class certification, where you end up getting a 70-page motion of Daubert --

THE COURT: Right.

MR. SAFIER: -- and it just -- and then you -- it's a fight about who gets the last word, and the local rules are very clear --

THE COURT: Very clear.

MR. SAFIER: -- but most judges have different procedures.

THE COURT: Yes. I'm sure that's true, and that's one of the great things about a case management conference, is we can get all of that set before you even hire your experts, and disclose them, and do all of that. So I don't reserve a hearing date for class certification specially. When -- up to 14 days before you file your class cert motion, Mr. Safier, you can reserve my next available hearing date.

MR. SAFIER: Yes, your Honor.

THE COURT: By looking at this April date of filing, it looks to me as though that hearing will probably be in August or September, and if you could tuck this away in your memory, even if I have an August date available, I would prefer you set it in September, and I'll be really

honest with you, and candid. That's when law clerks turn over, and it would be much easier if I could not burden a law clerk who's out the door at the end of August with something this significant.

So I know Mr. Accorsi is going to want some discovery after he sees your motion, and so this will give you ample time to conduct the discovery and then brief it. So I am not adopting any of your briefing schedule here. I only ask that the closing brief for class cert be filed at least three weeks before the hearing.

MR. SAFIER: Yes, your Honor.

THE COURT: So that's -- but you then can -- once you file your motion -- and you two will have agreed on a hearing date, and reserved it -- you're welcome to give me a stipulated briefing schedule, because it's -- the response is not going to come in 14 days after the motion. It's going to be a couple of months later. That's -- and this gap in time is a really productive time for you on the class cert. I know it is. So you'll be able to work that out.

I -- with a hearing date in roughly September of 2027, I am going to set the last day I will hear summary judgment or any other dispositive motions on January 27 of 2028. That should give you time to receive my order on class certification before you are briefing summary judgment, although there's some overlap.

MR. SAFIER: Right.

THE COURT: It's just unavoidable, but I think that that's a reasonable period of time.

I only allow one summary judgment motion per side in the life of the case, and this January 27 date is the last day I will hear it. I'm going to reserve that date. That's the one date I reserve in advance, and that way you don't need to worry about my calendar being full, and you can file summary judgment the bare 35 days in advance of the hearing. So there's a lot of protection for you there.

Again, if there are Daubert motions or other evidentiary objections in regard to summary judgment, same rules apply, within the 25-page limit for -- or the 15-page limit on reply.

I'm going to set your final pretrial conference on April 20 of 2028 at 1:30 in the afternoon, and trial on May 15 of 2028. I know that's a little bit later than you were hoping for, although I don't think you gave me a schedule that got into the trial dates. I think I took it from your class cert.

MR. SAFIER: We did not, your Honor.

THE COURT: Yes. I find it works better -- I don't like to wait until after class certification, because then the gap is just too big, and I want to keep this going. I will refer all discovery disputes to the magistrate judge

assigned to the case. Sounds like there may be some. I try to keep them at a minimum, and make sure you work out as much as you can.

Then I want to return to the mediation deadline. I'm thinking that I will -- let's see. Class cert will be filed in a year. I'm thinking that it makes sense to have mediation completed around the time you file the class cert motion. What's your thinking on that?

MR. SAFIER: What we usually do is we make a deadline for after the class certification motion immediately after, because then the evidence is out and set forth. Some people prefer to do it after opposition, but, any time around there, the case is pretty well banked, at least from the cert perspective.

THE COURT: Yes. Okay.

Mr. Accorsi, your view?

MR. ACCORSI: Well, we still maintain we'd like to have a court order on whether the class will be certified or not before we know whether we're going to be mediating, but I understand that's not (indiscernible) in the cards. So I think completing mediation during class certification briefing seems -- I'm not sure that the benefits outweigh the costs of doing that. I would shoot to have mediation completed before class certification briefing begins, but I don't feel especially strongly about it.

THE COURT: Okay. Well, I'm going to require that mediation be completed by June 1 of 2027. That's a long time from now. A lot happens in the life of a case. Clearly, if something changes that makes this date unproductive, I'm glad for you to reach out and set a further case management, so we can talk about that.

And so, I mean, this is so far in the future, you don't need to get right on picking a mediator, but don't let too much time go by, because the good ones are busy, and you know that. So I'm giving you that long runway because I don't want you to waste your money on a private mediator, and they're good, but there's only so much they can do if the case isn't really teed up for them so that your clients can evaluate a settlement.

