GUTRIDE SAFIER LLP
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
Hayley A. Reynolds (State Bar No. 306427)
hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YURI FONS and JENNIFER TURNER, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GROCERY OUTLET INC.,<br><br>Defendant. | Case No. 5:26-cv-00964-BLF<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT<br><br>Hon. Beth Labson Freeman<br><br>Hearing Date: August 27, 2026<br>Hearing Time: 9:00 a.m.<br>Hearing Location: San Jose, Crtrm 1, 5th Fl. |

# TABLE OF CONTENTS


**I. INTRODUCTION** ........ 1

**II. FACTUAL BACKGROUND** ........ 2

A. Grocery Outlet Falsey Told Plaintiffs and Other Users That They Could "Reject All" Cookies on the Website ........ 2

B. Defendant Intentionally Designed the Website and the Website's Cookie Banner. ........ 4

C. Defendant Intentionally Aided the Third Parties' Wrongful Collection of Plaintiffs' and Class Members' Data, By Which Both Defendant and the Third Parties Profited. ........ 5

**III. ARGUMENT** ........ 5

A. Plaintiffs Have Article III Standing for Their Claims. ........ 5

1. Plaintiffs allege that their information was collected. ........ 5

2. Plaintiffs have a legally protectable privacy interest. ........ 6

3. Plaintiffs have pleaded economic injury ........ 11

4. Plaintiffs' injuries are traceable to Defendant ........ 12

B. Defendant's 12(b)(6) Arguments Fail ........ 12

1. A Violation of the CCPA is Not a Cause of Action in this Case. ........ 12

C. Plaintiffs Have Adequately Pleaded CIPA Claims. ........ 13

1. Plaintiffs properly allege a violation of CIPA Section 631(a). ........ 14

a. Plaintiffs allege "contents" were intercepted ........ 15

b. Plaintiffs allege information was intercepted while in transit. ........ 16

2. Plaintiffs properly plead a "Pen Register" claim under Section 638.51. ........ 18

D. Plaintiffs Adequately Plead Claims for Common Law Invasion of Privacy and Intrusion Upon Seclusion. ........ 20

E. Plaintiffs Adequately Plead their Fraud Claims. ........ 20

1. Plaintiffs adequately plead scienter and that Defendants' conduct was not mere error. ........ 20

2. Plaintiffs have adequately pleaded damages with respect to their fraud claims. ........ 21

F. Plaintiffs' Unjust Enrichment Claim is Properly Pled. ........ 21

G. Plaintiffs Sufficiently Plead Punitive Damages. ........ 22

H. Plaintiffs Request Leave to Amend If Necessary. ......................................................23

**IV. CONCLUSION** ..........................................................................................................23

## TABLE OF AUTHORITIES

**Cases**

*A.J. v. LMND Med. Grp.*,
No. 24-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024) ..................... 21

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ................................................................ 11, 15, 20

*Brown v. Natures Path Foods, Inc.*,
No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760 (N.D. Cal. Mar. 10, 2022) ..................... 19

*Bruton v. Gerber Prod. Co.*,
703 F. App'x (9th Cir. 2017) ........................................................................................ 20

*Cody v. Ring LLC*,
No. 23-cv-00562-AMO, 2024 U.S. Dist. LEXIS 30704 (N.D. Cal. Feb. 22, 2024) ..................... 14

*Crowder v. Shade Store, LLC*,
No. 23-cv-02331-NC, 2024 U.S. Dist. LEXIS 114470 (N.D. Cal. Jun. 26, 2024) ................. 21, 22

*D'Antonio v. Smith & Wesson Inc.*,
820 F. Supp. 3d 928 (N.D. Cal. 2026) ...................................................................... 11, 18

*Davis v. Facebook, Inc. ("In re Facebook Inc. Internet Tracking Litig.")*,
956 F.3d 589 (9th Cir. 2020) ........................................................................... 7, 10, 11, 21

*De Ayora v. Inspire Brands, Inc.*,
No. 25-cv-03645-AGT, 2025 U.S. Dist. LEXIS 264583 (N.D. Cal. Dec. 22, 2025) ..................... 9

*DeSoto v. Yellow Freight Sys.*,
957 F.2d 655 (9th Cir. 1992) ......................................................................................... 22

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) .............................................................................. 16

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ........................................................................................... 7

*Esparza v. UAG Escondido A1 Inc.*,
No. 23cv0102 DMS(KSC), 2024 U.S. Dist. LEXIS 24429 (S.D. Cal. Feb. 12, 2024) ................ 16

*Gabrielli v. Haleon US Inc.*,
815 F. Supp. 3d 852 (N.D. Cal. 2025) ........................................................... 9, 10, 11, 17

*Gabrielli v. Motorola Mobility LLC*,
No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836 (N.D. Cal. July 14, 2025) ....... 9, 10, 17, 20

*Garcia v. Blackhawk Network, Inc.*,
No. 2:25-cv-07550-JLS-SSC, 2026 U.S. Dist. LEXIS 75154 (C.D. Cal. Apr. 1, 2026) ................ 9

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ............................................................................ 17

*Goldstein v. Rumble Inc.*,
No. CV 25-06304-MWF (SKx), 2026 U.S. Dist. LEXIS 113489 (C.D. Cal. Apr. 24, 2026) ....... 16

*Hawkins v. Kroger Co.*,
906 F.3d 763 (9th Cir. 2018)........................................................................................... 20

*Heeger v. Facebook, Inc.* 509 F. Supp 3d 1182 (N.D. Cal. 2020)...................................................... 19

*Heerde v. Learfield Commc'ns, LLC*,
2024 U.S. Dist. LEXIS 137781 (C.D. Cal. 2024)................................................................. 15

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1, 26 (Cal. 1994)............................................................................................. 10

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) .............................................................................. 15

*In re Facebook Consumer Priv.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .............................................................................. 21

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
934 F.3d 316 (3rd Cir. 2019) ............................................................................................ 7

*In re Meta Pixel Tax Filing Cases*,
793 F. Supp. 3d 1147 (N.D. Cal. 2025) ............................................................................ 18

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014)........................................................................................... 15

*Jackson v. Linkedin Corp.*,
744 F. Supp. 3d 986 (N.D. Cal. 2024) .............................................................................. 16

*Jager v. Davol, Inc.*,
No. 16-1424-JGB, 2016 U.S. Dist. LEXIS 188821 (C.D. Cal. Oct. 20, 2016) ............................ 22

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942, 955–56 (N.D. Cal. 2023) ..................................................................... 8

*Javier v. Assurance IQ, LLC*,
No. 21-16351, 2022 U.S. App. LEXIS 14951 (9th Cir. May 31, 2022)....................................... 14

*Katz-Lacabe v. Oracle Am.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .............................................................................. 21

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-CV-01473-NW, 2025 U.S. Dist. LEXIS 120002 (N.D. Cal. June 24, 2025) ...................... 6

*Miller v. National Broadcasting Co.*,
187 Cal.App.3d 1463 (1986)............................................................................................. 10

*Mirmalek v. L.A. Times Communs. LLC*,
No. 24-cv-01797-CRB, 2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12, 2024) ............. 17, 18

*Mitchell v. Sonesta Int'l Hotels Corp.*,
No. CV 24-2603-GW-SSCx, 2024 U.S. Dist. LEXIS 186701 (C.D. Cal. Oct. 4, 2024)............... 16

*Moody v. C2 Educ. Sys.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) ..................................................................... 17

