FRED B. BURNSIDE (State Bar No. 211089)
fredburnside@dwt.com
DAVIS WRIGHT TREMAINE LLP
50 California Street, 23rd Floor
San Francisco, California 94111
Telephone: (415) 276-6500
Fax: (415) 276-6599

SANCHO ACCORSI (State Bar No. 329413)
sanchoaccorsi@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

*Attorneys for Defendant Grocery Outlet Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

YURI FONS and JENNIFER TURNER, individuals, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

v.

GROCERY OUTLET INC.,

Defendant.

Case No. 5:26-cv-00964-BLF

**REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

| | |
|---|---|
| Date: | August 27, 2026 |
| Time: | 9:00 a.m. |
| Courtroom: | 1 – 5th Floor |
| Complaint Filed: | January 30, 2026 |

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. THE COURT SHOULD DISMISS FOR LACK OF STANDING ..... 1

A. Plaintiffs Allege No Concrete Injury. ..... 1

1. No Privacy Injury. ..... 2

2. No Economic Injury. ..... 6

B. Plaintiffs Fail To Allege Any Injury Traceable to Grocery Outlet. ..... 8

III. THE COURT SHOULD DISMISS FOR FAILURE TO STATE A CLAIM ..... 9

A. Plaintiffs' CIPA Theories Conflict with the CCPA. ..... 9

B. Plaintiffs' CIPA § 631 Claim Fails on the Merits. ..... 10

1. Plaintiffs Do Not Allege Any Communication or Its Contents ..... 10

2. Plaintiffs Do Not Allege Third Parties Read Any Communications in Transit. ..... 10

C. Plaintiffs' CIPA § 638.51 Claim Fails on the Merits. ..... 12

1. CIPA § 638.51 Only Applies to Telephonic Communications. ..... 12

2. Cookies Are Not Pen Registers. ..... 12

3. Plaintiffs Have No Statutory Standing for a § 638.51 Claim. ..... 13

D. Plaintiffs Do Not Allege Facts Plausibly Supporting Either Privacy Claim. ..... 13

E. Plaintiffs Do Not Allege Fraud. ..... 13

1. No Scienter. ..... 13

2. No Harm. ..... 14

F. Plaintiffs Do Not Allege Facts Plausibly Supporting Unjust Enrichment. ..... 14

G. Punitive Damages Are Unavailable. ..... 15

IV. CONCLUSION ..... 15




DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

# TABLE OF AUTHORITIES

## Cases

*A.J. v. LMND Medical Group, Inc.*,
2024 WL 4579143 (N.D. Cal. 2024) .......... 15

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) .......... 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 8, 14

*Big 5 Sporting Goods Corp. v. Zurich Am. Ins. Co.*,
635 F. App'x 351 (9th Cir. 2015) .......... 3

*Blaker v. NetScout Sys., Inc.*,
2026 WL 1709143 (L.A. Super. Ct. 2026) .......... 12

*Bradshaw v. Lowe's Cos., Inc.*,
2025 WL 3171740 (S.D. Cal. 2025) .......... 13

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 6, 8

*Cimoli v. Alacer Corp.*,
546 F. Supp. 3d 897 (N.D. Cal. 2021) .......... 7

*Crowder v. Shade Store, LLC*,
2024 WL 4868313 (N.D. Cal. 2024) .......... 15

*D'Antonio v. Smith & Wesson Inc.*,
820 F. Supp. 3d 928 (N.D. Cal. 2026) .......... 4, 8

*DeLeon v. Wells Fargo Bank, N.A.*,
2011 WL 311376 (N.D. Cal. 2011) .......... 14

*Doe v. Eating Recovery Center LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) .......... 9, 10

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) .......... 14

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .......... 3

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... *passim*



DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

*Gabrielli v. Haleon US Inc.*,
815 F. Supp. 3d 852 (N.D. Cal. 2025) .................................................. 4, 8

*Gabrielli v. Motorola Mobility LLC*,
2025 WL 1939957 (N.D. Cal. 2025)................................................................ 14

*Garcia v. Blackhawk Network, Inc.*,
2026 WL 925028 (C.D. Cal. 2026)................................................................ 2, 5

*Goldstein v. Rumble Inc.*,
2026 WL 1406766 (C.D. Cal. 2026)................................................................ 10

*In re Google Assistant Privacy Litig*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .................................................. 5, 7

*In re: Google Inc. Cookie Placement Consumer Privacy Litig.*,
934 F.3d 316 (3d Cir. 2019)................................................................ 3

*In re Google, Inc. Priv. Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ................................................................ 6

*Gutierrez v. Converse Inc.*,
2025 WL 1895315 (9th Cir. 2025)................................................................ 9, 11

*Hughes v. Vivint, Inc.*,
2024 WL 5179916 (C.D. Cal. 2024)................................................................ 5

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ................................................................ 6

*James v. Allstate Ins. Co.*,
2023 WL 8879246 (N.D. Cal. 2023)................................................................ 11

*James v. Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) ................................................................ 5

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .................................................. 4, 10

*Kenney v. JPMorgan Chase Bank, N.A.*,
2025 WL 2117415 (C.D. Cal. 2025)................................................................ 9

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023)................................................................ 11

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021)................................................................ 12

*In re Meta Pixel Tax Filing Cases*,
793 F. Supp. 3d 1147 (N.D. Cal. 2025) .................................................. 12, 13



DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

*Montgomery v. Nat'l City Mortg.*,
2012 WL 1965601 (N.D. Cal. 2012)....................14

*Omni King, Inc. v. Accelerant Specialty Ins. Co.*,
2023 WL 6881824 (C.D. Cal. 2023)....................15

