United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| YURI FONS, et al.,<br>Plaintiffs,<br>v.<br>GROCERY OUTLET, INC.,<br>Defendant. | Case No. 26-cv-00964-BLF<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>[Re: ECF No. 29] |

In this putative class action, Plaintiffs Yuri Fons ("Fons") and Jennifer Turner ("Turner") assert that Defendant Grocery Outlet Inc. ("Grocery Outlet") violated their privacy rights by enabling third-party tracking of their website browsing activities even after they selected the option to "Reject All" cookies on Grocery Outlet's website. Plaintiffs assert privacy and fraud claims under California law. Before the Court is a Motion to Dismiss the Complaint filed by Grocery Outlet, seeking dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim. ECF No. 29 ("Mot."); *see also* ECF No. 38 ("Reply"). Plaintiffs oppose this motion. ECF No. 37 ("Opp.").

For the reasons discussed below, Grocery Outlet's motion is GRANTED WITH LEAVE TO AMEND.

## I. BACKGROUND

Plaintiffs filed this suit in federal court on January 30, 2026, asserting claims arising out of Grocery Outlet's alleged violations of their privacy rights under California law. *See* Compl., ECF No. 1. Grocery Outlet is an "extreme value retailer of quality, name-brand consumables and fresh products sold through a network of independently owned and operated stores." *Id.* ¶ 32 (citation omitted). Customers can receive information about Grocery Outlet's products and locate nearby

stores at www.groceryoutlet.com ("Website"). *Id.* ¶¶ 1, 32. While in California, both Fons and Turner allegedly visited the Website. *Id.* ¶¶ 80, 89.

According to Plaintiffs, the Website showed them a popup cookie banner that presented the option to "Reject All" cookies, that is, to browse the Website without being tracked or targeted by third-party data brokers and advertisers. *Id.* ¶¶ 1, 36, 82, 91. Plaintiffs claim they selected the "Reject All" cookies button, but that Grocery Outlet nonetheless caused third-party cookies to be placed on their devices to track browsing activity and user data, and to transmit that information to third parties. *See id.* ¶¶ 83–87, 91–96. Those third parties allegedly include Google LLC (DoubleClick and Google Analytics) and Flipp Corp. (flipp.com and wishabi.com) (collectively, the "Third Parties"). *Id.* ¶ 3.

The complaint alleges that Fons visited the Website "on one or more occasions during the last four years to seek and obtain information about Grocery Outlet's products." *Id.* ¶ 80. During these visits, Fons "selected links on the Website's homepage to view the 'Weekly Ad' and, when prompted, entered his zip code into the 'Store Locator' field to specify the store location he wished to view." *Id.* When presented with the cookie popup banner, Fons clicked the "Reject All" cookies button. *Id.* ¶ 83. However, Fons alleges that Grocery Outlet "nonetheless continued to cause the placement and/or transmission of cookies along with user data, including those involved in providing advertising and analytics from the Third Parties on his device." *Id.* ¶ 86.

Similarly, Turner "visited the Website to seek and obtain information about Grocery Outlet's products . . . on one or more occasions during the last four years, including, in or around October 2023." *Id.* ¶ 89. Turner also clicked the "Reject All" button and alleges that Grocery Outlet nevertheless continued to use cookies that "permitted the Third Parties to track and collect" her data while browsing. *Id.* ¶¶ 92, 95.

Plaintiffs seek to represent a class of "[a]ll persons who browsed the Website in the United States after clicking or selecting the 'Reject All' button in the popup cookies consent banner or otherwise rejecting cookies in the Privacy Preference Center." *Id.* ¶ 98. Plaintiffs assert claims for (1) Invasion of Privacy; (2) Intrusion Upon Seclusion; (3) Wiretapping in Violation of the California Invasion of Privacy Act, Cal. Pen. Code § 631 ("CIPA"); (4) Use of a Pen Register in

Violation of CIPA, Cal. Pen. Code § 638.51; (5) Common Law Fraud, Deceit and/or Misrepresentation; and (6) Unjust Enrichment. *See id.* ¶¶ 106–180. Plaintiffs seek statutory, compensatory, and punitive damages, as well as restitution and injunctive relief. *See id.* at 53–54.