All right. So I guess I'm -- when do you expect to file a motion to dismiss, Mr. Accorsi?

MR. ACCORSI: Right now we've stipulated to a deadline of the 24th of this month.

THE COURT: Okay. So I won't be seeing you until about September, maybe August. I'm not sure what the calendar is going to look like.

MR. ACCORSI: I believe that's correct.

THE COURT: Okay. All right. So you'll -- you can reserve that date within 14 days of filing the motion, so your staff will take care of that.

MR. ACCORSI: Understood.

THE COURT: And I hope that clarifies some things in the case. You'll at least know what's going forward and what isn't. So that will be fine.

I think that covers everything. I do need you to rework this case schedule. I do not bifurcate discovery for class cert versus merits. You are welcome to informally order the discovery in a way that is efficient, but I don't sign an order with any bifurcation. I don't know where that line is between class cert discovery and merits, and, Mr. Safier, I'm sure you've struggled with that sort of thing as well.

MR. SAFIER: There is no such line, your Honor, and do we -- and the bifurcation process, trying to figure out that line, you spend more time fighting about what that line is than the actual discovery.

THE COURT: You know, I think it's easier for each of you to pick off certain discovery and offer to postpone it after class cert, and do it that way rather than trying to draw that line, but that's up to you all. If you want to informally bifurcate, that's fine. I don't sign any order on that.

Let me go over Daubert rules. That is in my standing orders, and it's a little complicated, although I know you can read and you can figure that out. We've already gone

over the fact that any Daubert motion needs to be contained in the body of the motion that it pertains to, but there are also Daubert motions that are for trial. So the -- if you want a stand-alone Daubert motion, there are page limits. You can read those. You don't need to know what those are now.

The key point is that if you want me to decide a Daubert motion in advance of trial, it is your obligation to secure a hearing date at least 60 days before trial. I do not reserve those outside of my standard practice of 14 days in advance of filing the motion. I always recommend you file that motion about eight months before trial. That often doesn't really coincide with the expert discovery schedule, and so I do offer you a sort of a failsafe on that.

You're welcome to use some of your motions in limine as Daubert motions. The limitation there is you only get five in limine motions per side, and each one is five pages long. You're welcome to wait to the end. I'll give it my best shot. But, if you're pressing me at the very end with heavy, difficult Daubert motions, you'll get what you deserve on that.

So it's an option. We give it our best shot. Trial is a few weeks away at that point, but those are the rules, and in my last trial a couple weeks ago, I think I had three

Daubert motions at the final pretrial conference, so clearly happens, but, you know, it's for you to evaluate.

I think that covers everything. If you would meet and confer on the case schedule. I'm only interested in the fact discovery cutoff date, the expert disclosure and cutoff dates. All the rest of these things are just for your benefit. I've assigned the other dates.

If you want to -- I urge you to work out a briefing schedule for everything. I think it -- that way you can just take care of it, and provide the amount of time you need, but you can also work those out closer to the time that you're filing those motions.

Once you get the hearing date, that really tells you how much -- what your runway is, and I only ask that if you are extending your own time to do the briefing, that the closing brief be filed at least three weeks before the hearing. If you're using the 35-day bare limit for filing a motion, then I get my two weeks, you get your two weeks, and that's the way it is, but, if you need a month to brief it, I probably need three weeks to read it.

So I just ask for that, and if you would provide this stipulation on the case schedule to me by April 16, I'd appreciate that, and I think that's everything that I need.

Anything else, Mr. Safier, you'd like to go over?

MR. SAFIER: No, your Honor.

THE COURT: Okay. Mr. Accorsi, anything else?

MR. ACCORSI: No, thank you.

THE COURT: Good. Well, I look forward to working with you on this case. It looks interesting. I look forward to seeing what my colleagues have done in similar cases, and I'll probably see you later this summer or early fall on the motion to dismiss.

MR. SAFIER: With new clerks, I imagine, right?

THE COURT: If it's September, it will be my new clerks. If it's August, the current clerks are going to have to work awfully fast to get it done.

MR. SAFIER: Okay. We'll see you then. Have a great summer.

THE COURT: Thank you.

MR. SAFIER: Goodbye, your Honor.

THE COURT: All right.

MR. ACCORSI: Thank you.

(Proceedings adjourned at 11:50 a.m.)

CERTIFICATE OF TRANSCRIBER

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.



Echo Reporting, Inc., Transcriber

Tuesday, May 5, 2026