*Nguyen v. Stephens Institute*,
529 F. Supp. 3d 1047 (N.D. Cal. 2021) ..................................................................... 20

*Omni King, Inc. v. Accelerant Specialty Ins. Co.*,
No. 5:23-cv-000048-SSS, 2023 U.S. Dist. LEXIS 87708 (C.D. Cal. Apr. 19, 2023) .................. 21

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ..................................................................... 8, 9

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ..................................................................... 16

*Rodriguez v. Ford Motor Co.*,
No. 3:23-cv-00598, 2024 U.S. Dist. LEXIS 218685 (S.D. Cal. Dec. 3, 2024) ...................... 13, 14

*Rodriguez v. Google*,
No. 20-cv-04688-RS, 2024 U.S. Dist. LEXIS 1290 (N.D. Cal. Jan. 3, 2024).............................. 20

*Ruhnke v. Skinmedica, Inc.*,
No. 14-0420-DOC, 2014 U.S. Dist. LEXIS 207235 (C.D. Cal. Sept. 5, 2014)............................ 22

*Scheibe v. Perfect Keto Grp. Ltd. Liab. Co.*,
700 F. Supp. 3d 928 (S.D. Cal. 2023)..................................................................... 22

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
806 F.2d 1393 (9th Cir. 1986)..................................................................... 22

*Shah v. Capital One Fin. Corp.*,
No. 24-cv-05985-TLT, 2025 U.S. Dist. LEXIS 42677 (N.D. Cal. Mar. 3, 2025)......................... 21

*Shah v. Fandom, Inc.*,
No. 24-cv-01062-RFL, 2024 U.S. Dist. LEXIS 193032 (N.D. Cal. Oct. 21, 2024)...................... 17

*Shah v. MyFitnessPal, Inc.*,
No. 25-cv-04430-PCP, 2026 U.S. Dist. LEXIS 15193 (N.D. Cal. Jan. 27, 2026) ............. 9, 10, 18

*Six v. IQ Data Int'l, Inc.*,
129 F.4th 630 (9th Cir. 2025) ..................................................................... 7

*St. Aubin v. Carbon Health Techs., Inc.*,
No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 1, 2024).................. 15, 16

*Taus v. Loftus*,
40 Cal. 4th 683, 717, 54 Cal. Rptr. 3d 775, 151 P.3d 1185 (2007) ............................................... 8

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)..................................................................... 7, 20

*Uzuegbunam v. Preczewski*,
592 U.S. 279, 290-91 (2021)..................................................................... 11

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) .......... 15, 16

*Vishal Shah v. Politico LLC*,
No. 25-cv-05213-NW, 2026 U.S. Dist. LEXIS 25740 (N.D. Cal. Feb. 6, 2026) .......... 6, 10

*Wiley v. Universal Music Grp., Inc.*,
No. 25-cv-03095-PCP, 2025 U.S. Dist. LEXIS 261303 (N.D. Cal. Dec. 17, 2025) .......... 9

*Yoon v. Lululemon United States*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 15

**Rules**

Fed. R. Civ. P. 9(b) .......... 19

**Statutes**

Cal. Penal Code § 631 .......... 16

Cal. Penal Code § 631(a) .......... 13, 14, 16

Cal. Penal Code § 638.50(b) .......... 17, 18

Cal. Penal Code § 638.51(a) .......... 17

## I. INTRODUCTION

As companies develop increasingly invasive and integrated means of extracting and aggregating data from consumers' internet activity, consumers often rely on a website's representations that they may browse free from the watchful eyes of third parties. In this case, the privacy that Defendant Grocery Outlet, Inc. ("Defendant" or "Grocery Outlet") promised to visitors of its website was an outright lie. When consumers, including Plaintiffs, accessed Defendant's website, they were presented with a cookie consent banner that promised users they could "Reject All" cookies—small text files that, when attached to a user's browser or device, enable third parties to track the user and collect their personal and privacy communications in real time.




Selecting "Reject All," however, meant nothing. Instead, Defendant intentionally programed its website to unlawfully allow third parties to place non-essential third-party tracking cookies on the devices of Plaintiffs and every other visitor to its website before and after Plaintiffs and many users explicitly "Reject[ed] All" cookies. As a result, Defendant enabled third parties to track and record Plaintiffs' and other visitors' "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data" against their explicit consent. Class Action Compl., ECF No. 1 ("Compl.") ¶¶ 3–4.

Plaintiffs bring the instant action to hold Defendant accountable for this highly offensive

invasion of their privacy and to stop it from engaging in this unlawful conduct. Defendant now moves to dismiss, distorting the basic allegations of the Complaint to claim that Plaintiffs lack standing and have not adequatley alleged their claims. *See, generally*, ECF No. 29 ("Mot."). Each argument lacks merit.

## II. FACTUAL BACKGROUND

### A. Grocery Outlet Falsey Told Plaintiffs and Other Users that They Could "Reject All" Cookies on the Website.

Like many companies, Defendant designed its website, www.groceryoutlet.com (the "Website"), with resources and programming scripts from third parties that enable those parties to place cookies—small text files sent by a website server to a user's web browser and stored locally on the user's device—and other similar tracking technologies on visitors' browsers and devices to transmit cookies along with user data. Compl. ¶ 2. Defendant, however, offers consumers a choice to browse *without* having such cookies and other tracking technologies placed on their browsers. *Id*.

When consumers visit the Website, Defendant displays to them a popup cookie consent banner. *Id*. ¶ 1. Defendant's cookie banner does not state that it automatically sets cookies. *Id*. at ¶ 36. Instead, it expressly gives users the option to control whether they are tracked and how their personal data is used. *Id*.

The cookie consent banner states "By clicking 'Accept All Cookies', you agree to the storing of cookies on your device to enhance site navigation, analyze site usage, and assist in our marketing efforts." *Id*. The banner then purported to provide users the opportunity to "Reject All" such cookies. *Id*.




But the representation that users could "Reject All" cookies was false. Instead, before, and even after users clicked "Reject All" cookies, Defendant nevertheless enabled third parties to place on Plaintiffs' and Class members' devices and browsers the very cookies they had declined. *Id.* ¶¶ 39–45. Once placed, these cookies allowed Plaintiffs' and Class members' data to be transmitted to third parties in the manner and for the purposes alleged in the Complaint and as described below. *Id.* ¶¶ 44–73.

Even after users elect to "Reject All" cookies, Defendant surreptitiously enabled third parties—including Google LLC (DoubleClick and Google Analytics), and Flipp Corp. (flipp.com and wishabi.com), and many more (collectively, the "Third Parties")—to place and/or transmit tracking cookies on the Website. *Id.* ¶ 3. The cookies Defendant caused the Third Parties to place on Plaintiffs' devices and browsers—despite Plaintiffs' express rejection and despite Defendant's express representation to the contrary—caused the Third Parties to track and collect data in real time regarding Plaintiffs' behaviors and communications, including their browsing history, IP addresses, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data (the "Private Communications"). *Id.* ¶¶ 4, 30–35, 39.

In particular, after Plaintiffs clicked "Reject All" cookies, they browsed the Website in reliance on the promises and representations Defendant made in its cookie banner. *Id.* ¶¶ 84, 93. Despite

Plaintiffs' clear declination of cookies, Defendant continued to cause the placement of cookies and the transmission of Plaintiffs' data to the Third Parties. *Id.* ¶¶ 85–86, 94–95. This caused them to track and collect Plaintiffs' Private Communications and data as they browsed the Website. *Id.*; *see also id.* ¶¶ 48–73 (describing user data and communications transmitted by the Third Party cookies Defendant permitted to be placed when users browsed the Website).