*Ortiz v. Foris Dax, Inc.*
2026 WL 1430720 (N.D. Cal. 2026)....................2, 5, 10

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025)....................*passim*

*Ribas v. Clark*,
38 Cal. 3d 355 (1985)....................11

*Rodriguez v. Google LLC*,
772 F. Supp. 3d 1093 (N.D. Cal. 2025)....................8

*Ruhnke v. SkinMedica, Inc.*,
2014 WL 12577172 (C.D. Cal. 2014)....................15

*Russo v. Fed. Med. Servs., Inc.*,
744 F. Supp. 3d 914 (N.D. Cal. 2024)....................13

*Schallert v. Laird Superfood, Inc.*,
2026 WL 1707585 (C.D. Cal. 2026)....................5

*Schneider v. Cal. Dep't of Corr.*,
151 F.3d 1194 (9th Cir. 1998)....................9

*Semien v. PubMatic Inc.*,
2026 WL 216333 (N.D. Cal. 2026)....................4

*Shah v. Capital One Financial Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025)....................15

*Shah v. Politico LLC*,
2026 WL 323269 (N.D. Cal. 2026)....................4

*Shah v. Talentbridge, Inc.*,
2026 WL 1507888 (C.D. Cal. 2026)....................4

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
802 F. Supp. 2d 1125 (C.D. Cal. 2011)....................4, 5, 13

*Svenson v. Google Inc.*,
65 F. Supp. 3d 717 (N.D. Cal. 2014)....................10

*Timothee v. Meta Platforms, Inc.*,
2026 WL 1130363 (N.D. Cal. 2026)....................3



DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 2

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .......... 12

*In re USA Today Co., Inc. Internet Tracking Litig.*,
2026 WL 932655 (N.D. Cal. 2026) .......... 5

*Uzuegbunam v. Preczewski*,
592 U.S. 279 (2021) .......... 7

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) .......... 11, 12

*Variety Media, LLC v. Super. Ct.*,
No. B350578 (Cal. Ct. App.) .......... 12

*Wilson v. Hewlett-Packard Co.*,
668 F.3d 1136 (9th Cir. 2012) .......... 14, 15

*Wishnick v. Frye*,
111 Cal. App. 2d 926 (1952) .......... 14

*Wooten v. BioLife Plasma Servs. L.P.*,
807 F. Supp. 3d 1139 (E.D. Cal. 2025) .......... 3

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 10

*In re Zerbe*,
60 Cal. 2d 666 (1964) .......... 13

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 10

**Statutes**

Cal. Civ. Code
§ 1798.100 .......... 9
§ 1798.120(a) .......... 9
§ 1798.135(a) .......... 9
§ 3294(a) .......... 15



DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

Cal. Pen. Code
§ 629.50 ..... 13
§ 631 ..... 10, 11, 12
§ 631 ..... 13
§ 631(a) ..... 10, 11
§ 632 ..... 13
§ 637.2(a) ..... 13
§ 638.50(b) ..... 12
§ 638.50(c) ..... 12
§ 638.51 ..... 12, 13

**Rules**

Fed. R. Civ. P. 12(b)(6) ..... 9


DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

# I. INTRODUCTION

Plaintiffs' boilerplate Opposition to Grocery Outlet's Motion to Dismiss is notable for what it lacks: a single reference to either Plaintiff (beyond the caption). Their equally unspecific Complaint alleges Grocery Outlet disclosed to Google and Flipp that a "Website user" visited groceryoutlet.com. Compl. ¶¶ 30–31. It cites "Website user" data that could have been transmitted to Google or Flipp, but the Court will look in vain for any allegation that *these* Plaintiffs engaged in any such activity on the website. Plaintiffs allege only that Fons clicked on a Weekly Ad and entered a zip code. Turner's allegations are no better—she does not allege ***any conduct***. Grocery Outlet's website is unauthenticated—visitors do not sign in—and neither Plaintiff offers a plausible allegation that any data sent via cookie did (or could) identify their names to Google or Flipp. Absent this lawsuit, Grocery Outlet would have no clue that either Plaintiff went to groceryoutlet.com. Grocery Outlet cannot disclose what it does not know—Plaintiffs' identities. Plaintiffs' Opposition does nothing to support a basis for their sweeping privacy claims and the Court should grant the Motion to Dismiss for the following reasons:

*First*, Plaintiffs still fail to establish Article III standing. Their Opposition merely repeats the Complaint's allegations about hypothetical injuries to hypothetical users, which is not a substitute for alleging a concrete injury. Plaintiffs' authorities largely depend on outdated law. Plus, even if Google and Flipp could identify Plaintiffs, they would do so based on personally identifying data Plaintiffs disclosed on some other website, so no injury is traceable to Grocery Outlet. Plaintiffs fail to establish standing and the Court should dismiss the Complaint.

*Second*, Plaintiffs' claims fail on the merits. They cannot show CIPA reaches the alleged conduct, particularly given its criminal nature and the Legislature's decision to regulate internet tracking technologies through the CCPA. In any event, Plaintiffs fail to plead essential CIPA elements and their arguments do not salvage their remaining claims or punitive-damages request.

# II. THE COURT SHOULD DISMISS FOR LACK OF STANDING

## A. Plaintiffs Allege No Concrete Injury.

Neither Plaintiffs' asserted privacy nor economic harms are concrete. *See* Mot. 6–14.



DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

**1. No Privacy Injury.**

Plaintiffs do not allege a privacy harm comparable to intrusion upon seclusion because they do not allege "highly offensive" conduct. *See* Mot. 6–7. In *Popa v. Microsoft Corp.*, a pet store's third-party tool recorded users' browsing activity, but this was not "highly offensive" because, "[a]t most, Popa allege[d] that [the third party] gathered her pet-store preferences and her street name." 153 F.4th 784, 791 (9th Cir. 2025). So too, here, where Plaintiffs allege cookies collected a zip code and ad (Fons) or nothing (Turner). Compl. ¶¶ 85–86, 94–95.

Plaintiffs do nothing to distinguish *Popa* (or cases applying *Popa*) in analogous circumstances. *See* Mot. 7. For example, they argue that *Garcia* is distinguishable because the *Garcia* complaint contained "'few allegations about'" the tracking technologies actually placed on the plaintiff's browser. Opp. 9 (quoting *Garcia*). But that misreads the decision, which hinged on the plaintiff's failure, like Plaintiffs' here, to allege the interception of "'embarrassing, invasive, or otherwise private information.'" *Garcia v. Blackhawk Network, Inc.*, 2026 WL 925028, *5 (C.D. Cal. 2026). It only afterward noted additional deficiencies in the complaint. *Id.* at *6. Plaintiffs also fault *Garcia* for reasoning that a "'[d]efendant's misrepresentation goes only to … whether there was an intrusion into a private place,'" not whether the intrusion was highly offensive. Opp. 9. But *Garcia*'s analysis is both common-sensical and based in *Popa*, which explains that whether an intrusion is "highly offensive" turns on information sensitivity. 153 F.4th at 787, 791. Allowing Plaintiffs to proceed based on *any* misrepresentation, without sensitive data collected, would premise standing on an "informational injury that causes no adverse effects"—which *TransUnion LLC v. Ramirez* rejected. 594 U.S. 413, 442 (2021). But even if the alleged misrepresentation factored into the offensiveness inquiry, its impact is dwarfed by the sheer mundanity of the data at issue.

In line with *Garcia*, Judge Chen recently dismissed a complaint indistinguishable from Plaintiffs', brought by Plaintiffs' counsel. In *Ortiz v. Foris Dax, Inc.*—issued after Grocery Outlet's Motion but before Plaintiffs' Opposition—plaintiffs failed to allege "how the information collected about Plaintiffs … constitute[d] an 'egregious breach of the social norms.'" 2026 WL 1430720, *4 (N.D. Cal. 2026) (citation omitted). Same here. Judge Beeler





DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

also recently found no privacy injury where a food bank's website allegedly disclosed that users "interact[ed] with [a] Find Food map and enter[ed] their addresses"—data indistinguishable from Fons's. *Timothee v. Meta Platforms, Inc.*, 2026 WL 1130363, *4 (N.D. Cal. 2026).

Having failed to distinguish Grocery Outlet's authorities, Plaintiffs instead rely on two pre-*TransUnion* cases suggesting a CIPA violation itself suffices for standing: *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020), and *Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017). Opp. 7. But *Popa* limited Plaintiffs' broad read of these cases, which "finds no support in *TransUnion*." 153 F.4th at 794 (limiting *In re Facebook* and *Eichenberger*). Plaintiffs' remaining case, *In re: Google Inc. Cookie Placement Consumer Privacy Litigation*, 934 F.3d 316 (3d Cir. 2019), *see* Opp. 7, did not address the offensiveness of the alleged intrusion. Plus, it predates *TransUnion* and its conclusion that plaintiffs allege a concrete injury any time they "seek redress for unauthorized disclosures of information," 934 F.3d at 325, is precisely the broad concept of injury that *TransUnion* and *Popa* forbid. Courts must instead "identif[y] discrete privacy torts (not a general right to privacy)." *Popa*, 153 F.4th at 794.

Ultimately, Plaintiffs do not allege a highly offensive intrusion because (a) the non-sensitive information, (b) the limited scope, and (c) other factors all weigh against offensiveness.

**a. The Information Is Not Sensitive.**

***Turner.*** Turner again makes no effort to explain what, if any, data of hers was collected, *see* Mot. 8—indeed, she's tellingly never mentioned in the Opposition. She still relies on generalized allegations of what data Google and Flipp *can* collect *in general*, *see* Opp. 5–6, but these hypotheticals are not sufficient to establish *her* concrete injury. *Popa*, 153 F.4th at 786–87, 791; *Wooten v. BioLife Plasma Servs. L.P.*, 807 F. Supp. 3d 1139, 1145 (E.D. Cal. 2025) ("hypothetical examples—based on the generic product descriptions"—insufficient for standing).

***Fons.*** Plaintiffs do not dispute that, for his part, Fons alleges only that Grocery Outlet disclosed that a "website user" clicked a "Weekly Ad" and entered a zip code. *See* Mot. 8. Grocery Outlet cited decisions, including from the Ninth Circuit, showing these banal data points do not support finding a highly offensive intrusion. *Id.* at 8–9; *see Big 5 Sporting Goods Corp. v. Zurich Am. Ins. Co.*, 635 F. App'x 351, 354 (9th Cir. 2015) (no harm from disclosure of zip





DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

code). Plaintiffs cite no authority to the contrary and thus concede the point. *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011).

***Hypotheticals.*** Generalized allegations about how a website *can* operate do not establish what information was collected from *these* Plaintiffs. *See* Mot. 9.

Plaintiffs respond that the Complaint describes "how the Website operates as to all users (including Plaintiffs)," Opp. 6, but they do not even attempt to identify any sensitive information other users could have communicated through the Website, let alone that they communicated themselves. This distinguishes Plaintiffs' cited cases. *See Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 867 (N.D. Cal. 2025) (healthcare data); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 942 (N.D. Cal. 2023) (same); *Semien v. PubMatic Inc.*, 2026 WL 216333, *4 (N.D. Cal. 2026) (same plus "travel plans, political affiliation, [and] sexual orientation").