## II. DISCUSSION

Grocery Outlet argues that the complaint is subject to dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim. The Court begins with the threshold issue of Article III standing.

### A. Subject Matter Jurisdiction

Dismissal is appropriate under Rule 12(b)(1) if the plaintiff lacks Article III standing. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). Three elements must be satisfied for Article III standing to exist: "(1) the plaintiff must have suffered an 'injury in fact' that is both 'concrete and particularized' and 'actual or imminent'; (2) 'there must be a causal connection between the injury and the conduct complained of' (often described as whether the injury is 'fairly traceable' to the challenged conduct); and (3) 'it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Popa v. Microsoft Corp.*, 153 F.4th 784, 788 (9th Cir. 2025) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Grocery Outlet argues that Plaintiffs have failed to establish standing because the complaint does not show that they suffered an injury in fact or that, if any injury occurred, it is traceable to Grocery Outlet's conduct. The Court addresses these issues in turn.

#### i. Injury in Fact

Grocery Outlet first argues that Plaintiffs have failed to allege facts showing that they suffered a cognizable injury. Mot. at 6–12. Specifically, Grocery Outlet argues that Plaintiffs have not shown that they suffered either (a) a privacy injury, because the alleged intrusion was not highly offensive, as required by the Ninth Circuit's decision in *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025); or (b) a concrete economic injury, because Plaintiffs have not alleged facts showing that their data was collected.

Plaintiffs disagree. They argue that the complaint alleges a cognizable privacy injury because "the Ninth Circuit has specifically held that violations of CIPA suffice to confer Article

III standing," Opp. at 6–7 (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598–99 (9th Cir. 2020)), and because Grocery Outlet's conduct was highly offensive given that it created an expectation of privacy by informing Plaintiffs that they could "Reject All" cookies, *see id.* at 7–10. Likewise, Plaintiffs argue that they suffered a concrete economic injury because the complaint alleges that the information that was collected was valuable. *See id.* at 11–12.

For the following reasons, the Court finds that Plaintiffs have failed to allege facts showing that they suffered either a concrete privacy or economic injury. Accordingly, the Court finds that it lacks subject matter jurisdiction and therefore must dismiss the complaint.

a. Privacy Injury

A concrete injury may consist of "traditional tangible harms, such as physical harms and monetary harms." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). However, "[v]arious intangible harms can also be concrete." *Id.* "Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," for example, "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.*

The Ninth Circuit applied these principles in *Popa*, a case involving a putative class action for privacy violations arising from a pet supply website's use of "session-replay technology" to capture and reproduce customers' interactions with the website. 153 F.4th at 786. A business utilizing that technology can access useful consumer data to help determine which parts of its website are effective with customers and which are not. *See id.* In considering whether the plaintiff had alleged a concrete injury sufficient to support Article III standing, the Ninth Circuit held that the relevant question was whether the plaintiff had "suffered a harm that has traditionally been actionable in our nation's legal system." *Id.* at 791. The plaintiff pointed to the common-law privacy torts of intrusion upon seclusion and public disclosure of private facts. *See id.* The Ninth Circuit found that plaintiff "d[id] not explain how the tracking of her interactions with the . . . website caused her to experience any kind of harm that [was] remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." *Id.* Noting that the plaintiff had not identified any "embarrassing, invasive, or otherwise private information

collected," the *Popa* court likened the monitoring of her interactions with the pet supply website by Microsoft (which owned the session-replay technology) and PSP Group LLC (which owned the website) "to a store clerk[] observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales." *Id.*