**B. Defendant Intentionally Designed the Website and the Website's Cookie Banner.**

The Website allows visitors to learn about Defendant's products and locate nearby stores. *Id.* ¶ 32. As users interact with the Website (e.g., by entering data into forms, clicking on links, and making selections), they send Private Communications to Defendant. *Id.* The third-party cookies stored on and/or loaded from users' devices are then transmitted to the Third Parties, enabling them to, in real time, surreptitiously track and collect users' Private Communications. *Id.* ¶ 30. Third-party cookies include an identifier that allows the third-party to recognize and differentiate individual users across websites (including the Website) and across multiple browsing sessions. *Id.* ¶ 29.

Defendant voluntarily—i.e. intentionally—integrated third-party resources from the Third Parties into the Website's programming. *Id.* ¶ 26. Defendant knowingly chose to install or integrate the Website with resources from the Third Parties that, among other things, use cookies. *Id.* ¶ 33. Thus, when Plaintiffs and other Class members visited the Website, both first-party cookies and third-party cookies were placed on their devices and/or transmitted to Defendant and the Third Parties. *Id.* Defendant intentionally incorporated into the Website the software code that caused placement of the cookies. *Id.* Defendant controls the software code of the Website—meaning it has complete control over whether first-party and third-party cookies are placed on users' devices and/or transmitted to third parties. *Id.* During the time period in which Plaintiffs accessed the Website—which, again, Defendant developed, maintains, and controls—it permitted the Third Parties to place, store, and/or transmit third-party tracking cookies on Plaintiffs' devices and browsers. *Id.* Thus, despite Defendant's characterization to the contrary, Plaintiffs allege that the Website's setting of cookies on Plaintiffs' and Class members' browsers and devices despite Plaintiffs' and Class members' choice to "Reject All" cookies was an intentional part of the design of the Website and not a mere malfunction.

The Website allows visitors to learn about Defendant's products and locate nearby stores. *Id.*

¶ 32. As users interact with the Website (e.g., by entering data into forms, clicking on links, and making selections), they send Private Communications to Defendant. *Id*. The third-party cookies stored on and/or loaded from users' devices are then transmitted to the Third Parties, enabling them to, in real time, surreptitiously track and collect users' Private Communications. *Id*. ¶ 30. Third-party cookies include an identifier that allows the third-party to recognize and differentiate individual users across websites (including the Website) and across multiple browsing sessions. *Id*. ¶ 29.

### C. Defendant Intentionally Aided the Third Parties' Wrongful Collection of Plaintiffs' and Class Members' Data, By Which Both Defendant and the Third Parties Profited.

Defendant uses and integrates the third-party resources on the Website pursuant to agreements between Defendant and the Third Parties. *Id.* ¶ 26. Defendant intentionally designed the Website with code that allows Third Parties to place cookies and send data directly to themselves—allowing the Third Parties to, simultaneous with Plaintiffs' activity on the Website, analyze and aggregate the wrongfully collected data for their own purposes and financial gain. *Id*. ¶ 29.

Third-party cookies have several purposes, including (i) analytics (e.g., tracking and analyzing visitor behavior, user engagement, and marketing campaign effectiveness); (ii) personalization (e.g., remembering a user's browsing history and purchase preferences to enable product recommendations); (iii) advertising/targeting (e.g., delivering targeted advertisements based on an aggregated profile of the user's behavior, preferences, and demographics); and (iv) social media integration (i.e. sharing users' activities with social media platforms). *Id*. ¶ 31. Ultimately, third-party cookies boost website performance and revenue through the collection, utilization, and dissemination of user data. *Id*.

## III. ARGUMENT

### A. Plaintiffs Have Article III Standing for Their Claims.

#### 1. Plaintiffs allege that their information was collected.

Defendant's motion is premised on the assumption that Plaintiffs have not alleged that their communications were collected by the Third Parties. Mot. at 6–7. This is untrue. Plaintiffs clearly allege that they visited the Website (Compl. ¶¶ 80, 89), that they browsed the Website (¶¶ 80–81, 86, 89–90, 95), that it transmitted an extensive array of information and Private Communications to the Third Parties (¶¶ 4, 30, 34–35, 42–73), that this data is not anonymized (Compl. ¶¶ 29, 30, 34–35, 43–

46, 57, 59, 67, 69, 73), and that Plaintiffs were unaware of Defendant's practices (Compl. ¶¶ 85, 94). That the Complaint further explains how the Website operates as to all users (including Plaintiffs) does not detract from Plaintiffs' specific allegations or make them "hypothetical," it adds to them.

Defendant cites to Judge Wise's decision *Kishnani v. Royal Caribbean Cruises Ltd*. to support its argument, but ignores that Judge Wise more recently distinguished *Kishnani* and denied a challenge to standing in a case with allegations substantially similar to those in the Complaint here. *See Vishal Shah v. Politico LLC*, No. 25-cv-05213-NW, 2026 U.S. Dist. LEXIS 25740, at *8 (N.D. Cal. Feb. 6, 2026). There, Judge Wise reasoned that:

> Defendant cites to a recent decision from this Court in *Kishnani v. Royal Caribbean Cruises Ltd.*, where the undersigned found plaintiff's bare allegations that defendant collected his "'data' and 'information'" insufficient to demonstrate injury-in-fact. No. 25-CV-01473-NW, 2025 U.S. Dist. LEXIS 120002, 2025 WL 1745726, at *2 (N.D. Cal. June 24, 2025) (internal citations and quotations omitted). Politico's attempts to liken this case to *Kishnani* are unavailing. Despite superficial similarities, this case is distinguishable because Shah has: (1) identified the specific personal information disclosed that implicates a protectable privacy interest and (2) alleged an invasion of a legally protected right.

*Id*. As the court explained, "Shah alleges that Politico collected his 'browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behavior, device information, referring URL, session information, user identifiers, and geolocation data.' Shah sets forth the specific cookies Politico used (furnished by Google and Adobe, among others) and the specific information each cookie collected." *Id.* at *8–9. So too here. The Complaint identically alleges that Defendant caused the collection of Plaintiffs' browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behavior, device information, referring URL, session information, user identifiers, and geolocation data" and sets forth the specific cookies used and what information was collected. Compl. ¶¶ 30, 42–73. Acccordingly, Plaintiffs have alleged their information was collected.

**2. Plaintiffs have a legally protectable privacy interest.**

Next, invasions of privacy have long been recognized at common-law as concrete injuries. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021); *see also Six v. IQ Data Int'l, Inc.*, 129 F.4th 630 (9th Cir. 2025) (quoting *TransUnion*). This right to privacy "encompass[es] the individual's

control of information concerning his or her person." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (citation omitted). As a result, the Ninth Circuit has specifically held that violations of CIPA suffice to confer Article III standing. *Davis v. Facebook, Inc. ("In re Facebook Inc. Internet Tracking Litig.")*, 956 F.3d 589, 598–99 (9th Cir. 2020) ("[T]he legislative history and statutory text demonstrate that . . . the California legislature intended to protect . . . historical privacy rights when [it] passed CIPA.").