Plaintiffs next argue Grocery Outlet's Privacy Policy reveals the data captured and transmitted by cookies. Opp. 7. But this argument does not solve Plaintiffs' problem, which is that the Policy still just describes how the website *could* operate. In any event, the Policy only confirms that any data collection reflects *that* user's specific website interactions—which is what Plaintiffs do not allege. Compl. ¶ 34 (listing categories such as "information generated *in the course of using our site*" or "about *how you interact with our ads*" (emphasis added)).

Plaintiffs also argue that the data collected is not anonymized. Opp. 5. But the Complaint only alleges that cookies include an "identifier" allowing the third party to distinguish users across websites. Compl. ¶ 29. Associating data with a pseudonymous identifier, like the cid "28755121.1711416917" identified in the Complaint, *id.* ¶¶ 58–59, is not the same as associating data with "Yuri Fons" personally. The Complaint contains no allegation that any data was associated with Plaintiffs' personally identifying information (and certainly not by Grocery Outlet). *See Shah v. Talentbridge, Inc.*, 2026 WL 1507888, *3 (C.D. Cal. 2026) (anonymized tracking not highly offensive). But even if the data at issue *were* linked to Plaintiffs, it is still too banal to constitute a highly offensive intrusion. *See* Mot. 9 (citing cases).

Plaintiffs ask the Court to follow *Shah v. Politico LLC*, 2026 WL 323269 (N.D. Cal. 2026), and *D'Antonio v. Smith & Wesson Inc.*, 820 F. Supp. 3d 928 (N.D. Cal. 2026), in which



DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

Plaintiffs' counsel filed similar complaints. Opp. 10. But those decisions are inconsistent with *In re Google Assistant Privacy Litigation*, where this Court required plaintiffs to plead specific facts about the alleged communications and held that bare allegations that plaintiffs "interacted with" their devices were insufficient. 457 F. Supp. 3d 797, 817 (N.D. Cal. 2020) (Freeman, J.). Many courts agree in online wiretapping cases. *See In re USA Today Co., Inc. Internet Tracking Litig.*, 2026 WL 932655, *2 (N.D. Cal. 2026) (no standing where plaintiffs failed to "identify the specific personal information [he/she] disclosed that implicate[d] a protectable privacy interest"); *Schallert v. Laird Superfood, Inc.*, 2026 WL 1707585, *6 (C.D. Cal. 2026) (same); *Ortiz*, 2026 WL 1430720, at *6 (same); *Hughes v. Vivint, Inc.*, 2024 WL 5179916, *5 (C.D. Cal. 2024). Plaintiffs' minimal allegations fail to establish a highly offensive intrusion.

Plaintiffs' other authorities, *see* Opp. 9, pre-date and conflict with *Popa*. *Compare James v. Disney Co.*, 701 F. Supp. 3d 942, 955–56 (N.D. Cal. 2023) ("reject[ing] argument that [p]laintiffs must show that any interception … was highly offensive … to have standing"), *with Popa*, 153 F.4th at 791 (concrete privacy injury requires "highly offensive" intrusion).

**b. The Scope Is Limited.**

Further, the narrow data collection alleged—limited to a single website—weighs against finding it "highly offensive." *See* Mot. 10; *Garcia*, 2026 WL 925028, at *5 (considering scope of collection). Plaintiffs ignore this argument, conceding it. *Stichting*, 802 F. Supp. 2d at 1132.

**c. Additional Factors Weigh Against Offensiveness.**

The remaining factors courts consider—"the likelihood of serious harm" from the intrusion, "the intruder's motives," and "countervailing interests or social norms"—weigh against finding the alleged conduct highly offensive. *See* Mot. 10.

*First*, disclosing limited data (untethered to an identified person) from browsing a public, commercial website does not threaten serious harm. *See id.* Plaintiffs again ignore and concede this argument. *Stichting*, 802 F. Supp. 2d at 1132.

*Second*, Plaintiffs allege only that the cookie banner malfunctioned; not that Grocery Outlet acted with bad motives. *See* Mot. 10–11. They assume the cookie banner was intentionally defective because Grocery Outlet implemented third-party code and the "Reject



DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

All" button on the website, Opp. 4, but they conflate knowledge that website features *existed* with knowledge that they did not operate as expected. Plaintiffs do not (and cannot, consistent with Rule 11) allege facts supporting the conclusion that Grocery Outlet knew some cookies slipped past the "Reject All" selection. At most, the Complaint alleges negligence—the "Reject All" button worked imperfectly. Compl. ¶ 162. But negligence is not highly offensive. *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012).

*Third*, that web-tracking is ubiquitous and users *must* disclose some data just to access websites shows that any alleged intrusion was not highly offensive. *See* Mot. 11. Plaintiffs ignore this larger context and instead mischaracterize the argument as asking the Court to conclude that "making outright false statements to Website users about their privacy options is normal, acceptable commercial behavior." Opp. 10. Grocery Outlet is not arguing defective cookie banners are "normal[ and] acceptable" (though the number of Plaintiffs' counsel's identical cases suggests they are not uncommon); rather, Grocery Outlet is pointing out that web tracking is commonplace and necessary. Indeed, *this Court's* privacy policy discloses it uses Google Analytics to "learn what users like and need"—before any user can opt-out. U.S. Courts, *Privacy & Security Policy*, https://www.uscourts.gov/privacy-security-policy, available by clicking "Privacy and Security" on https://cand.uscourts.gov/judges/blf/freeman-beth-labson.