Like in *Popa*, the facts alleged here do not show that Plaintiffs suffered a highly offensive interference or disclosure that would have been actionable at common law. When considering whether a plaintiff has alleged injuries with a sufficiently close relationship to traditionally actionable harms, courts must "look to the *specific* underlying harm experienced by the plaintiff and compare it, in detail, to a *specific* common-law tort." *Id.* The complaint in the present case is light on details regarding the named Plaintiffs' specific experiences with the Website. The complaint alleges that Fons "selected links on the Website's homepage to view the 'Weekly Ad' and, when prompted, entered his zip code into the 'Store Locator' field to specify the store location he wished to view." Compl. ¶ 80. But borrowing the Ninth Circuit's framework from *Popa*, a store clerk or other third-party present in a brick-and-mortar store could have seen Fons look at an ad for the store's own products and would already know which store location he had chosen to visit. Notably, although Fons alleges that he chose to "enter[] *his* zip code," there is no allegation that he was instructed to do so—rather than, for example, using the zip code for his work or where he was traveling—or that the Website even knew that he did. *Id.* (emphasis added); *cf. Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992–93 (2011) (finding that collecting plaintiff's home address did not constitute a serious invasion of privacy because it "is not an egregious breach of social norms, but routine commercial behavior"). As for Turner, the complaint alleges that she visited the Website, but it is otherwise silent on her use thereof. *See* Compl. ¶¶ 89–97. Those allegations are insufficient to show that Plaintiffs suffered the type of concrete harm necessary for Article III standing.

The remainder of the allegations in the complaint are framed in terms of the collective class experience or the experience of a composite consumer: "The Website causes users' devices to store and/or transmit both first-party and third-party tracking cookies," *id.* ¶ 27; "the third-party cookies stored on and/or loaded from users' devices when they interact with the Website are

United States District Court
Northern District of California

transmitted to those third parties, enabling them to surreptitiously track in real time and collect Website users' personal information, such as their browsing activities and private communications with Defendant," *id.* ¶ 30; "[i]n particular, when users clicked or selected the 'Reject All' button, Defendant nonetheless continued to cause the Third Parties' cookies to be placed on users' devices and/or transmitted to the Third Parties along with user data . . .", *id.* ¶ 42. The Court recently rejected nearly identical allegations because stating what information Grocery Outlet *could* obtain about a website user is hypothetical rather than a concrete harm suffered by either Fons or Turner. *See Barrales v. Reckitt Benckiser LLC*, No. 25-cv-10643-BLF, 2026 WL 2212867, *4 (N.D. Cal. July 31, 2026); *see also Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-cv-01473-NW, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025). Allegations must, instead, be particular to Plaintiffs' individual experiences using the Website.

Plaintiffs have also not alleged that the Website was inherently sensitive or that it advertised products that were of a sensitive nature, which is typically required to establish Article III standing. *See Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1114 n.3 (N.D. Cal. 2025) ("There may not be standing to sue based on a disclosure that a plaintiff was shopping for a football jersey, but there's standing to sue based on a disclosure that a plaintiff was likely shopping for eating disorder services."); *compare Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1177–82 (N.D. Cal. 2025) (finding no Article III standing when defendant allegedly tracked plaintiff on a news website), and *Ortiz v. Foris Dax, Inc.*, No. 25-cv-08950-EMC, 2026 WL 1430720, at *4 (N.D. Cal. May 21, 2026) (same on a cryptocurrency website), *with Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906, 914 (N.D. Cal. 2026) (finding Article III standing when defendant allegedly tracked plaintiff on a nutrition and fitness tracking app), and *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 865–67 (N.D. Cal. 2025) (same on a healthcare company's website). For example, the Ninth Circuit held in *Popa* that the plaintiff lacked standing when a pet supply website tracked her mouse movements and the products she viewed, and collected her partially redacted mailing address. *See* 153 F.4th at 786–87. Here, the complaint similarly alleges that the Website tracked when Fons clicked on an ad for an unspecified product and entered a zip code to locate a nearby store. Compl. ¶ 80. Tracking this information on a grocery website is, as

United States District Court
Northern District of California

alleged, no more offensive than *Popa* because the information at issue is similarly innocuous.