Plaintiffs allege that Defendant invaded their privacy—causing them a concrete injury—when it intentionally caused the Third Parties to place cookies on Plaintiffs' browsers and devices in order to "collect, track, and compile users' Private Communications, including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers," and more. Compl. ¶¶ 4, 30–32, 39, 42, 45, 57, 73, 109–11, 120, 139, 154, 164, 173. This is a concrete injury sufficient to establish Plaintiffs' Article III standing. *See In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 599 (holding that Facebook's tracking and collection of personal information on an individual's likes, dislikes, interests, and habits, without affording users a meaningful opportunity to control or prevent the unauthorized exploration of their private lives, conferred standing). Indeed, the Third Circuit has noted, "[i]n an era when millions of Americans conduct their affairs increasingly through electronic devices, the assertion . . . that federal courts are powerless to provide a remedy when an internet company surreptitiously collects private data . . . is untenable. Nothing in *Spokeo* or any other Supreme Court decision suggests otherwise." *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3rd Cir. 2019) (cited favorably by the Ninth Circuit in *In re Facebook Inc. Internet Tracking Litig.*). Here, where Defendant presented Plaintiffs with a mere illusion of control over their information and then allowed the Third Parties to collect that information anyway, standing is manifest. Defendant's argument to the contrary ignores the well-pleaded allegations in the Complaint.

Indeed, Defendant's own Privacy Policy outlines the data captured and transmitted by the cookies Defendant caused the Third Parties to place on Plaintiffs' and Class members' browsers and devices. Compl. ¶ 34. These allegations are more than sufficient to allege standing. *See James v. Walt*

*Disney Co.*, 701 F. Supp. 3d 942, 955–56 (N.D. Cal. 2023) (finding sufficient specificity where Plaintiff alleged that Oracle intercepted, e.g., information about the webpages they viewed and searches they conducted because "[t]his makes it unlikely that Plaintiffs are simply implicating record information."); *see id*. ("Moreover . . . Plaintiffs have alleged that the collection of information is not anonymized. At the very least, Plaintiffs have made sufficient allegations to create a question of fact as to whether there is sufficiently personal information to support standing.").

At bottom, Defendant's argument against standing is that Plaintiffs have not alleged a highly offensive invasion of their privacy. Mot. at 6–7. But the cases Defendant cites in support of its argument are off base or factually distinguishable. *See Id*. at 6–11. Initially, Defendant argues that *Popa v. Microsoft Corp.*, 153 F.4th 784, 788 (9th Cir. 2025) requires a finding of no standing. Not so. As Defendant acknowledges, Judge Pitts, considering substantially similar allegations, concluded that *Popa v. Microsoft Corporation*, 153 F.4th 784 (9th Cir. 2025) is distinguishable in this context:

> Unlike the plaintiff in *Popa*, the kind of injury that Shah and Wiley allegedly suffered is similar to a harm recognized at common law—specifically, the harm made actionable by the common law public-disclosure-of-private-facts tort. That tort prohibits the "disclosure ... of a private fact ... which would be offensive and objectionable to the reasonable person, and ... which is not of legitimate public concern." *Taus v. Loftus*, 40 Cal. 4th 683, 717, 54 Cal. Rptr. 3d 775, 151 P.3d 1185 (2007) The Restatement (Second) of Torts (which *Popa* cited approvingly, see 153 F.4th at 791) explains that misrepresenting how private information will be used can constitute such an invasion of privacy, see Restatement (Second) of Torts, § 652D cmt. C, illus. 11. Plaintiffs here allege that MFP told them that their individual information would not be shared because they could opt out of unnecessary cookies, and yet it was shared. This harm is thus similar in kind to a harm recognized as actionable at common law.

*Shah v. MyFitnessPal, Inc.*, No. 25-cv-04430-PCP, 2026 U.S. Dist. LEXIS 15193, at *6–7 (N.D. Cal. Jan. 27, 2026); *see Wiley v. Universal Music Grp., Inc.,* No. 25-cv-03095-PCP, 2025 U.S. Dist. LEXIS 261303, at *15 (N.D. Cal. Dec. 17, 2025) (Pitts, J.). Nor is Judge Pitts alone in distinguishing *Popa* when considering allegations substantially similar to these (though Defendant claims otherwise in its motion). *See, e.g., Gabrielli v. Haleon US Inc*., 815 F. Supp. 3d 852, 867 (N.D. Cal. 2025) (Orrick, J.) (distinguishing *Popa*); *De Ayora v. Inspire Brands, Inc.*, No. 25-cv-03645-AGT, 2025 U.S. Dist. LEXIS 264583, at *6 (N.D. Cal. Dec. 22, 2025) (Tse, M.J.) (same).

Indeed, challenges to standing in cases with allegations similar to this case have almost

invariably been rejected for the reasons described above. *See, generally*, *Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836, at *16–17 (N.D. Cal. July 14, 2025) ("Gabrielli's allegations that Motorola deprived him control of personal information regarding his digital activity and profile are sufficient to establish a concrete injury to his right to privacy and confer standing."); *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 865 (N.D. Cal. 2025) (same); *Shah*, 2026 U.S. Dist. LEXIS 15193, at *7 (because a misrepresentation about how information would be used and the non-consensual sharing of personal information could give rise to injuries that were actionable invasions of privacy at common law, plaintiffs have sufficiently pleaded an injury-in-fact for the purposes of Article III.").

Defendant also points to *Garcia v. Blackhawk Network, Inc.*, No. 2:25-cv-07550-JLS-SSC, 2026 U.S. Dist. LEXIS 75154, at *13 (C.D. Cal. Apr. 1, 2026), an out of district case found that plaintiff lacked standing in claims regarding an alleged invasion of privacy following plaintiff's rejection of cookies on defendant's website. *Garcia*, however, differs from this case in material respects. First, the complaint in *Garcia* contained "few allegations about what tracking technologies were actually installed on Plaintiff's computer, and what those technologies were capable of." *Id*. at *16. Here, by contrast, Plaintiffs have included extensive allegations regarding what third party technologies were attached to their browsers and devices and the expansive data collected by those third parties. Compl. ¶¶ 43–73. Second, the court reasoned, with no support from caselaw or reasoning for its determination, that "Defendant's misrepresentation goes only to the first element: whether there was an intrusion into a private place." *Garcia*, 2026 U.S. Dist. LEXIS 75154, at *13. That the court did not cite any support for this proposition is unsurprising, as it is contrary to controlling law. *See In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 606.

Indeed, "[d]etermining whether a defendant's actions were 'highly offensive to a reasonable person' requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 606 (citation omitted); *see also Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 26 (Cal. 1994) ("in determining the 'offensiveness' of an invasion of a privacy interest,

common law courts consider, among other things: 'the degree of the intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded.'" (citing *Miller v. National Broadcasting Co.*, 187 Cal.App.3d 1463, 1483–84 (1986)).