*Finally*, Plaintiffs say the offensiveness inquiry "cannot be resolved on the pleadings," Opp. 10, but they are wrong. *See In re Google, Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (dismissing privacy claim on the pleadings); Mot. 7–11 (citing cases).

**2. No Economic Injury.**

Plaintiffs also fail to allege any concrete economic injury. *See* Mot. 12.

*First*, Plaintiffs still fail to articulate how Grocery Outlet profited from the zip code and Fons's "Weekly Ad" click. *See id.* They describe how websites may use data collected through cookies, Opp. 12; *see* Compl. ¶¶ 75–76, but those allegations say nothing about the limited data here. Plaintiffs cite distinguishable cases. *See In re Facebook*, 956 F.3d at 599, 600 (alleging "cradle-to-grave [user] profile[s]" worth "$52 per year"); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 920, 925–26 (N.D. Cal. 2023) (user's browsing data collected from "over 70 percent of all



DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

websites" worth "$3.00 a month"). Their hunch that Grocery Outlet profited from *their* data remains "purely conclusory." *In re Google Assistant*, 457 F. Supp. 3d at 835 (citation omitted).

*Second*, even if the data had some commercial value to Grocery Outlet, Plaintiffs must also allege that *they* lost something of value by alleging they intended, and somehow lost the ability, to sell the data. *See* Mot. 12. They ignore Grocery Outlet's authorities, *see id.*, and thus concede that they do not attempt to allege a tangible economic injury (which requires a detriment to Plaintiffs), instead arguing that they have standing because they seek "disgorgement [as a] remedy" (which they say does not require a detriment to them). Opp. 11.

Plaintiffs' turn to disgorgement is unavailing because, as noted above, they "have not adequately alleged that their unspecified 'personal information' has financial value or that [Grocery Outlet] ha[s] profited from the information." *In re Google Assistant*, 457 F. Supp. 3d at 834 (rejecting disgorgement theory on this basis). But even if they had, the pursuit of disgorgement is not a concrete injury for Article III purposes. Disgorgement is a "remedy," Opp. 11–12, so it does not represent a *tangible* harm for standing purposes. Indeed, Plaintiffs concede disgorgement may be available "even where an individual has not suffered a corresponding loss." *Id.* at 11 (quotation omitted). The same goes for nominal and statutory damages, *see id.*—these are remedies and "are not [themselves] grounds for Article III standing." *TransUnion*, 594 U.S. at 427–28 (addressing statutory damages); *see Uzuegbunam v. Preczewski*, 592 U.S. 279, 293 (2021) (nominal damages still require past injury).

Instead, the disgorgement, nominal, and statutory damages Plaintiffs seek are remedies for alleged *intangible* harms, *i.e.*, remedies "for [Plaintiffs'] unjust enrichment and common law privacy claims." Opp. 11. These *intangible* harms only suffice for standing if they are "benchmarked" to "a *specific* common-law tort." *Popa*, 153 F.4th at 791. But the alleged privacy harm here is not, and "'unjust enrichment cannot stand alone as an independent claim for relief.'" *Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897, 904 (N.D. Cal. 2021) (Freeman, J.) (citation omitted). So regardless whether Plaintiffs seek these remedies, they lack standing.

Plaintiffs again turn to *In re Facebook*, which reasoned that, "[b]ecause California law recognizes that individuals maintain an entitlement to unjustly earned profits, to establish



DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

standing, Plaintiffs must allege they retain a stake in the profits … regardless of whether an individual planned to sell his or her data or whether the individual's data is made less valuable." 956 F.3d at 600. But this broad standing analysis is exactly what *Popa* rejected. Instead, *Popa* instructs courts to "look to the *specific* underlying harm experienced by the plaintiff and compare it, in detail, to a *specific* common-law tort." 153 F.4th at 791. If litigants had standing based merely on the *remedies* they sought, the *Popa* analysis would have been unnecessary. Plaintiffs' other authorities simply followed *In re Facebook*. *See Brown*, 685 F. Supp. 3d 925–26; *Haleon US*, 815 F. Supp. 3d at 873; *D'Antonio*, 820 F. Supp. 3d at 938; *Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1109 (N.D. Cal. 2025).

*Finally*, Plaintiffs concede personal information is not "property," so injury to property rights is not a basis for standing. *See* Mot. 12.

**B. Plaintiffs Fail To Allege Any Injury Traceable to Grocery Outlet.**

Even if sharing a zip code and ad were a cognizable injury, Plaintiffs fail to allege that injury is traceable to Grocery Outlet because it is implausible that the Google and Flipp cookies were not already on their browsers. Mot. 12–13. Plaintiffs did not sign into groceryoutlet.com and they do not allege they disclosed any identifying information (like their names) to Grocery Outlet, so Grocery Outlet had no way to identify Plaintiffs. Grocery Outlet therefore could not have disclosed their identities to Google or Flipp. The only way Google or Flipp could tie browsing activity on groceryoutlet.com to Plaintiffs personally is if they had already disclosed their identities to Google or Flipp some other way. But that is not traceable to Grocery Outlet.

Plaintiffs ignore this argument and cite no decision addressing traceability on these facts. Instead, they say Grocery Outlet caused the alleged tracking "[b]y failing to honor Plaintiffs' cookie preferences," Opp. 12, but at the same time they concede these cookies operate "across websites … and across multiple browsing sessions," *id.* at 4—meaning they more likely than not were placed on Plaintiffs' browsers by *other* websites. Thus, even "if Defendant ha[d] honored their cookie preferences," *id.* at 12, the same cookies would have been on their browsers, so no injury is traceable to Grocery Outlet. Pleading facts "consistent" with, rather than plausibly showing, liability is insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).



DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

Last, Plaintiffs attempt to expand the case to "many more" third parties besides Google and Flipp. Opp. 3, 15. But they cannot amend via briefing. *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

## III. THE COURT SHOULD DISMISS FOR FAILURE TO STATE A CLAIM

Even if Plaintiffs had Article III standing, the Court should dismiss the Complaint because Plaintiffs fail to state a claim under Federal Rule of Civil Procedure 12(b)(6).

### A. Plaintiffs' CIPA Theories Conflict with the CCPA.

The Court should read CIPA consistently with the CCPA, which expressly permits the use of web tools like the Google and Flipp cookies so long as users can opt out of tracking. *See* Mot. 14–15; Cal. Civ. Code §§ 1798.100, 1798.120(a), 1798.135(a). *This Court's* website uses Google to collect data on an opt-out basis. *See* U.S. Courts, *Privacy & Security Policy*, *supra*. Plaintiffs concede they challenge tracking "before and after" users even see the cookie banner, Opp. 1; *see id.* at 3 (same), thus they believe Grocery Outlet did not have consent to place cookies *even before* they interacted with the cookie banner. The only way to avoid liability under Plaintiffs' theory is to wait for affirmative consent from users, but that is the *opt-in* consent regime the Legislature decided *not* to implement.

Plaintiffs claim Grocery Outlet violated the CCPA because website users had "no chance to opt out of such sharing." Opp. 13. That ignores Grocery Outlet's Privacy Policy, which includes a "Right to Delete" provision, instructing users how to request data deletion regardless of any cookie banner. *See* https://www.groceryoutlet.com/legal/privacy. And even if the banner did violate the CCPA, the Legislature gave no private right of action for malfunctioning cookie banners. *Kenney v. JPMorgan Chase Bank, N.A.*, 2025 WL 2117415, *8 (C.D. Cal. 2025).

Plaintiffs say that their CIPA claims can proceed even if they conflict with the CCPA. Opp. 13. But, as the *Doe v. Eating Recovery Center LLC* court explained, CIPA—a criminal statute never intended "to apply to the type of conduct implicated by this case at all"—is strictly construed against liability. 806 F. Supp. 3d 1109, 1118–19 (N.D. Cal. 2025); *see Gutierrez v. Converse Inc.*, 2025 WL 1895315, *3 (9th Cir. 2025) (Bybee, J., concurring).



DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

**B. Plaintiffs' CIPA § 631 Claim Fails on the Merits.**

**1. Plaintiffs Do Not Allege Any Communication or Its Contents.**

Plaintiffs allege transmission of only record information, not communication contents: namely that Fons clicked a "Weekly Ad" link and entered a zip code. *See* Mot. 16–18; *Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 729 (N.D. Cal. 2014). The Opposition does not persuade.

Plaintiffs claim Google and Flipp intercepted "user input data," Opp. 15, citing a string of cases finding *search terms* may be "contents" under CIPA. *Id.* (citing authority). But even if searches were contents in some circumstances, neither Plaintiff here alleges *they* used any search function on groceryoutlet.com. *See* Mot. 17–18 n.2 (citing authority); *Ortiz*, 2026 WL 1430720, at *6 (dismissing where complaint "[was] silent on the actions [plaintiffs] *personally* took on the [website] after clicking the 'disable cookies' button"). And even though Fons says he entered his zip code, Compl. ¶ 80, information such as "name[ or] address" is record information, not contents. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1104, 1108–09 (9th Cir. 2014); *Svenson*, 65 F. Supp. 3d at 729 (user-input zip code was record information).

Plaintiffs next argue that third parties obtained "the specific website and products they viewed." Opp. 16 (citing Compl. ¶¶ 80, 90). But they never identify any products viewed. And Plaintiffs disregard the Ninth Circuit's decision in *In re Zynga*, which distinguished URLs containing "only basic identification and address information" from those containing "a search term or similar communication *made by the user*." 750 F.3d at 1108–09 (emphasis added). They likewise offer no response to cases holding that records of page visits, without more, are *not* contents. *Katz-Lacabe*, 668 F. Supp. 3d at 944 n.9; *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1077, 1082–83 (C.D. Cal. 2021). Plaintiffs' reliance on *Goldstein v. Rumble Inc.*, 2026 WL 1406766 (C.D. Cal. 2026), is unavailing. Unlike that case, Plaintiffs offer no allegations about the URLs associated with their alleged visits. *But cf. Eating Recovery*, 806 F. Supp. 3d at 1116 (URLs revealed plaintiff researched anorexia and explored treatment options).

**2. Plaintiffs Do Not Allege Third Parties Read Any Communications in Transit.**

Plaintiffs do not allege any third party attempted to read communications while in transit, as § 631(a) requires. *See* Mot. 18–19. Allegations that data were collected and later analyzed do



DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

not establish that any party read communication contents while in transit. *Eating Recovery*, 806 F. Supp. 3d at 1117–18. Plaintiffs ignore Grocery Outlet's authority. *See* Mot. 18–19.

Plaintiffs instead respond that "simultaneously duplicat[ing] and intercept[ing] communications" is sufficient. Opp. 17. But that argument conflates *intercepting* with *reading*. The plain text of the statute expressly requires a party to "read" a communication "while the same is in transit"—the word "intercept" appears nowhere in § 631(a). Cal. Pen. Code § 631(a); *see James v. Allstate Ins. Co.*, 2023 WL 8879246, *3 (N.D. Cal. 2023) (dismissing § 631 claim where plaintiff did not allege third party "read, attempted to read, or to learn the meaning of his communications"). The Ninth Circuit has confirmed that more than the mere possibility of access is required; plaintiffs must allege that the third party actually read or attempted to read the communications. *Gutierrez*, 2025 WL 1895315, at *1. Likewise, the allegations that cookies allowed third parties to "track" or "collect" data, Opp. 17 (citing Compl. ¶¶ 4, 30), say nothing about anyone reading communications *while in transit*.