Plaintiffs dispute this conclusion for two principal reasons. First, Plaintiffs argue that "the Ninth Circuit has specifically held that violations of CIPA suffice to confer Article III standing," meaning the Court need not consider whether the complaint adequately alleges a more specific injury. Opp. at 6–7 (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 598–99). However, the case that Plaintiffs rely on was decided before the Supreme Court's decision in *TransUnion*, which clarified that legislative "creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III." 594 U.S. at 426; *see also Khamooshi*, 786 F. Supp. 3d at 1181.

Second, Plaintiffs argue that this case is distinguishable from *Popa* because Grocery Outlet affirmatively created an expectation of privacy by giving Plaintiffs the option to protect their information and then violated that expectation by disregarding Plaintiffs' selection of the "Reject All" cookies button. *See* Opp. at 7–10. In so doing, Plaintiffs argue that Grocery Outlet effectively designated as private any information that was shared with the Website, *see* Hr'g Tr. 20:7–22:3, ECF No. 45, which Plaintiffs contend constitutes the sort of "otherwise private information" that the Ninth Circuit indicated could establish Article III standing, *see Popa*, 153 F.4th at 791. As the Court has previously recognized, the allegation that Plaintiffs clicked the "Reject All" cookies button is a distinguishing factor from *Popa*. *See Barrales*, 2026 WL 221867, at *4. But that fact is not enough given that the complaint only alleges that Fons viewed an ad and put a zip code into a store locator on a website for groceries, which fails to identify information that implicates a protectable privacy interest or show that either Plaintiff experienced a specific underlying harm comparable to a common-law tort. *See id.*

As for Plaintiffs' reading of *Popa*, the Court does not agree that innocuous information can be the type of "other private information" contemplated by the Ninth Circuit, even if the defendant created an expectation of privacy. In *Popa*, the Ninth Circuit explained that "the kind of harm" must "match" a harm that is actionable at common law to establish standing. 153 F.4th at 791. As an example, the Ninth Circuit then explained that the plaintiff had not identified "embarrassing,

invasive, or otherwise private information" that had been collected. *Id.* By listing "embarrassing" and "invasive" before "otherwise private information," the Ninth Circuit appears to have referred to the type of information that is actionable, rather than whether the defendant's conduct affected the plaintiff's expectations. *See Shah v. Talentbridge, Inc.*, No. 26-cv-00222-AH-SSCx, 2026 WL 1507888, at *3 (C.D. Cal. May 28, 2026) (citations omitted) ("[C]ourts 'make their decisions regarding whether a plaintiff has stated a legally protectable privacy interest based on the nature of the information at issue.'" (citations omitted)). The Court thus does not read the Ninth Circuit to have endorsed the view that any information can be made private by a defendant's conduct.

This distinction is material because Plaintiffs' claims are tethered to the torts of invasion of privacy and intrusion upon seclusion. Courts typically consider these claims together and require allegations showing that the plaintiff (1) had a reasonable expectation of privacy and (2) that the intrusion upon their privacy was highly offensive. *See Ortiz*, 2026 WL 1430720, at *3–4; *see also Popa*, 153 F.4th at 791. Plaintiffs' approach would collapse these elements into one another, making it so that the expectation of privacy is itself determinative as to whether the intrusion is highly offensive. *See Garcia v. Blackhawk Network, Inc.*, No. 25-cv-07550-JLS-SSC, 2026 WL 925028, at *5 (C.D. Cal. Apr. 1, 2026) ("Defendant's misrepresentation [that third-party cookies would not be placed on plaintiff's device] goes only to the first element: whether there was an intrusion into a private place."). But offensiveness is a broader inquiry of which "deceit," which Grocery Outlet is alleged to have engaged in, is merely a "plus factor." *D'Antonio v. Smith & Wesson Inc.*, 820 F. Supp. 3d 928, 935 (N.D. Cal. 2026). Thus, Plaintiffs must still allege facts showing that the intrusion was highly offensive. *See Ortiz*, 2026 WL 1430720, at *3–4.