Ultimately, the question of whether an intrusion is "highly offensive" is one that cannot be resolved on the pleadings because it is fact-intensive and entails weighing the "extent and gravity of the invasion." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th at 37. Defendant argues that norms in commercial browsing render Defendant's invasion of privacy not highly offensive. But this asks the Court to find that making outright false statements to Website users about their privacy options is normal, acceptable commercial behavior. The Court should decline this cynical position. Indeed, numerous courts in this District have considered allegations substantially similar to Plaintiffs' and concluded either that the matter is not appropriate for resolution at the pleadings, or that plaintiffs have pleaded a highly offensive invasion of privacy. *See Motorola Mobility LLC*, 2025 U.S. Dist. LEXIS 133836, at *26 (finding that it was premature to dismiss substantially similar claims based on a determination of how offensive or serious the privacy intrusion is); *Politico LLC*, 2026 U.S. Dist. LEXIS 25740, at *12 (same); *Haleon US Inc.*, 2025 U.S. Dist. LEXIS 169503, at *22 (agreeing with *Motorola*); *Shah*, 2026 U.S. Dist. LEXIS 15193, at *16 (holding that plaintiffs pleaded a highly offensive privacy invasion where they "allege that a broader set of data was collected and disseminated, including 'browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data'"); *D'Antonio v. Smith & Wesson Inc.*, No. 25-cv-03085-PCP, 2026 U.S. Dist. LEXIS 32257, at *10 (N.D. Cal. Feb. 17, 2026) ("Given that plaintiffs have alleged an intrusion undertaken through deceptive conduct, plaintiffs have pleaded facts sufficient to preclude the Court from concluding, as a matter of law, that Smith & Wesson's invasion was not 'highly offensive.'").

Accordingly, considering Plaintiffs' allegations in light of all the circumstances around Defendant's conduct, including the fact that it lied about not tracking visitors, Plaintiffs have alleged an invasion of privacy that is highly offensive.

**3. Plaintiffs have pleaded economic injury**

In arguing that Plaintiffs have not alleged an economic injury, and thus lack standing, Defendant appears to conflate standing—i.e., whether there is a sufficient "concrete injury"—with the measure of damages for that injury. Regardless, Defendants ignore the remedies available for Plaintiffs' CIPA claims (*see* Compl. ¶¶ 146, 158, alleging statutory damages) and common law privacy claims (*see* Compl. ¶¶ 125, 126, p. 54 at D, seeking nominal damages). *See Uzuegbunam v. Preczewski*, 592 U.S. 279, 290-91 (2021) ("Despite being small, nominal damages are certainly concrete."); *see also Opperman*, 2016 U.S. Dist. LEXIS 92403, at *49-51 (certifying invasion of privacy class seeking nominal damages). Furthermore, the Ninth Circuit has found the allegation that "browsing histories carry financial value" sufficient to plead Article III standing. *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589, 599-601 (9th Cir. 2020). At least one court in this District has found allegations "that there is a market for [users'] browsing data" and that defendant's "surreptitious collection of the data inhibited plaintiffs' ability to participate in that market" sufficient to allege an economic injury under California's unfair competition law. *Brown v. Google LLC*, 685 F. Supp. 3d 909, 942 (N.D. Cal. 2023). And at least two other courts in this district have found allegations substantially similar to Plaintiffs' here sufficient to allege monetary damages. *See Gabrielli v. Haleon US Inc*., No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503 (N.D. Cal. Aug. 29, 2025) (concluding plaintiffs had alleged damages for fraud based on allegations that data transmitted via cookies had financial value); *D'Antonio v. Smith & Wesson Inc.*, 820 F. Supp. 3d 928 (N.D. Cal. 2026) (same). So too here, Plaintiffs allege that the private communications collected by third parties were valuable and their loss of control of the data is an economic damage that can be measured. Compl. ¶¶ 74–79; *see supra* § E.2 (explaining fraud claim damages).

Furthermore, Plaintiffs also seek disgorgement of profit, an available remedy for their unjust enrichment and common law privacy claims. *In re Facebook Inc. Internet Tracking Litig*., 956 F.3d at 599-600 (finding plaintiff had standing and concluding "California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss."); *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2026 U.S. Dist. LEXIS 20412, at *17 (N.D. Cal. Jan. 30, 2026) (disgorgement is an available remedy for common law privacy

claims); Compl. ¶¶ 126, 177, p. 54 ¶ F (seeking disgorgement). Plaintiffs sufficiently explain how Defendant profits from its use of data, including Plaintiffs' data, which includes Defendant's ability to use the data to target consumers like Plaintiffs to increase sales of its products and leverage its marketing campaigns. Compl. ¶¶ 75-76 (explaining how Defendant profits from use of the illegally obtained data). Contrary to Defendant's argument, there is no requirement to allege that Plaintiffs "attempted or intended to participate in a market" for their data. *See In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 600 ("Under California law, this stake in unjustly earned profits exists regardless of whether an individual planned to sell his or her data or whether the individual's data is made less valuable").

#### 4. Plaintiffs' injuries are Traceable to Defendant

Finally, Defendant argues incorrectly that Plaintiffs lack standing because the alleged injury is not "fairly traceable" to Defendant's conduct—contending that "it is utterly implausible that the Google and Flipp cookies were not already on their browsers . . ." Mot. at 13. That argument misunderstands both the allegations and basic principles of causation. Third-party advertising cookies exist for one purpose: to track users' online behavior and communications for profiling, analytics, and monetization. Plaintiffs expressly declined those cookies because they did not want to be tracked—that is, they wanted their browsing activity to remain private. Defendant nevertheless "caused cookies, including the Third Parties' cookies, to be sent to Plaintiff and other visitors' browsers, stored on their devices, and transmitted to the Third Parties along with their user data" and that "Defendant chose to install or integrate its Website with resources from Third Parties that, among other things, use cookies." Compl. ¶¶ 3, 33. By failing to honor Plaintiffs' cookie preferences and embedding third-party tracking code it had promised not to install, Defendant directly caused the alleged privacy injury. Further, if Defendant has honored their cookie preferences, no injury would have occurred. That is more than sufficient to establish traceability under Article III.

### B. Defendant's 12(b)(6) Arguments Fail

#### 1. A Violation of the CCPA is Not a Cause of Action in this Case.

Defendant, somewhat bizarrely, includes an argument that Plaintiffs' claims warrant dismissal because they conflict with the CCPA. Mot. at 14. As an initial matter, none of Plaintiffs'

claims are predicated on a violation of the CCPA. And Defendant cites no authority that such a supposed "conflict" between two California statutes, the CCPA and CIPA, is a basis on which to dismiss any of Plaintiffs' claims. Regardless, Defendant's asserted conflict does not exist.

First, Defendant claims that "the Complaint replaces the CCPA's opt-out regime with an opt-in regime that requires users' express consent before data can be lawfully shared." *Id*. The Complaint has no allegations regarding the CCPA. But, regardless, this argument is simple semantics (and wrong). As Defendant acknowledges, the CCPA allows websites to collect certain data so long as they give users the chance to request that websites not collect or share their data. According to Defendant, this means that it could, under the CCPA, cause third-party cookies to be transmitted to Plaintiffs devices "[e]ven before the popup cookie consent banner appeared on the screen." *Id*. at 14 (citing Compl. ¶¶ 85, 94). But, because, Website users have no chance to opt out of such sharing, it is not compliance with the CCPA. Regardless, automatically setting third party cookies is not consistent with the representations made in Defendant's cookie banner, which makes no mention of the Website's use of cookies and purports to give users the option to "Reject All" cookies. Such a representation is literally false because, as Defendant seems to admit, there are some cookies that no user can reject which are set prior to when the user is able to "Reject All" cookies.

Second, Defendant claims that it complies with the CCPA through its use of the cookie banner. Mot. at 14. Maybe so, but, as Plaintiffs allege here, the statement in the banner that users could "Reject All" cookies was false. Whatever interpretations and legislative history it may attribute to the CCPA, Defendant cannot plausibly argue that the CCPA is meant to allow website operators to outright lie to users' regarding their ability to opt out of the collection or sharing of their data, collect such data anyway, and still be on the right side of the law.