In any event, Plaintiffs' cited cases are distinguishable. In *Valenzuela v. Keurig Green Mountain, Inc.*, the court did not address when communications were read because the plaintiff failed to plead contemporaneous interception. 674 F. Supp. 3d 751, 759 (N.D. Cal. 2023). And to the extent Plaintiffs' cases collapse these distinct inquiries, *see* Opp. 17, they overlook § 631(a)'s requirement that a communication be "read" "while … in transit." Cal. Pen. Code § 631(a). That timing requirement matters because CIPA distinguishes between "what the third party does *during* the conversation and … what [it] … does with the recorded transcripts *after*." *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1108 (C.D. Cal. 2023).

Finally, Plaintiffs argue § 631 applies not just to communications "in transit," but also to communications "'being sent from, or received at any place within this state.'" Opp. 17 (quoting Cal. Pen. Code § 631(a)). But the gerund phrase "being sent … or received" still requires the communication be in transit from the sender to the recipient rather than in storage after arrival. Plaintiffs cite *Ribas v. Clark*, Opp. 17, but *Ribas* does not support Plaintiffs' reading, as it treats the two concepts at once, finding the defendant eavesdropped while the communication "was either 'in transit' or was 'being sent from' and 'received at' a place within this state." 38 Cal. 3d



DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

355, 360 (1985). Plaintiffs' other authority agrees. *See Valenzuela*, 674 F. Supp. 3d at 759 ("Plaintiff cannot avoid the simultaneity argument merely because she sends or receives a message in California."); *see also Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1136 (E.D. Cal. 2021) (treating "in transit" the same as "passing over" or "being sent" or "received").

**C. Plaintiffs' CIPA § 638.51 Claim Fails on the Merits.**

**1. CIPA § 638.51 Only Applies to Telephonic Communications.**

The plain text, legislative history, and context of § 638.51 show that § 638.51 does not apply to internet communications. *See* Mot. 19–21. Plaintiffs do not address any of these arguments, *see* Opp. 18–20, and the cases to which they cite are not binding on this Court. *See id.* at 18–19. In any event, the California Court of Appeal is reviewing this question. *See Variety Media, LLC v. Super. Ct.*, No. B350578 (Cal. Ct. App.); *Blaker v. NetScout Sys., Inc.*, 2026 WL 1709143, *4 (L.A. Super. Ct. 2026) (dismissing on this basis).

**2. Cookies Are Not Pen Registers.**

Even if § 638.51 applied to internet communications, the cookies alleged in the Complaint do not qualify as pen registers. *See* Mot. 21–22. A pen register is a device that records dialing or routing information "but not the contents of a communication." Cal. Pen. Code § 638.50(b). Courts distinguish between routing information and substantive data, and technologies that capture communication contents are not pen registers. *United States v. Forrester*, 512 F.3d 500, 509 (9th Cir. 2008). Plaintiffs respond, "it would do poor service to the broad language of the statute to prevent liability simply because a device is sophisticated enough to do both." Opp. 19. But that is wrong for two reasons. First, that ignores § 638.50(c)'s plain language: pen registers cannot capture communication contents. Second, Plaintiffs can (and do) allege these tools violate § 631, so reading § 638.50(c) at face value does not "prevent liability."

Plaintiffs rely entirely on *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1152 (N.D. Cal. 2025), which erred in several respects. First, *In re Meta Tax Filing* characterized the definition of a "pen register" as "ambiguous," *id.* at 1153; but the statute is clear that pen registers capture routing information, "but not the contents of a communication." Cal. Pen. Code § 638.50(c). Even were it ambiguous, courts resolve ambiguous criminal statutes in defendants'



DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

favor. *See In re Zerbe*, 60 Cal. 2d 666, 668 (1964). The *In re Meta Tax Filing* court also erred in worrying that that pen registers capturing content would evade liability, because other statutes regulate devices that capture content. *E.g.*, Cal. Pen. Code §§ 631, 632. In any event, *In re Meta Tax Filing*'s construction would *undermine* privacy protections by allowing law enforcement to bypass the safeguards for wiretaps (which can collect content), instead meeting lesser requirements for pen registers (which *In re Meta Tax Filing* concludes can *also* collect contents). *Compare* Cal. Pen. Code § 629.50 (wiretaps available only with agency review, district attorney approval, probable cause), *with id.* § 638.53(a) (pen registers available to any peace officer).

Finally, Plaintiffs say "some cookies transmit contents of communications while others transmit user information and IP addresses (i.e., not contents)." Opp. 20. But without identifying which third party or cookies transmit contents, this vague allegation is inadequate under Rule 8. *See Russo v. Fed. Med. Servs., Inc.*, 744 F. Supp. 3d 914, 922 (N.D. Cal. 2024).

**3. Plaintiffs Have No Statutory Standing for a § 638.51 Claim.**

Plaintiffs cannot pursue a civil claim under § 638.51 because they do not allege they were "injured by" any alleged pen-register activity. Cal. Pen. Code § 637.2(a); *see* Mot. 22–23. Pen registers capture only routing information, such as IP addresses—information in which users have no reasonable expectation of privacy. *See* Mot. 23 (collecting cases); *Bradshaw v. Lowe's Cos., Inc.*, 2025 WL 3171740, *5 (S.D. Cal. 2025) (injury caused by non-source information "would not be caused by a violation of section 638.51(a)"). Plaintiffs concede this argument. *Stichting Pensioenfonds*, 802 F. Supp. 2d at 1132.