Accordingly, the Court finds that the complaint does not adequately allege that either Fons or Turner suffered a cognizable privacy injury.

b. Economic Injury

Plaintiffs have failed to allege that they suffered a concrete economic injury for the same reasons. *See generally TransUnion*, 594 U.S. at 425. Although personal data and browsing history can have value as a general matter, *see, e.g.*, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 600; *Gabrielli*, 815 F. Supp. 3d at 873, Plaintiffs have not adequately alleged that *their*

data was collected into any such valuable asset. The complaint alleges that "Plaintiffs and Class members have suffered an injury-in-fact[] . . . as a result of Defendant's . . . practices, including the unauthorized interception of their Private Communications, including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data, which have value as demonstrated by the use and sale of consumers' browsing activity." Compl. ¶ 164; *see also id.* ¶¶ 77–78. But Plaintiffs have not alleged facts showing that this information was collected from them, as opposed to from other unnamed class members. *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 835 (N.D. Cal. 2020) ("Plaintiffs have not pleaded any description of the 'personal information' that Defendants' allegedly used. Without such facts, Plaintiffs' assertion that Defendants garnered 'substantial profits' from the information is purely conclusory.").

Finally, Plaintiffs advance two additional arguments for why they suffered concrete injuries. Each fails as a matter of law. First, Plaintiffs appear to argue that "the remedies available for Plaintiffs' CIPA claims . . . and common law privacy claims" affect Plaintiffs' standing. Opp. at 11. But the possible availability of monetary remedies is not a substitute for injury since every statutory violation would otherwise establish standing, contrary to *TransUnion*. *See* 594 U.S. at 427–28. Second, the complaint asserts that Plaintiffs suffered "damage to . . . [their] property right[s]." Compl. ¶ 145. However, "'personal information' does not constitute property," *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1075 (N.D. Cal. 2012), which Plaintiffs effectively conceded by failing to respond in their opposition brief, *see generally* Opp.; *see also* Mot. at 12 (raising issue); Reply at 8 (identifying waiver).

**ii. Traceability**

Alternatively, Grocery Outlet argues that any injury is not traceable to its conduct because it is "implausible" that the cookies were not already installed on Plaintiffs' devices due to the ubiquity of such cookies on the internet. Mot. at 12–13. Although some courts have agreed with Grocery Outlet's view at the pleading stage, *see, e.g.*, *Blalock v. FCA US, LLC*, No. 26-cv-201-DMG, 2026 WL 2364789, at *5 (C.D. Cal. Aug. 14, 2026), the Court is not inclined to do so here.

United States District Court
Northern District of California

The complaint alleges that Grocery Outlet "caused cookies . . . to be sent to Plaintiffs and other visitors' browsers, stored on their devices, and transmitted to the Third Parties along with user data." Compl. ¶ 4. The Court must credit this allegation as true and cannot draw inferences regarding implausibility in Grocery Outlet's favor. Traceability is thus a factual issue that must be resolved at a later stage, if necessary.

* * *

Accordingly, the Court finds that it lacks subject matter jurisdiction over Plaintiffs' claims because neither Plaintiff has alleged facts showing that they suffered an injury in fact. Thus, Grocery Outlet's motion to dismiss is GRANTED and the complaint is dismissed.

### B. Failure to State a Claim

Grocery Outlet further argues that each claim fails on the merits. *See* Mot. at 14–25. Plaintiffs disagree. *See* Opp. at 12–23. Because the Court lacks subject matter jurisdiction over Plaintiffs' claims, it does not reach the Rule 12(b)(6) arguments.

## III. LEAVE TO AMEND

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Id.* at 1052. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

Plaintiffs request leave to amend and, at the hearing, counsel indicated that additional facts could be pled to establish standing. *See* Opp. at 23. Because this is the Court's first ruling on the legal sufficiency of Plaintiffs' complaint, the Court finds that dismissal with leave to amend is appropriate. If Plaintiffs fail to establish standing in their amended complaint, the Court may dismiss the complaint without granting further leave to amend.

United States District Court
Northern District of California

**IV. ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that Grocery Outlet's motion to dismiss is GRANTED WITH LEAVE TO AMEND. Plaintiffs SHALL file an amended complaint within twenty-one days of this Order.

Dated: September 24, 2026

BETH LABSON FREEMAN
United States District Judge