### C. Plaintiffs Have Adequately Pleaded CIPA Claims.

Plaintiffs allege two claims under CIPA. First, Plaintiffs allege a wiretapping claim under the fourth prong of Section 631(a) which makes liable persons who aid others who "unlawfully do, or permit, or cause to be done" either "(1) intentional wiretapping, (2) willfully attempting to learn the contents or meaning of a communication in transit over a wire, [i.e., eavesdropping,] and (3) attempting to use or communicate information obtained as a result of engaging in either of the two

previous activities." *Rodriguez v. Ford Motor Co.*, No. 3:23-cv-00598, 2024 U.S. Dist. LEXIS 218685, at *12 (S.D. Cal. Dec. 3, 2024) (cleaned up). Second, Plaintiffs allege that Defendant's conduct violates CIPA § 638.51, which prohibits the unconsented to installation and use of "pen registers" and "trap and trace devices." Each of Defendant's challenges to these claims are meritless.

**1. Plaintiffs properly allege a violation of CIPA Section 631(a).**

Plaintiffs allege that Defendant violated CIPA by aiding and abetting the Third Parties in violating Section 631(a), which prohibits, in relevant part, "any person . . . who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state," as well as "us[ing] or attempt[ing] to use, in any manner, or for any purpose, or to communicate in any way, any [such] information." Cal. Pen. Code § 631(a). This clause "can apply to internet communications." *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1116 (S.D. Cal. 2024) (citing *Cody v. Ring LLC*, No. 23-cv-00562-AMO, 2024 U.S. Dist. LEXIS 30704 (N.D. Cal. Feb. 22, 2024)); *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 U.S. App. LEXIS 14951, at *3 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, Section 631(a) applies to Internet communications.").

Here, Plaintiffs have alleged that Defendant integrated the Website with Third Party code that causes the Third Parties to use cookies to "eavesdrop upon, record, extract data from, and analyze conversations to which they are not parties." Compl. ¶ 47. The Complaint includes extensive allegations describing how the Third Parties' cookies transmit communications, including from Plaintiffs. *See, e.g., id.* ¶¶ 31, 42, 48–73. Specifically, Plaintiffs allege that "the third-party cookies stored on and/or loaded from users' devices when they interact with the Website are transmitted to those third parties, enabling them to surreptitiously track in real time and collect Website users' personal information, such as their browsing activities and private communications with Defendant." *Id.* ¶ 42. Plaintiffs further demonstrate the plausibility of these allegations by including screenshots showing network traffic that occurs after a user rejects all cookies using the Website's cookie banner and proceeds to browse the Website. *Id.* ¶¶ 43, 51. As depicted, "despite the user's rejection of all

cookies, the user's interactions with the Website resulted in the user's browser making a large number of GET and POST HTTP requests to third party web domains like www.facebook.com, www.google.com, www.bing.com, and others. As further shown in the right-hand column of the screenshots, the user's browser sent cookies along with those HTTP requests to the third parties." *Id.* ¶¶ 42.

**a. Plaintiffs allege "contents" were intercepted**

CIPA prohibits interception of the "contents" of communications. "Contents" of communications "refer[] to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014); *see also Yoon v. Lululemon United States*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (explaining CIPA protects "user-generated material" but not "routine identifiers"). Here, Plaintiffs allege interception of "contents," including user input data. *See* Compl. ¶ 141 (information collected includes, inter alia, "the Website user's affirmative decisions, actions, choices, [and] preferences," including "user input data"); *id.* ¶ 30 ("user input data" includes "search queries, the user's name, age, gender, email address, location, and/or payment information").

Defendant argues that Plaintiffs allege only disclosure of record information rather than contents. That argument ignores the Complaint's allegations, including Plaintiffs' repeated allegations that Third Parties intercepted user input data. Nor does it comport with the many cases holding that user input data—including search terms and URLs containing search terms—constitutes "contents" under CIPA. *See, e.g.*, *Heerde v. Learfield Commc'ns, LLC*, 2024 U.S. Dist. LEXIS 137781, at *14 (C.D. Cal. 2024) ("Search terms constitute 'contents' of a communication."); *In re Zynga Priv. Litig.*, 750 F.3d at 1108–09 (explaining URL data may contain communication "contents" if a user's search terms are included); *St. Aubin v. Carbon Health Techs., Inc.*, No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067, at *11 (N.D. Cal. Oct. 1, 2024) (URLs which reveal queries reflect "contents" of a communication); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 936 (N.D. Cal. 2023) ("full-string detailed URL[s]" containing "users' actions on a website, and their search queries" constitute content);

*In re Carrier IQ, Inc*., 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015) (finding search terms implicate "content").

Furthermore, while user input data squarely constitutes contents of communication, the definition is not so limited. "Several other courts in the Ninth Circuit have concluded that detailed URLs that reveal the specific document, product, or service that a user is viewing count as contents of communications." *Goldstein v. Rumble Inc*., No. CV 25-06304-MWF (SKx), 2026 U.S. Dist. LEXIS 113489, at *11 (C.D. Cal. Apr. 24, 2026) (collecting cases). Here, Plaintiffs allege that the cookies transmitted detailed information about the Website pages and products that they and others viewed, including shopping behaviors ("Information about the Website products viewed or added to shopping carts"), interests and preferences ("Insights into user interests based on the types of Website content viewed, products searched for, or topics engaged with); and website interactions ("data on which links, buttons, or ads on the Website that a user clicks). Compl. ¶ 30. Defendant's own policy confirms that such contents are transmitted. *See*, *e.g*., Compl. ¶ 34 (data includes "communication data, the resources that you access, and how you reached our site"). Plaintiffs both allege they clicked links on the Websites and visited the Websites to learn information about Defendant's products. Compl. ¶¶ 80, 90. Thus the contents of their communications (and all User's communications), i.e., the specific website and products they viewed, were transmitted to third parties in violation of CIPA.

**b. Plaintiffs allege information was intercepted while in transit.**

For Plaintiffs' wiretapping claim, "the interception must occur contemporaneous with the sending or receipt of the message." *See Valenzuela v. Keurig Green Mountain, Inc*., 674 F. Supp. 3d 751, 759 (N.D. Cal. 2023). Plaintiffs clearly allege that timing element. Compl. ¶¶ 4 (the cookies "permitted the Third Parties to track and collect data in real time"), 30 (the cookies enabled third parties "to collect user data in real time that discloses Website visitors' Private Communications"), 44 (interactions with the Website resulted in the user's browser making a large number of GET and POST HTTP requests to third party web domains). Allegations describing the real-time transmission of communications is sufficient on a motion to dismiss. *See Jackson v. Linkedin Corp*., 744 F. Supp. 3d 986, 994 (N.D. Cal. 2024) ("allegations regarding the manner in which the Insight Tag operates are sufficient to plausibly allege that LinkedIn at least 'read' or 'learned' the information so transmitted.

Because that is sufficient to state a claim under Section 631, LinkedIn's motion to dismiss Jackson's CIPA claim is denied.").