**D. Plaintiffs Do Not Allege Facts Plausibly Supporting Either Privacy Claim.**

Plaintiffs' privacy claims require a highly offensive intrusion. *See* Mot. 11, 23. They concede these claims rise and fall with the standing inquiry. *See* Opp. 20.

**E. Plaintiffs Do Not Allege Fraud.**

**1. No Scienter.**

Plaintiffs do not allege that Grocery Outlet knew any representation about the "Reject All" button was false or intended to mislead users, as required for fraud. *See* Mot. 23–24.



DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

Plaintiffs say Grocery Outlet made "promises in the popup banner [that] were false" and "intentionally caused cookies to be stored on Plaintiffs' … browsers," Opp. 20, but they conflate falsity with scienter. *Wishnick v. Frye*, 111 Cal. App. 2d 926, 931 (1952) (false representation, without scienter, insufficient for fraud claim). Plaintiff's reliance on *Gabrielli v. Motorola Mobility LLC*, *see* Opp. 21, is misplaced because the plaintiff there plausibly alleged that the defendant's statements were "'outright lies, designed to lull users into a false sense of security.'" 2025 WL 1939957, *10 (N.D. Cal. 2025) (citation omitted). Plaintiffs' Complaint alleges nothing comparable, nor could it, consistent with Rule 11.

Plaintiffs also say Grocery Outlet asks "the Court to draw an inference in Defendant's favor," Opp. 21, but Grocery Outlet simply points out that Plaintiffs fail to "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. While the "pleading requirements of Rule 9(b) do not apply to allegations of knowledge or intent, Plaintiffs must still plead facts establishing scienter with the plausibility required." *DeLeon v. Wells Fargo Bank, N.A.*, 2011 WL 311376, *8 (N.D. Cal. 2011); *see Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 n.5 (9th Cir. 2014) (same). They must have a Rule 11 basis to allege that Grocery Outlet knew the promise was false and must plead specific facts supporting that inference. *Montgomery v. Nat'l City Mortg.*, 2012 WL 1965601, *11 (N.D. Cal. 2012). Finally, lack of scienter is not an affirmative defense, *see* Opp. 21; it's a pleading defect. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012) ("Plaintiffs must allege [defendant's] knowledge of a defect to succeed on their claims of … fraud.").

**2. No Harm.**

Plaintiffs' fraud claim also fails because Plaintiffs do not plausibly allege any concrete injury resulting from the alleged misrepresentation. *See* Mot. 24. Plaintiffs concede the inquiry is the same as the injury argument for standing. *See* Opp. 21.

**F. Plaintiffs Do Not Allege Facts Plausibly Supporting Unjust Enrichment.**

Unjust enrichment is not a standalone cause of action. *See* Mot. 24; *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). Even if it were, the claim fails because Plaintiffs do not allege Grocery Outlet profited from the data allegedly collected. *See supra*



DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

§ II.A.2; Mot. 24 (citing authority). *In re Facebook*, *see* Opp. 21, did not recognize unjust enrichment as a standalone claim, but only discussed it as a theory of damages and standing. 956 F.3d at 599–600. *A.J. v. LMND Medical Group, Inc.*, *see* Opp. 21, is irrelevant because, unlike Plaintiffs here, plaintiffs there alleged they did not receive the benefit of their bargain after purchasing the defendants' services. 2024 WL 4579143, *3 (N.D. Cal. 2024). And in *Shah v. Capital One Financial Corp.*, *see* Opp. 22, the data—employment, citizenship, and financial information—was commercially valuable. 768 F. Supp. 3d 1033, 1041 (N.D. Cal. 2025). Plaintiffs allege no inherently valuable data of *theirs* that could plausibly enrich Grocery Outlet.

**G. Punitive Damages Are Unavailable.**

The Complaint does not allege the oppression, fraud, or malice required for punitive damages. *See* Mot. 25; Cal. Civ. Code § 3294(a). Plaintiffs argue it is enough to allege that Grocery Outlet incorporated third-party code into its website "pursuant to agreements between Defendant and those Third Parties." Opp. 22. But, though it may be reasonable to infer that Grocery Outlet management knew Grocery Outlet used cookies or had a cookie banner, *see* Compl. ¶¶ 3, 42, no facts support the inference that management knew the cookie banner *was defective*. *See Wilson*, 668 F.3d at 1145. This distinguishes Plaintiffs' cases, where management plausibly knew about the challenged conduct. *See Crowder v. Shade Store, LLC*, 2024 WL 4868313, *10 (N.D. Cal. 2024) (policy of repeated false discounts); *Ruhnke v. SkinMedica, Inc.*, 2014 WL 12577172, *11 (C.D. Cal. 2014) (policy to forgo safety studies); *see also Omni King, Inc. v. Accelerant Specialty Ins. Co.*, 2023 WL 6881824, *4 (C.D. Cal. 2023) (allegations "supported by numerous allegations that Accelerant engaged in willful and intentional conduct").

## IV. CONCLUSION

Plaintiffs allege no facts plausibly showing Grocery Outlet shared any "highly offensive" data *about them* to anyone, or even that Grocery Outlet had any idea who they were. Any alleged ability of Google or Flipp to infer Plaintiffs' identities is traceable to Plaintiffs' prior conduct, not Grocery Outlet. The Court should dismiss the Complaint with prejudice.



DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599

DATED: July 26, 2026

DAVIS WRIGHT TREMAINE LLP

By: */s/ Fred B. Burnside*
Fred B. Burnside

*Attorneys for Grocery Outlet Inc.*



DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
(415) 276-6500
Fax: (415) 276-6599