In particular, the use of computer code to simultaneously duplicate and intercept communications satisfies CIPA's "in transit" element: "allegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement." *Esparza v. UAG Escondido A1 Inc.*, No. 23cv0102 DMS(KSC), 2024 U.S. Dist. LEXIS 24429, at *3 (S.D. Cal. Feb. 12, 2024). Put differently, "the key to the interception analysis is whether the plaintiff alleges that the transmission was simultaneous." *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *17. Plaintiffs have alleged that "the interception [] occur[s] contemporaneous[ly] with the sending or receipt of the message," through alleging "real time" analysis of Plaintiffs' information. *Valenzuela*, 674 F. Supp. 3d at 759; *see also Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 838 (E.D. Cal. 2025) ("[A]llegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement."). Thus, Plaintiffs have sufficiently alleged that his communications were intercepted, tapped, read, and processed "in transit" to sustain their CIPA claims. *St. Aubin*, U.S. Dist. LEXIS 179067, at *17. Defendant's contention that Plaintiffs fail to allege that anyone attempted to read or learn the contents of while they were in transit must be rejected.

Furthermore, "Section 631(a) relates not just to messages, reports, or communications that are 'in transit,' but also to those that are 'being sent from, or received at any place within this state." *Mitchell v. Sonesta Int'l Hotels Corp.*, No. CV 24-2603-GW-SSCx, 2024 U.S. Dist. LEXIS 186701, at *19–20 (C.D. Cal. Oct. 4, 2024) (citing Cal. Penal Code § 631(a) and *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985)). The California Supreme Court's decision in *Ribas* is instructive. In *Ribas*, "the California Supreme Court already indicated that a complaint survives a pleadings-based challenge and states a prima facie violation of Section 631 because it alleges that eavesdropping occurred either while the communication was 'in transit' or was 'being sent from' or 'received at' a place within California." *Mitchell*, 2024 U.S. Dist. LEXIS 186701, at *25 ("There is no indication in Ribas that the word 'while' was a key focus of the California Supreme Court's analysis.").

**2. Plaintiffs properly plead a "Pen Register" claim under Section 638.51.**

CIPA Section 638.51(a) prohibits any person from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." The statute defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). Plaintiffs adequately plead each element of this definition by alleging that the Third Parties' cookies and the corresponding software code Defendant installed that allows the Third Parties to attach cookies operate as "pen registers" because they are processes that record IP address and user-agent information, which is not the content of the electronic communications being transmitted from users' computers or smartphones to the Website.

Courts in this District have repeatedly rejected Defendant's argument that internet technologies are not pen registers as contrary to the statute's plain language. *See, e.g., Mirmalek v. L.A. Times Communs. LLC*, No. 24-cv-01797-CRB, 2024 U.S. Dist. LEXIS 227378, at *7 (N.D. Cal. Dec. 12, 2024) (collecting cases); *Shah v. Fandom, Inc.*, No. 24-cv-01062-RFL, 2024 U.S. Dist. LEXIS 193032, at *9 (N.D. Cal. Oct. 21, 2024); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050–51 (S.D. Cal. 2023); *Moody v. C2 Educ. Sys.*, 742 F. Supp. 3d 1072, 1077 (C.D. Cal. 2024). This is because "the California' Legislature's chosen definition" of a pen register is "specific as to the type of data [collected]," but "vague and inclusive as to the form of the collection tool" (i.e., a "device or process"). *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *7 (citing Section 638.51(b)). "[T]he Court applies the plain meaning of a 'process' to [CIPA]. A process can take many forms. Surely among them is software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting,'" as alleged here. *Greenley*, 684 F. Supp. 3d at 1050. Indeed, arguments to the contrary have "been considered and rejected multiple times." *Haleon*, 2025 U.S. Dist. LEXIS 169503, at *32; *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *30 ("Motorola argues that the legislative history of Section 638.51—which discusses pen registers in relation to telephones—indicates that the statute applies only to telephones. The Court disagrees."); *D'Antonio*, 2026 U.S. Dist. LEXIS 32257, at *13 ("Smith & Wesson first argues that California's pen register law applies to telephones and not to

cookies that collect a web user's IP address. The text of the statute, however, contains no such limitation.").

Like the plaintiffs in *Mirmalek*, *Greenley*, and *Shah*, Plaintiffs allege that the third party cookies and the corresponding software code installed by Defendant on the Websites are each a "device or process." *Compare Mirmalek*, 2024 US Dist. LEXIS 227378, at *12 with Compl. ¶ 156 (explaining how "cookies and the corresponding software code"—which are pen registers—were placed on Plaintiffs' and Class members' browsers and devices, and/or [] used to transmit Plaintiffs' and Class members' IP address and user-agent information). Thus, Defendant's argument that cookies and corresponding software are not pen registers fails.

Defendant also argues that because Plaintiffs allege that certain third party cookies also tracked contents of communications, they cannot also plead that the third party cookies operated as pen registers under § 638.50(b). *See* Mot. at 21–22. Not so. Again, this argument has been considered and rejected. *See In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1152 (N.D. Cal. 2025).

Moreover, a pen register is "a device or process that records or decodes dialing, routing, addressing, or signaling information . . . but not the contents of a communication." And this is precisely what Plaintiffs have alleged. *See* Compl. ¶ 152, 154. Nothing that Defendant cites states that simply because a device can function both as a wiretap (a device that intercepts communications) and a pen register (a device that captures address and user-agent information but not communications) that the device is not a pen register. Indeed, it would do poor service to the broad language of the statute to prevent liability simply because a device is sophisticated enough to do both. Plaintiffs allege that the Third Parties' cookies and the corresponding software code Defendant installed on its Website are "pen registers" because they are "device[s] or process[es]" that "capture[d]" the "routing, addressing, or signaling information"—including, the IP address and user-agent information—from the electronic communications transmitted by Plaintiffs. Compl. ¶ 152. Moreover, the Complaint alleges that the Third Parties attached several different cookies to Plaintiffs' devices and browsers, which collected different data sets. *See, e.g.*, Compl. ¶¶ 43–73 (identifying and describing a variety of cookies, including ones that transmits a user's IP address and unique user identifiers).

Finally, Plaintiffs adequately plead that Defendant caused the collection of information that could fall under the pen register statute. They allege that the Third Parties attached several different cookies to Plaintiffs' devices and browsers, which "capture[d]" the "routing, addressing, or signaling information"—including, the IP address and user-agent information. *See e.g.*, Compl. ¶¶ 57, 59, 73 (describing cookies that transmits a user's IP address and user-agent information). Thus, as alleged, some cookies transmit contents of communications while others transmit user information and IP addresses (i.e. not contents). This is sufficient. And Defendant's contrary argument ignores the pleadings.

**D. Plaintiffs Adequately Plead Claims for Common Law Invasion of Privacy and Intrusion Upon Seclusion.**

Defendant's only argument for the dismissal of Plaintiffs' common law privacy claims is that Plaintiffs' lack standing. Mot. at 23. As established above, Plaintiffs do in fact have standing. Accordingly, Plaintiffs have sufficiently pleaded these claims.

**E. Plaintiffs Adequately Plead their Fraud Claims**

Fraud, deceit and misrepresentation claims require a plaintiff to plead (1) a misrepresentation or omission of material fact; (2) knowledge of falsity; (3) intent to defraud or to induce reliance; (4) justifiable reliance; and (5) resulting damage. *See Heeger v. Facebook, Inc*. 509 F. Supp 3d 1182, 1194 (N.D. Cal. 2020). "Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *Brown v. Natures Path Foods, Inc.*, No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760, at *7–8 (N.D. Cal. Mar. 10, 2022). Here, Defendant challenges only Plaintiffs' allegations with respect to scienter and damages. Both arguments fail.

**1. Plaintiffs adequately plead scienter and that Defendants' conduct was not mere error.**

Much of Defendant's argument regarding scienter relies on Defendant's contention that the failure to respect Plaintiffs' cookie preferences was the result of a malfunction or error. This misstates the pleadings. Despite Defendant's repeated characterizations, Plaintiffs do not allege that Defendant's conduct was mere error. Instead, Plaintiffs allege that Defendant's promises in the popup banner were false and that Defendant, intentionally caused cookies to be stored on Plaintiffs' and Class members' browsers and devices, which enabled the Third Parties and Defendant to track and collect Plaintiffs'

and Class members' private communications. Compl. ¶¶ 36–47, 162. In essence, Defendant's argument is an impermissible request for the Court to draw an inference in Defendant's favor, notwithstanding Plaintiffs' allegations to the contrary. *See Hawkins v. Kroger Co.*, 906 F.3d 763, 767 n.2 (9th Cir. 2018) (This Court must "accept the complaint's well-pleaded factual allegations as true, and construe all inferences in the plaintiff's favor for the purposes of evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)"); *Motorola Mobility LLC*, 2025 U.S. Dist. LEXIS 133836, at *25 (rejecting substantially similar argument as "an inherently factual contention that cannot properly be resolved on a motion to dismiss" (quotation marks and citation omitted)). At best, what Defendant argues is an affirmative defense. But Defendant points to no undisputed facts that could establish such a defense, making its argument improper for a motion to dismiss. *See, e.g., Nguyen v. Stephens Institute*, 529 F. Supp. 3d 1047, 1056 (N.D. Cal. 2021) (an affirmative defense cannot be raised in a motion to dismiss when based on disputed facts).

**2. Plaintiffs have adequately pleaded damages with respect to their fraud claims.**

Defendant's argument that Plaintiffs have failed to identify any loss of money, property, or value is misguided and ignores their allegations of an invasion of protected interests, misappropriation of their information, and that their information has value. *See*, *e.g.*, Compl. ¶¶ 74–79. Invasions of privacy have long been recognized at common law as concrete injuries sufficient to support a lawsuit. *TransUnion*, 594 U.S. at 425. And Plaintiffs "have a stake in the value of their misappropriated data." *Brown v. Google LLC*, 685 F. Supp. 3d 909, 940 (N.D. Cal. 2023) (denying summary judgment on a claim involving misappropriated data); *see also Rodriguez v. Google*, 2024 U.S. Dist. LEXIS 1290, at *35–36 (summarizing viable damages model based on "[u]ser's willingness to pay to prevent data collection").

**F. Plaintiffs' Unjust Enrichment Claim Is Properly Pled.**

The Ninth Circuit has allowed independent claims for unjust enrichment to proceed. *See Bruton v. Gerber Prod. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017); *see also In re Facebook Consumer Priv.*, 402 F. Supp. 3d 767, 803 (N.D. Cal. 2019) (permitting an independent unjust enrichment claim alongside valid breach of contract and fraud claims). To successfully plead unjust enrichment, "a

plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *Katz-Lacabe v. Oracle Am.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023). Here, Plaintiffs may bring an unjust enrichment claim because they allege that Defendant benefited from using their Private Communications. Compl. ¶¶ 31–35, 74–79, 173–76 (describing ways in which Defendant benefited from the use of cookies); *see also In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 600 ("Plaintiffs have adequately pleaded an entitlement to Facebook's profits from users' personal data" where they "allege that their browsing histories carry financial value"). "These allegations are all that is necessary at this stage in the proceedings." *Shah v. Capital One Fin. Corp.*, No. 24-cv-05985-TLT, 2025 U.S. Dist. LEXIS 42677, at *30–31 (N.D. Cal. Mar. 3, 2025) (refusing to dismiss unjust enrichment claim in a privacy case); *see also A.J. v. LMND Med. Grp.*, No. 24-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480, at *4 (N.D. Cal. Oct. 25, 2024) (finding that plaintiffs' allegations that defendant benefitted from their information by exchanging it without their consent and that plaintiffs failed to receive the benefit of their bargain was sufficient to plead unjust enrichment).

### G. Plaintiffs Sufficiently Plead Punitive Damages.

In arguing that Plaintiffs' punitive damages claims must be dismissed, Defendant recycles the notion that Plaintiffs failed to sufficiently plead fraud under Rule 9(b). *See* Mot. at 25. Irrespective of whether Plaintiffs meet Rule 9(b), which they do, demands for punitive damages have no heightened pleading standard; they need only raise more than a possibility of entitlement to relief. *See Crowder v. Shade Store, LLC*, No. 23-cv-02331-NC, 2024 U.S. Dist. LEXIS 114470, at *28–30 (N.D. Cal. Jun. 26, 2024); *Omni King, Inc. v. Accelerant Specialty Ins. Co.*, No. 5:23-cv-000048-SSS, 2023 U.S. Dist. LEXIS 87708, at *10 (C.D. Cal. Apr. 19, 2023). Defendant also asserts that Plaintiffs punitive damages claims must be dismissed because they cannot assert punitive damages against an entity, as opposed to an individual. *See* Mot. at 25. This in nonsensical; Plaintiffs allege that Defendant's use of the third-party resources on the Websites was and is done so "pursuant to agreements between Defendant and those Third Parties." Compl. ¶ 28. "[T]he only plausible conclusion is that an officer, director, or managing agent of [Defendants] authorized, or at the least had knowledge or conscious disregard of, [the alleged] practices." *Crowder*, 2024 U.S. Dist. LEXIS 114470, at *29 (citing *Jager v. Davol, Inc.*, No. 16-1424-JGB, 2016 U.S. Dist. LEXIS 188821, at * 19 (C.D. Cal. Oct. 20, 2016) ("[B]ased on the

facts alleged in the Complaint, it is unreasonable to assume that the alleged conduct of which Plaintiffs complain . . . is attributable to anyone without directorial responsibility.")); *Ruhnke v. Skinmedica, Inc.*, No. 14-0420-DOC, 2014 U.S. Dist. LEXIS 207235, at *11–32 (C.D. Cal. Sept. 5, 2014) (plaintiff adequately pled a demand for punitive damages where "the fraudulent conduct alleged in the FAC is corporate-wide" because these "[d]ecisions . . . are inherently tied to *corporate policy*") (internal citations omitted). Additionally, "at the pleading stage, the Plaintiff can plead conflicting theories" and Plaintiffs should be permitted to do so here regarding damages, without warranting dismissal. *Scheibe v. Perfect Keto Grp. Ltd. Liab. Co.*, 700 F. Supp. 3d 928, 937 (S.D. Cal. 2023).

**H. Plaintiffs Request Leave to Amend if Necessary.**

"[L]eave to amend should be granted unless the Court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Indeed, leave to amend is only properly denied "where the amendment would be futile." *DeSoto v. Yellow Freight Sys*., 957 F.2d 655, 658 (9th Cir. 1992). Should this Court find any claims in the Complaint insufficient, Plaintiffs request leave to amend to cure the identified deficiencies.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss must be denied.

Dated: June 5, 2026

**GUTRIDE SAFIER LLP**

*/s/ Seth A. Safier*

Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090

*Attorneys for Plaintiffs*